FILED

Roy Henry White
NAME
D-27085
PRISON IDENTIFICATION/BOOKING NO.
P.O. Box 689, Z-308-L
ADDRESS OR PLACE OF CONFINEMENT
Soledad, CA 93960-0689
Note:    It is your responsibility to notify the Clerk of Court in writing of any
         change of address. If represented by an attorney, provide his name,
         address, telephone and facsimile numbers, and e-mail address.

(530)
Fee Paid

2008 JUN -3  AM 10: 34

CLERK, U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES
BY

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

Roy Henry White
FULL NAME (Include name under which you were convicted)
                                        Petitioner,

                    v.

Ben Curry, @ Warden
NAME OF WARDEN, SUPERINTENDENT, JAILOR OR AUTHORIZED
PERSON HAVING CUSTODY OF PETITIONER
                                        Respondent.

CASE NUMBER:

CV 08-3598 VBF (JC)
To be supplied by the Clerk of the United States District Court

☐ _____ AMENDED

**PETITION FOR WRIT OF HABEAS CORPUS
BY A PERSON IN STATE CUSTODY**
28 U.S.C. § 2254

PLACE/COUNTY OF CONVICTION Los Angeles
PREVIOUSLY FILED, RELATED CASES IN THIS DISTRICT COURT
(List by case number)
CV _____
CV _____

## INSTRUCTIONS - PLEASE READ CAREFULLY

1.   To use this form, you must be a person who either is currently serving a sentence under a judgment against you in a California state court, or will be serving a sentence in the future under a judgment against you in a California state court. You are asking for relief from the conviction and/or the sentence. This form is your petition for relief.

2.   In this petition, you may challenge the judgment entered by only one California state court. If you want to challenge the judgment entered by a different California state court, you must file a separate petition.

3.   Make sure the form is typed or neatly handwritten. You must tell the truth and sign the form. If you make a false statement of a material fact, you may be prosecuted for perjury.

4.   Answer all the questions. You do not need to cite case law, but you do need to state the federal legal theory and operative facts in support of each ground. You may submit additional pages if necessary. If you do not fill out the form properly, you will be asked to submit additional or correct information. If you want to submit a legal brief or arguments, you may attach a separate memorandum.

5.   You must include in this petition all the grounds for relief from the conviction and/or sentence that you challenge. And you must state the facts that support each ground. If you fail to set forth all the grounds in this petition, you may be barred from presenting additional grounds at a later date.

5.   You must pay a fee of $5.00. If the fee is paid, your petition will be filed. If you cannot afford the fee, you may ask to proceed in forma pauperis (as a poor person). To do that, you must fill out and sign the declaration on the last two pages of the form. Also, you must have an authorized officer at the penal institution complete the certificate as to the amount of money and securities on deposit to your credit in any account at the institution. If your prison account exceeds $25.00, you must pay the filing fee.

6.   When you have completed the form, send the original and two copies to the following address:
     Clerk of the United States District Court for the Central District of California
     United States Courthouse
     ATTN: Intake/Docket Section
     312 North Spring Street
     Los Angeles, California 90012

LODGED
CLERK, U.S. DISTRICT COURT

JUN - 2 2008

CENTRAL DISTRICT OF CALIFORNIA
BY                          DEPUTY

PETITION FOR WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY (28 U.S.C § 2254)

```
6/4/2008 12:58:06 PM  Receipt #: 108082
       Cashier : ENAKADA [LA 1-1]
Paid by: ROY HENRY WHITE
2:CV08-03598
2008-086900 _____ Writ Habeas Corpus(1)
Amount :                        $5.00
----------+--------------------------
M.O.  Payment : P3400 /          5.00
----------------------------------
Total Payment :                  5.00
```

012247

PLEASE COMPLETE THE FOLLOWING: (*Check appropriate number*)

This petition concerns:
1.  ☐ a conviction and/or sentence.
2.  ☐ prison discipline.
3.  ☒ a parole problem.
4.  ☐ other.

## PETITION

1.  Venue

    a.  Place of detention <u>Correctional Training Facility in Soledad, CA.</u>

    b.  Place of conviction and sentence <u>Los Angeles County.</u>

2.  Conviction on which the petition is based (*a separate petition must be filed for each conviction being attacked*).

    a.  Nature of offenses involved (*include all counts*): <u>Penal Code 187(a) and 12022.5</u>
        <u>second degree murder with use of wepon.</u>

    b.  Penal or other code section or sections: <u>See, 2. a. above.   My mistake forgive me!</u>

    c.  Case number: <u>A777487</u>

    d.  Date of conviction: <u>February 03, 1986</u>

    e.  Date of sentence: <u>February 28, 1986</u>

    f.  Length of sentence on each count: <u>15 to life plus 2 for a total of 17.</u>

    g.  Plea (*check one*):

        ☐ Not guilty

        ☒ Guilty

        ☐ Nolo contendere

    h.  Kind of trial (*check one*):

        ☐ Jury

        ☒ Judge only

3.  Did you appeal to the California Court of Appeal from the judgment of conviction?    ☐ Yes ☒ No

    If so, give the following information for your appeal (*and attach a copy of the Court of Appeal decision if available*):

    a.  Case number: _____

    b.  Grounds raised (*list each*):

        (1) _____

PETITION FOR WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY (28 U.S.C § 2254)

Case 3:08-cv-03831-MHP     Document 1     Filed 06/03/2008     Page 4 of 100

(2) _____
(3) _____
(4) _____
(5) _____
(6) _____
c.  Date of decision: _____
d.  Result _____

_____

4.  If you did appeal, did you also file a Petition for Review with the California Supreme Court of the Court of Appeal decision?   ☐ Yes   ☒ No
    If so give the following information *(and attach copies of the Petition for Review and the Supreme Court ruling if available)*:
    a.  Case number: _____
    b.  Grounds raised *(list each)*:
        (1) _____
        (2) _____
        (3) _____
        (4) _____
        (5) _____
        (6) _____
    c.  Date of decision: _____
    d.  Result _____

    _____

5.  If you did not appeal:
    a.  State your reasons  Because of plea bargain. _____
    _____
    _____
    _____
    _____

    b.  Did you seek permission to file a late appeal?   ☐ Yes   ☒ No

6.  Have you previously filed any habeas petitions in any state court with respect to this judgment of conviction?
    ☒ Yes   ☐ No
    If so, give the following information for each such petition *(use additional pages if necessary, and attach copies of the petitions and the rulings on the petitions if available)*:

PETITION FOR WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY (28 U.S.C § 2254)
CV-69 (04/05)                                                                              Page 3 of 10

a.  (1) Name of court: In the Superior Court of Los Angeles.

(2) Case number: BH 002397

(3) Date filed *(or if mailed, the date the petition was turned over to the prison authorities for mailing)*: August 15, 2003

(4) Grounds raised *(list each)*:

    (a) Violation of California Constitution art. 1 § 7.

    (b) Violation of the U.S. Constitution's 14th Amendment.

    (c) Violation of California Penal Code §3041. Presumption...

    (d) of parole.

    (e)

    (f)

(5) Date of decision: October 01, 2003

(6) Result Denied. See, attached Exhibit "J" for order/Petition.

(7) Was an evidentiary hearing held?     ☐ Yes   ☒ No

b.  (1) Name of court: In the Superior Court of Los Angeles.

(2) Case number: BH003526

(3) Date filed *(or if mailed, the date the petition was turned over to the prison authorities for mailing)*: April 15, 2005

(4) Grounds raised *(list each)*:

    (a) Violation of United States Constitution's Art. 1, § 10.

    (b) Violation of U. S. Constitution's Fifth and 14th Amendments.

    (c)

    (d)

    (e)

    (f)

(5) Date of decision: September 29, 2005

(6) Result Denied. See, attached Exhibit "K" for order/Petition.

(7) Was an evidentiary hearing held?     ☐ Yes   ☒ No

c.  (1) Name of court: In the Superior Court of Los Angeles.

(2) Case number: Never received a response.

(3) Date filed *(or if mailed, the date the petition was turned over to the prison authorities for mailing)*: July 24, 2006

(4) Grounds raised *(list each)*:

    (a) Violation of California Penal Code §§ 1191.1 and 1192.2.

    (b) Violation of S.U. Constitution's Art. 1, § 10.

(c) _____

(d) _____

(e) _____

(f) _____

(5) Date of decision: NONE. See, Exhibit "L" for Certified Receipt/Letter to

(6) Result Court and copy of petition. _____

_____

(7) Was an evidentiary hearing held?     ☐ Yes   ☒ No

7. For this petition, state every ground on which you claim that you are being held in violation of the Constitution, laws, or treaties of the United States. Attach additional pages if you have more than five grounds. Summarize briefly the facts supporting each ground. For example, if you are claiming ineffective assistance of counsel, you must state facts specifically setting forth what your attorney did or failed to do.

   **CAUTION:**   *Exhaustion Requirement*: In order to proceed in federal court, you must ordinarily first exhaust your state court remedies with respect to each ground on which you are requesting relief from the federal court. This means that, prior to seeking relief from the federal court, you first must present all of your grounds to the California Supreme Court.

   a. Ground one: The Board of Parole Hearing violated the U.S. Constitution 14th Amendment due process guarantees. _____

   (1) Supporting FACTS: Because the Board of Parole Hearing found no evidence, of unreasonable risk or current danger in petitioner's Post-Conviction Record. See, ▮▮▮▮▮▮▮ Exhibit "H" for facts, and Exhibit "I" petition to Second Appellate Court. _____

   (2) Did you raise this claim on direct appeal to the California Court of Appeal?     ☒ Yes   ☒ No

   (3) Did you raise this claim in a Petition for Review to the California Supreme Court?     ☒ Yes   ☐ No

   (4) Did you raise this claim in a habeas petition to the California Supreme Court?     ☐ Yes   ☒ No

   b. Ground two: NONE. _____

   (1) Supporting FACTS: NONE. _____

   _____

   _____

   _____

   (2) Did you raise this claim on direct appeal to the California Court of Appeal?     ☐ Yes   ☒ No

   (3) Did you raise this claim in a Petition for Review to the California Supreme Court?     ☐ Yes   ☒ No

(4) Did you raise this claim in a habeas petition to the California Supreme Court?     ☐ Yes   ☒ No

c.  Ground three: __NONE.__

(1) Supporting FACTS:  __NONE.__

(2) Did you raise this claim on direct appeal to the California Court of Appeal?     ☐ Yes   ☒ No
(3) Did you raise this claim in a Petition for Review to the California Supreme Court?     ☐ Yes   ☒ No
(4) Did you raise this claim in a habeas petition to the California Supreme Court?     ☐ Yes   ☒ No

d.  Ground four: __NONE.__

(1) Supporting FACTS:  __NONE.__

(2) Did you raise this claim on direct appeal to the California Court of Appeal?     ☐ Yes   ☒ No
(3) Did you raise this claim in a Petition for Review to the California Supreme Court?     ☐ Yes   ☒ No
(4) Did you raise this claim in a habeas petition to the California Supreme Court?     ☐ Yes   ☒ No

e.  Ground five: __NONE.__

(1) Supporting FACTS:  __NONE.__

(2) Did you raise this claim on direct appeal to the California Court of Appeal?     ☐ Yes   ☒ No
(3) Did you raise this claim in a Petition for Review to the California Supreme Court?     ☐ Yes   ☒ No
(4) Did you raise this claim in a habeas petition to the California Supreme Court?     ☐ Yes   ☒ No

8. If any of the grounds listed in paragraph 7 were not previously presented to the California Supreme Court, state briefly which grounds were not presented, and give your reasons: <u>Only one ground</u> <u>presented through out all the State Courts.</u>

9. Have you previously filed any habeas petitions in any federal court with respect to this judgment of conviction?

☐ Yes   ☒ No

If so, give the following information for each such petition *(use additional pages if necessary, and attach copies of the petitions and the rulings on the petitions if available)*:

a.  (1) Name of court: _____

   (2) Case number: _____

   (3) Date filed *(or if mailed, the date the petition was turned over to the prison authorities for mailing)*: _____

   (4) Grounds raised *(list each)*:

     (a) _____

     (b) _____

     (c) _____

     (d) _____

     (e) _____

     (f) _____

   (5) Date of decision: _____

   (6) Result _____

   (7) Was an evidentiary hearing held?      ☐ Yes   ☐ No

b.  (1) Name of court: _____

   (2) Case number: _____

   (3) Date filed *(or if mailed, the date the petition was turned over to the prison authorities for mailing)*: _____

   (4) Grounds raised *(list each)*:

     (a) _____

     (b) _____

     (c) _____

     (d) _____

     (e) _____

     (f) _____

   (5) Date of decision: _____

   (6) Result _____

PETITION FOR WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY (28 U.S.C § 2254)

(7) Was an evidentiary hearing held?     ☐ Yes  ☐ No

10. Do you have any petitions now pending (i.e., filed but not yet decided) in any state or federal court with respect to this judgment of conviction?     ☐ Yes  ☒ No

If so, give the following information *(and attach a copy of the petition if available)*:

(1) Name of court: _____

(2) Case number: _____

(3) Date filed *(or if mailed, the date the petition was turned over to the prison authorities for mailing)*: _____

(4) Grounds raised *(list each)*:

    (a) _____

    (b) _____

    (c) _____

    (d) _____

    (e) _____

    (f) _____

11. Are you presently represented by counsel?     ☐ Yes  ☒ No

If so, provide name, address and telephone number: _____

_____

_____

WHEREFORE, petitioner prays that the Court grant petitioner relief to which he may be entitled in this proceeding,

*Mr. Slay Henry White*

*Signature of Attorney (if any)*

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct.

Executed on *May 30, 2008*     *Mr. Slay Henry White*

          *Date*              *Signature of Petitioner*

EXHIBIT "J"

Order/Petition

Name  Roy Henry White

Address  P.O. Box 689, Z-Wing 308-L

Soledad, CA 93960-0689

CDC or ID Number  D-27085

ORIGINAL FILED

APR 2 3 2003

LOS ANGELES
SUPERIOR COURT

In THE SUPPERIOR COURT OF THE STATE OF CALIFORNIA

In AND FOR THE COUNTY OF LOS ANGELES
*(Court)*

**PETITION FOR WRIT OF HABEAS CORPUS**

Petitioner  Roy Henry White
Carol Daly, Chmn, BPT;
J. Hamlet, Warden, CTF
Respondent S

No. _____
*(To be supplied by the Clerk of the Court)*

## INSTRUCTIONS — READ CAREFULLY

- **If you are challenging an order of commitment or a criminal conviction and are filing this petition in the Superior Court, you should file it in the county that made the order.**

- **If you are challenging the conditions of your confinement and are filing this petition in the Superior Court, you should file it in the county in which you are confined.**

- Read the entire form *before* answering any questions.

- This petition must be clearly handwritten in ink or typed. You should exercise care to make sure all answers are true and correct. Because the petition includes a verification, the making of a statement that you know is false may result in a conviction for perjury.

- Answer all applicable questions in the proper spaces. If you need additional space, add an extra page and indicate that your answer is "continued on additional page."

- If you are filing this petition in the Superior Court, you need file only the original unless local rules require additional copies. Many courts require more copies.

- If you are filing this petition in the Court of Appeal, file the original and four copies.

- If you are filing this petition in the California Supreme Court, file the original and thirteen copies.

- Notify the Clerk of the Court in writing if you change your address after filing your petition.

- In most cases, the law requires service of a copy of the petition on the district attorney, city attorney, or city prosecutor. See Penal Code section 1475 and Government Code section 72193. You may serve the copy by mail.

Approved by the Judicial Council of California for use under Rules 56.5 and 201(h)(1) of the California Rules of Court [as amended effective January 1, 1999]. Subsequent amendments to Rule 44(b) may change the number of copies to be furnished the Supreme Court and Court of Appeal.

This petition concerns:

☐ A conviction                    ☒ Parole

☐ A sentence                      ☐ Credits

☐ Jail or prison conditions       ☐ Prison discipline

☐ Other (specify):

1. Your name: __Roy Henry White__

2. Where are you incarcerated? __Soledad, Correctional Training facility.__

3. Why are you in custody?  ☒ Criminal Conviction    ☐ Civil Commitment

   *Answer subdivisions a. through i. to the best of your ability.*

   a. State reason for civil commitment or, if criminal conviction, state nature of offense and enhancements (for example, "robbery with use of a deadly weapon").

   __Murder with use of weapon.__

   b. Penal or other code sections: __Penal Code §§187(a) and 12022.5.__

   c. Name and location of sentencing or committing court: __Los Angeles, SUPERIOR COURT.__

   d. Case number: __A777487__

   e. Date convicted or committed: __April 01, 1986.__

   f. Date sentenced: __February 03, 1986.__

   g. Length of sentence: __15 years to life-Plus 2, for the total of 17 to life.__

   h. When do you expect to be released? __December 13, 2002.__

   i. Were you represented by counsel in the trial court?  ☒ Yes.  ☐ No. If yes, state the attorney's name and address:

   __Mike Duffey, (Deputy Public Defender) Address: Unknown.__

4. What was the LAST plea you entered? (check one)

   ☐ Not guilty    ☒ Guilty    ☐ Nolo Contendere    ☐ Other: ____

5. If you pleaded not guilty, what kind of trial did you have?

   ☐ Jury    ☐ Judge without a jury    ☐ Submitted on transcript    ☐ Awaiting trial

Name  Roy Henry White

Address  P.O. Box 689, Z-Wing 308-L

Soledad, Ca 93960-0689

CDC or ID Number  D-27085

## In THE SUPERIOR COURT COURT OF THE STATE OF CALIFORNIA

### In AND FOR THE COUNTY OF LOS ANGELES
*(Court)*

| | |
|---|---|
| Petitioner  Roy Henry White<br>Carol Daly, Chmn, BPT;<br>J. Hamlet, Warden, CTF<br><br>Respondent | **PETITION FOR WRIT OF HABEAS CORPUS**<br>(Superior Court) Department 100<br><br>No. _____<br>*(To be supplied by the Clerk of the Court)* |

## INSTRUCTIONS — READ CAREFULLY

- **If you are challenging an order of commitment or a criminal conviction and are filing this petition in the Superior Court, you should file it in the county that made the order.**

- **If you are challenging the conditions of your confinement and are filing this petition in the Superior Court, you should file it in the county in which you are confined.**

- Read the entire form *before* answering any questions.

- This petition must be clearly handwritten in ink or typed. You should exercise care to make sure all answers are true and correct. Because the petition includes a verification, the making of a statement that you know is false may result in a conviction for perjury.

- Answer all applicable questions in the proper spaces. If you need additional space, add an extra page and indicate that your answer is "continued on additional page."

- If you are filing this petition in the Superior Court, you need file only the original unless local rules require additional copies. Many courts require more copies.

- If you are filing this petition in the Court of Appeal, file the original and four copies.

- If you are filing this petition in the California Supreme Court, file the original and thirteen copies.

- Notify the Clerk of the Court in writing if you change your address after filing your petition.

- In most cases, the law requires service of a copy of the petition on the district attorney, city attorney, or city prosecutor. See Penal Code section 1475 and Government Code section 72193. You may serve the copy by mail.

Approved by the Judicial Council of California for use under Rules 56.5 and 201(h)(1) of the California Rules of Court [as amended effective January 1, 1999). Subsequent amendments to Rule 44(b) may change the number of copies to be furnished the Supreme Court and Court of Appeal.

Form Approved by the
Judicial Council of California
MC-275 [Rev. January 1, 1999]

**PETITION FOR WRIT OF HABEAS CORPUS**

Penal Code, § 1473 et seq.;
Cal. Rules of Court, rules 56.5, 201(h)

This petition concerns:

| | |
|---|---|
| ☐ A conviction | ☒ Parole |
| ☐ A sentence | ☐ Credits |
| ☐ Jail or prison conditions | ☐ Prison discipline |
| ☐ Other (specify): | |

1. Your name: **Roy Henry White**

2. Where are you incarcerated? **Soledad, Correctional Training Facility**

3. Why are you in custody? ☒ Criminal Conviction    ☐ Civil Commitment

   *Answer subdivisions a. through i. to the best of your ability.*

   a. State reason for civil commitment or, if criminal conviction, state nature of offense and enhancements (for example, "robbery with use of a deadly weapon").

   **Murder with use of weaon**

   b. Penal or other code sections: **Penal Code §§187(a) and 12022.5.**

   c. Name and location of sentencing or committing court: **Los Angeles, Superior Court.**

   d. Case number: **A777487**

   e. Date convicted or committed: **April 01, 1986**

   f. Date sentenced: **February 03, 1986**

   g. Length of sentence: **15 years to life-Plus 2, for the total of 17 to life**

   h. When do you expect to be released? **December 13, 2002**

   i. Were you represented by counsel in the trial court? ☐ Yes.  ☒ No.  If yes, state the attorney's name and address:

      **Mike Duffey, (Deputy Public Defender) Address: Unknown.**

4. What was the LAST plea you entered? (check one)

   ☐ Not guilty    ☒ Guilty    ☐ Nolo Contendere    ☐ Other:

5. If you pleaded not guilty, what kind of trial did you have?

   ☐ Jury    ☐ Judge without a jury    ☐ Submitted on transcript    ☐ Awaiting trial

6.  GROUNDS FOR RELIEF

Ground 1: State briefly the ground on which you base your claim for relief. For example, "the trial court imposed an illegal enhancement." *(If you have additional grounds for relief, use a separate page for each ground. State ground 2 on page four. For additional grounds, make copies of page four and number the additional grounds in order.)*

The decision that petitioner is an unreasonable risk of danger to society if released upon parole was arbitrary and capricious in violation of California Constitution Art. 1 §7 and the U.S. Constitution's 14th Amendment due process guarantees, because there was no "Some Evidenced" - (See, attached page 1. ).

a.  Supporting facts:

Tell your story briefly without citing cases or law. If you are challenging the legality of your conviction, describe the facts upon which your conviction is based. *If necessary, attach additional pages.* CAUTION: You must state facts, not conclusions. For example, if you are claiming incompetence of counsel you must state facts specifically setting forth what your attorney did or failed to do and how that affected your trial. Failure to allege sufficient facts will result in the denial of your petition. (See *In re Swain* (1949) 34 Cal.2d 300, 304.) A rule of thumb to follow is: *who* did exactly *what* to violate your rights at what time *(when)* or place *(where)*. (If available, attach declarations, relevant records, transcripts, or other documents supporting your claim.)

1. In petitioner's February 26, 2002, Board panel, decision denying parole, the (hereafter) BPT hearing panel expressly found, Roy Henry White, " has no prior juvenile record. "   (See, Exhibit "A" Board Transcripts, at page 11, line 4.  Also (See, Exhibit "B" October 31, - 2000, Board Transcripts, at page 16, line 1.)

2. The BPT found petitioner, has been disciplinary-free during his entire period of incarceration, and for his participation in NA/AA, for completing his vocation in data processing, for his partici- pation towards his vocational drafting, for his excellent - actually his above average to excellent work reports.  (See, Exhibit "A" Transcripts, at page 27, lines 12-16, and page 24, lines 5-7.) Also (See, Exhibit "B" page 53, lines 3-11).

3. Roy Henry White, "parole plans seems to be viable."  Continue on attached page, (1)...

b. Supporting cases, rules, or other authority (optional):

*(Briefly discuss, or list by name and citation, the cases or other authorities that you think are relevant to your claim. If necessary, attach an extra page.)*

For Supporting cases, rules, and other authority: See, attached pages 2-6).

---

MC-275 [Rev. January 1, 1999]                    **PETITION FOR WRIT OF HABEAS CORPUS**                    Page three of six

**PETITION FOR WRIT OF HABEAS CORPUS**

7. Ground 2 or Ground _____ (if a_, able):

a. Supporting facts:

b. Supporting cases, rules, or other authority:

8. Did you appeal from the conviction, sentence, or commitment? ☐ Yes. ☒ .    If yes, give the following information:

a. Name of court ("Court of Appeal" or "Appellate Dept. of Superior Court"):

_____

b. Result: _____  c. Date of decision: _____

d. Case number or citation of opinion, if known: _____

e. Issues raised:  (1) _____

(2) _____

(3) _____

f. Were you represented by counsel on appeal? ☐ Yes. ☐ No.  If yes, state the attorney's name and address, if known:

_____

9. Did you seek review in the California Supreme Court? ☐ Yes. ☐ No.  If yes, give the following information:

a. Result: _____  b. Date of decision: _____

c. Case number or citation of opinion, if known: _____

d. Issues raised:  (1) _____

(2) _____

(3) _____

10. If your petition makes a claim regarding your conviction, sentence, or commitment that you or your attorney did not make on appeal, explain why the claim was not made on appeal:

_____

_____

11. Administrative Review:

a. If your petition concerns conditions of confinement or other claims for which there are administrative remedies, failure to exhaust administrative remedies may result in the denial of your petition, even if it is otherwise meritorious. (See *In re Muszalski* (1975) 52 Cal.App.3d 500 [125 Cal.Rptr. 286].) Explain what administrative review you sought or explain why you did not seek such review:

Roy Henry White, submitted 1040 administrative appeal (Log No. 01-181) on June 06, 2002, requesting reversal of denial of unsuitability that petitioner is a risk and danger to society if released, solely on the commitment offense.

Received decision on 1040 appeal back on : February 27, 2003.

(See attached: copy of return decision, Exhibit "D").

_____

_____

b. Did you seek the highest level of administrative review available? ☒ Yes. ☐ No.
*Attach documents that show you have exhausted your administrative remedies.*

12. Other than direct appeal, have you filed any other petitions, applications, or motions with respect to this conviction, commitment, or **issue** in any court? [ ] Yes. If yes, continue with number 13.  [X] No. If no, skip to number 15.

13. a. (1) Name of court: Superior Court, County of: Los Angeles

(2) Nature of proceeding (for example, "habeas corpus petition"): Petition for habeas corpus

(3) Issues raised: (a) Two years enhancement.

(b) _____

(4) Result (Attach order or explain why unavailable): _____

(5) Date of decision: _____

b. (1) Name of court: _____

(2) Nature of proceeding: _____

(3) Issues raised: (a) _____

(b) _____

(4) Result (Attach order or explain why unavailable): _____

(5) Date of decision: _____

c. For additional prior petitions, applications, or motions, provide the same information on a separate page.

14. If any of the courts listed in number 13 held a hearing, state name of court, date of hearing, nature of hearing, and result:
None.

15. Explain any delay in the discovery of the claimed grounds for relief and in raising the claims in this petition. (See In re Swain (1949) 34 Cal.2d 300, 304.)
None.

16. Are you presently represented by counsel? [ ] Yes. [X] No. If yes, state the attorney's name and address, if known: _____

17. Do you have any petition, appeal, or other matter pending in any court? [ ] Yes. [X] No. If yes, explain: _____

18. If this petition might lawfully have been made to a lower court, state the circumstances justifying an application to this court:
None.

I, the undersigned, say: I am the petitioner in this action. I declare under penalty of perjury under the laws of the State of California that the foregoing allegations and statements are true and correct, except as to matters that are stated on my information and belief, and a to those matters, I believe them to be true.

Date: July 17, 2003

► _[signature]_
(SIGNATURE OF PETITIONER)

MC-275 [Rev. January 1, 1999]

PETITION FOR WRIT OF HABEAS CORPUS

GROUND FOR RELIEF

Ground 1: (Continuing on page (1).


...having indicia of reliability to overcome the statutory (PC
§3041) presumption for parole suitability.
-------------------------------------------------------------


Supporting facts: (Continuing on page (1).

(See, Transcripts, Exhibit "A" at page 13,14). and (See, Exhibit "B" ...

Transcripts, at page 52, lines 12-15. For parole plains).


4. There are no psychiatric factors to consider.  (See, Exhibit "C"
   for attached: Psychological Evaluation Report/Memo, from: Joe Reed,
   Ph.D. staff psychologist, also see, Transcripts at page 29, lines
   2-17).  ( Exhibit "A" ).


These findings of information in the record do Not amount to a

finding based upon evidence having indicia of reliability that

petitioner was or is an "Unreasonable" risk of danger to society if

released on parole.  The information of record shows the BPT found no

" Evidence " of petitioner's " Dangerousness " in any information of

records, except for the commitmnet offense itself. In that it was

carried out in an especially cruel manner, which demonstrates an

exceptionally callous disregard for human suffering.  (See, Exhibit "A"

at page 42, lines 12-16).   These atatement of facts are drawn from

the offense, and from petitioner's " Own admission " of the crime.

Which has been used in this petitioner's last four (4) Subsequent

parole consideration hearings, rather then Post Conviction conduct.

(Continue on page 2)...

.b Supporting cases, rules, or other authorities:

1. California Code of regulations title 15 §2402(d)(1) states "No
   Juvenile Record" " The prisoner does not have a record of
   assaulting others as a juvenile or committing crimes with a
   potential of personal harm to victims." §2402(d)(5)  "Lack of
   Criminal History"  "The prisoner lacks any significant history
   of violent crime."  (See, Exhibit "I" California Code of
   Regulations-Title 15. Division 2.)

2. §2402(d)(8) Institutional Behavior.  "Institutional activities
   indicate an enhanced ability to function within the law upon
   release."

3. §2402(d)(7) Understanding and Plans for future.  "The prisoner
   has made realistic plans for release or has developed marketable
   skills that can be put to use upon release." (See, Exhibit "F"
   for Prisoner Evaluation Report, at page 2, A. & B. (Future
   Plans)).

4. §2402(b) Information Considered.  "All relevant, reliable infor-
   mation available to the panel shall be considered in determining
   suitability for parole."  "Such information shall include the
   circumstances of the prisoner's social history; past and present
   mental state; past criminal history, including involvement in
   other criminal misconduct which is reliably documented; the base
   and other commitment offenses, including behavior before, during
   and after the crime; past and present attitude toward the crime;
   any conditions of treatment or control, including the use of
   special conditions under which the prisoner may safely be re-
   leased to the community; and any other information which bears
   on the prisoner's suitability for  release."

page 2

b. Supporting cases, rules, or other authority*s*:
Continuing from page 2.


...." Circumstances which taken alone may not firmly establish unsuitability for parole may contribute to a pattern which results in a finding of unsuitability."


5. The Board of Prison Terms is authorized by statue to determine parole suitability and to exercise its discretion in deciding whether to grant or deny parole. (Penal Code §3040 et seq.; In Fain (1983) 145 Cal.App.3d 540, 548).  In exercising that function, the Board is obliged to hold a fair hearing at which three unbiased  commissioners actually read the reports and other documents and then make a reasoned decision based on appropriate factors.
In In re Powell (1988) 45 Cal 894, The California Supreme Court ruled that the Board of Prison Terms enjoys broad but not absolute discretion in parole-related matters.  The Supreme Court Held in this case that there must be "Some Evidence" to support the Board's determination.  Id., at 904.


6. Per (PC §3041,) the Board panel therefore should have fixed a term and set a parole release date, because PC §3040 " Presumes " parole suitability absent a preponderance finding contra, based upon affirmative record evidence having indacia of reliability. Because there was no affirmative evidence of dengerousness, let alone of "Unreasonable risk" of danger to society.  The decision " Contra " was arbitrary and capricious in violation of due

(Continue on page 4) 3

b.  Supporting cases, rules, or other authority:
(Continuing form: page 3).


...process of law as guaranteed by the California Constitution,
Art. 1, §7 and the Fourteenth Amendment to the United States
Constitution.


7. Penal Code §3041(b) in the subsection the legislature orders
the Board as follows:  " The panel or board shall set a release
date unless it determines that the gravity of the (Current
convicted offense) or offenses, or the timing and gravity of
current or past convicted offense or offenses, is such that
consideration of the public safety requires a more lengthy
period of incarceration for this individual, and that a parole
date, therefore, can not be fixed at this meeting."


8. Standards which the Law Requires the Board to Apply at a Parole
Suitability Hearing.  15 CCR §2000(b)(65) defines " Minimum
Eligible Parole Date. "  (MEPD) as: The earliest date on which
an ISL [Indeterminate Sentence Law] or life prisoner may legally
be released on parole." If a prisoner is serving both a life or
ISL sentence and a determinate sentence and the determinate
sentence release date is later than the statutory MEPD for the
life or ISL sentence, then the determinate sentence release
date is the MEPD.  Petitioner's MEPD is fixed at March 25,
2000.  (See, Exhibit "G" CDC's Legal Status Sheet ).
(Continue on page 5). Also (See, Exhibit "I" page 43,
number (65)).

page 4.

b. Supporting cases, rules, or other authority:

( Continuing from: page 4.)

...A MEPD having been set for petitioner, the Board of prison Terms is obliged to obey the mandates of Penal Code §3041. PC §3041(a) provides that the Board " Shall normally " set a parole release date. It further mandates that that date " shall " be set in a manner that will provide uniform terms for offenses of similar gravity and magnitude in respect to their threat to the public, and that will comply with the sentencing rules that the Judicial (Council may issue. The Judicial Council's sentencing rules only relate to determinate sentences. They are now found at CRC 4.401 et seq. They were in effect prior to January 1, 2001 as CRC 400 et seq. They have been in effect since July 1, 1977) and any sentencing information relevant to the setting of parole release dates. In people v. Wingo, supra, 14 Cal. 3d at page 182, the Supreme Court made clear that a prisoner serving an Indeterminate Sentence has a right to have his term fixed proportionately to his offense, further noting that: " if within a reasonable time (Id. at page 183 ) the adult Authority [BPT] omits or declines to fix an inmate's term at less then maximum, the maximum term will be deemed to be fixed, for the purpose of measuring the proportionality of the term to the circumstances of the offense and offender." [Emphasis Added.]

b. Supporting cases, rules, or other authority: (Continuing from page 5).


...In In re Rodriguez, Supra, 14 C. 3d on page 654 fn. 18 the Court noted: " For purposes of assessing the proportionality of an inmate's term, the court will deem it to have been fixed at the the " Maximum " if the Authority [BPT] does not act promptly to fix the primary term of a sentence. (People v. Wingo, supra, anate, pp 169, 183 "). Petitioner's term was not promptly fixed by the BPT at his " Four Subsequent Parole Consideration Board hearing " and thus in accordance with the above.


9.  In petitioner's case the gravity of his offense has been used in the last four subsequent parole consideration hearings. ( See, Exhibit "H" for attached decisions from 1998. 1999, 2000, and 2002, board hearings).  In petitioner's case the BPT did Not follow PC §3041(a) or it's own regulations set forth in 15 CCR §2402.  There was no evidence, not even slight or "Some" evidence, to support its finding of parole unsuitability, in petitioner's case. other then the offense itself.----------------------------------------------------------


Request . . .


(Continuing on page 7).


page 6.

Petitioner Prayfully Request:

1. Issue a writ of habeas corpus;

2. Issue an order to show cause;

3. Declare the rights of the parties;

4. Order petitioner's released uner date ast on "Legal Status
   Sheet" (Exhibit "G";

5. Grant any and all other relief deemed appropriate.

Date: July 17, 2003

                                    Roy Henry White

# *SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES*

**DEPT 100**

| | | |
|---|---|---|
| Date: OCTOBER 1, 2003 | | |
| Honorable: DAVID S. WESLEY | Judge M. REINOSO | Deputy Clerk |
| NONE | Bailiff NONE | Reporter |

|  |  |
|---|---|
| | (Parties and Counsel checked if present) |
| BH 002397 IN RE, ROY WHITE, Petitioner, On Habeas Corpus | Counsel for Petitioner: Counsel for Respondent: |

Nature of Proceedings:    ORDER RE: WRIT OF HABEAS CORPUS

The Court has read and considered Petitioner's Writ of Habeas Corpus filed on August 15, 2003 after the Board of Prison Terms ("Board") refused to set a parole date for Petitioner following the parole suitability hearing on February 26, 2002. See Transcript of Parole Suitability Hearing conducted on February 26, 2002, attached to Petition. The Petitioner pled guilty to second degree murder with a firearm enhancement and was sentenced to a term of 15 years to life plus two years for the firearm enhancement. Petitioner was received into custody on April 1, 1986 and his minimum eligible parole date was November 17, 1996. See Transcript at 1. At the 2002 hearing the Board denied parole for two years from the effective date of the Board's decision – March 20, 2002. See id. at Decision Page 7. Petitioner now seeks habeas corpus relief from the Board's finding of parole unsuitability.

The petition is denied, as fully reflected in the Order re: Writ of Habeas Corpus.

Order re: Writ of Habeas Corpus is signed and filed this date.

A copy of the Order re: Writ of Habeas Corpus and this minute order are sent via U.S. Mail as follows:

Roy Henry White
D-27085
Post Office Box 689
Soledad, CA 93960-0689

**THE DOCUMENT TO WHICH THIS CERTIFICATE IS ATTACHED IS A FULL, TRUE, AND CORRECT COPY OF THE ORIGINAL ON FILE AND OF RECORD IN MAY OFFICE.**
**ATTEST _____ 10-06-03 _____**

**JOHN A. CLARKE, Executive Officer/Clerk of the Superior Court of the State of California for the County of Los Angeles.**
**By _____ (M. Reinoso), Deputy**

1

| Minutes Entered |
|---|
| 10-01-03 |
| County Clerk |

**FILED**

LOS ANGELES SUPERIOR COURT

OCT 0 1 2003

JOHN A. CLARKE, CLERK

BY M. REINOSO, DEPUTY

1

2

3

4

5

6

7               SUPERIOR COURT OF THE STATE OF CALIFORNIA

8                     FOR THE COUNTY OF LOS ANGELES

9

10   In re                              )
                                        )
11        ROY WHITE,                     )   CASE NO. BH 002397
                                        )
12              Petitioner,              )   ORDER RE WRIT OF HABEAS CORPUS
                                        )
13        On Habeas Corpus.              )
                                        )
14   _____)

15        The Court has read and considered Petitioner's Writ of Habeas Corpus filed on August

16   15, 2003 after the Board of Prison Terms ("Board") refused to set a parole date for Petitioner

17   following the parole suitability hearing on February 26, 2002. See Transcript of Parole

18   Suitability Hearing conducted on February 26, 2002, attached to Petition. The Petitioner pled

19   guilty to second degree murder with a firearm enhancement and was sentenced to a term of 15

20   years to life plus two years for the firearm enhancement. Petitioner was received into custody on

21   April 1, 1986 and his minimum eligible parole date was November 17, 1996. See Transcript at

22   1. At the 2002 hearing the Board denied parole for two years from the effective date of the

23   Board's decision - March 20, 2002. See id. at Decision Page 7. Petitioner now seeks habeas

24   corpus relief from the Board's finding of parole unsuitability.

25        The judicial branch is authorized to review the factual basis of a decision of the Board

26   denying parole suitability in order to ensure that the decision comports with the requirements of

27

28                                          1

1   due process of law, but that in conducting such a review, the court may inquire only whether

2   some evidence in the record before the Board supports the decision to deny parole, based upon

3   the factors specified by statute and regulation. If the decision's consideration of the specified

4   factors is not supported by some evidence in the record and thus is devoid of a factual basis, the

5   court should grant the prisoner's petition for writ of habeas corpus and should order the Board to

6   vacate its decision denying parole and thereafter to proceed in accordance with due process of

7   law.   In re Rosenkrantz (2002) 29 Cal.4th 616, 658.

8          The Board relied upon the commitment offense in its decision to deny parole.  The

9   commitment offense was the murder of one Harold Crawford.  Petitioner admitted that the reason

10  he shot Crawford was to rob him of cocaine.  See Transcript at 5.  Accordingly, there was some

11  evidence to support the Board's finding that the offense was animated by a trivial motive.

12  See Transcript at Decision Page 1.

13         The Board also cited to Petitioner's prior criminal history as a basis for its decision.

14  Petitioner pled guilty to the crime of possession, manufacture and sale of a dangerous weapon

15  (nanchakus).  See Transcript at 11.  Additionally, Petitioner pled guilty to vehicle tampering for

16  which he served 2 years probation.  Id.

17         Finally the Board cited Petitioner's failure to attend self-help sessions as a reason for its

18  decision.  Petitioner admitted to his "heavy" cocaine use (see Transcript at pp. 12-13) and his

19  irregular attendance at AA sessions.  See id. at 25.  The Petitioner's psychological report stated

20  that "the most significant risk factor for [Petitioner] as a precursor to violence would be

21  continued abuse of crack cocaine."  Id. at 30.  As such, there is a basis to find that Petitioner

22  would pose an unreasonable risk to society if released, pending further therapy and treatment.

23  Accordingly, there is some evidence to support the Board's denial based on Petitioner's failure to

24  attend self-help sessions.

25         The Court can not substitute its judgment for that of the Board's, as long as the record

26  shows that the Board properly considered the various factors in a prisoner's case and exercised

27

28                                          2

1  its discretion thereon.  See In re Mills (1961) 55 Cal. 2d 646, 654.  The transcript of the 2002

2  suitability hearing indicates that the Board considered the factors relevant to Petitioner's parole

3  suitability and, as indicated above, the Board's denial finds support in "some evidence."  In re

4  Rosenkrantz (2002) 29 Cal.4th 616, 658.

5          The petition is denied.

6

7  October 1, 2003

8                                                          DAVID S. WESLEY
                                                          Judge of the Superior Court
9

10 Clerk to give notice.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT "K"


Order/Petition

Name  Roy H. White

Address  P.O. Box 689 Z-Wing 308-L

Soledad, CA 93960-0689

_____

CDC or ID Number  D-27085

IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

IN AND FOR THE COUNTY OF LOS ANGELES

(Court)

PETITION FOR WRIT OF HABEAS CORPUS

Petitioner  Roy Henry White
vs.
District Attorney, Mr. Dave Dahle
A.P. Kane, Warden, CTF
Respondent

No. _____

(To be supplied by the Clerk of the Court)

## INSTRUCTIONS — READ CAREFULLY

- **If you are challenging an order of commitment or a criminal conviction and are filing this petition in the Superior Court, you should file it in the county that made the order.**

- **If you are challenging the conditions of your confinement and are filing this petition in the Superior Court, you should file it in the county in which you are confined.**

- Read the entire form *before* answering any questions.

- This petition must be clearly handwritten in ink or typed. You should exercise care to make sure all answers are true and correct. Because the petition includes a verification, the making of a statement that you know is false may result in a conviction for perjury.

- Answer all applicable questions in the proper spaces. If you need additional space, add an extra page and indicate that your answer is "continued on additional page."

- If you are filing this petition in the Superior Court, you need file only the original unless local rules require additional copies. Many courts require more copies.

- If you are filing this petition in the Court of Appeal, file the original and four copies.

- If you are filing this petition in the California Supreme Court, file the original and thirteen copies.

- Notify the Clerk of the Court in writing if you change your address after filing your petition.

- In most cases, the law requires service of a copy of the petition on the district attorney, city attorney, or city prosecutor. See Penal Code section 1475 and Government Code section 72193. You may serve the copy by mail.

Approved by the Judicial Council of California for use under Rules 56.5 and 201(h)(1) of the California Rules of Court [as amended effective January 1, 1999]. Subsequent amendments to Rule 44(b) may change the number of copies to be furnished the Supreme Court and Court of Appeal.

Form Approved by the
Judicial Council of California
MC-275 [Rev. January 1, 1999]

**PETITION FOR WRIT OF HABEAS CORPUS**

Penal Code, § 1473 et seq.;
Cal. Rules of Court, rules 56.5, 201(h)

This petition concerns:

☐ A conviction  ☒ Parole
☐ A sentence  ☐ Credits
☐ Jail or prison conditions  ☐ Prison discipline
☐ Other (specify):

1. Your name: Roy Henry White

2. Where are you incarcerated? Soledad, Correctional Training Facility.

3. Why are you in custody? ☒ Criminal Conviction  ☐ Civil Commitment

Answer subdivisions a. through i. to the best of your ability.

a. State reason for civil commitment or, if criminal conviction, state nature of offense and enhancements (for example, "robbery with use of a deadly weapon").

Murder, with use of weapon.

b. Penal or other code sections: Penal Code §§187(a) 12022.5.

c. Name and location of sentencing or committing court: Los Angeles, Superior Court.

d. Case number: A777487.

e. Date convicted or committed: April 04, 1986.

f. Date sentenced: February 03, 1986.

g. Length of sentence: 15 years to life-plus (2) two for gun use.

h. When do you expect to be released? Don't Know.

i. Were you represented by counsel in the trial court? ☒ Yes. ☐ No. If yes, state the attorney's name and address:
Mr. Mike Duffey, Deputy Public Defender. Address: Unknown.

4. What was the LAST plea you entered? (check one)
☐ Not guilty  ☒ Guilty  ☐ Nolo Contendere  ☐ Other:

5. If you pleaded not guilty, what kind of trial did you have?
☐ Jury  ☒ Judge without a jury  ☐ Submitted on transcript  ☐ Awaiting trial

6. GROUNDS FOR RELIEF
**Ground 1:** State briefly the ground on which you base your claim for relief. For example, "the trial court imposed an illegal enhancement." *(If you have additional grounds for relief, use a separate page for each ground. State ground 2 on page four. For additional grounds, make copies of page four and number the additional grounds in order.)*

The District Attorney breached petitioner's Plea Agreement Contract, he recharacterized petitioner's offense as one more serious than that to which petitioner pled, in violation of the United States Constitution's Art. 1, § 10. Impairing the obligation of contracts. Also, the U.S. Constitution's Fifth and Fourteenth Amendments, liberty and due process.

a. Supporting facts.
Tell your story briefly without citing cases or law. If you are challenging the legality of your conviction, describe the facts upon which your conviction is based. *If necessary, attach additional pages.* CAUTION: You must state facts, not conclusions. For example, if you are claiming incompetence of counsel you must state facts specifically setting forth what your attorney did or failed to do and how that affected your trial. Failure to allege sufficient facts will result in the denial of your petition. (See *In re Swain* (1949) 34 Cal.2d 300, 304.) A rule of thumb to follow is: *who* did exactly *what* to violate your rights at what time *(when)* or place *(where)*. (If available, attach declarations, relevant records, transcripts, or other documents supporting your claim.)

On January 03, 2005 at Soledad-Correctional Training Facility, petitioner appeared before the Board of Prison Terms (Hereafter) BPT, approximately 3:00 pm for Subsequent parole consideration hearing (5) five. During petitioner's hearing the Deputy District Attorney: Mr. Dave Dahle, stated, " There are elements of Execution Killing." (See, Exhibit "A" BPT-Transcripts, at page 52, lines 7-8). This statement by the District Attorney recharacterized petitioner's offense as one more serious having a First Degree Murder Offense. The District Attorney also stated petitioner, " Still hasn't served adequate time based on the nature of the killing. " (See, Exhibit "A" Transcripts, at page 54, lines 9-10). By the District Attorney making such statements he seeks a more severe punishment then reasonably underatood by petitioner when petitioner accepted a plea of Second Degree. Continue on page (1) one...

b. Supporting cases, rules, or other authority (optional):
*(Briefly discuss, or list by name and citation, the cases or other authorities that you think are relevant to your claim. If necessary, attach an extra page.)*

For supporting cases, (See, pages: 1, 2, and 3.)

7. **Ground 2 or Ground** _____ (if applicable):

_____

a. Supporting facts:

_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

b. Supporting cases, rules, or other authority:

_____
_____
_____
_____
_____
_____

MC-275 [Rev. January 1, 1999]

8. Did you appeal from the conviction, sentence, or commitment?  ☐ Yes.  ☒ No.    If yes, give the following information:
   a. Name of court ("Court of Appeal" or "Appellate Dept. of Superior Court"):

   _____

   b. Result: _____    c. Date of decision: _____

   d. Case number or citation of opinion, if known: _____

   e. Issues raised:  (1) _____

      (2) _____

      (3) _____

   f. Were you represented by counsel on appeal?  ☐ Yes.  ☐ No.  If yes, state the attorney's name and address, if known:

   _____

9. Did you seek review in the California Supreme Court?  ☐ Yes.  ☐ No.    If yes, give the following information:

   a. Result: _____    b. Date of decision: _____

   c. Case number or citation of opinion, if known: _____

   d. Issues raised:  (1) _____

      (2) _____

      (3) _____

10. If your petition makes a claim regarding your conviction, sentence, or commitment that you or your attorney did not make on appeal, explain why the claim was not made on appeal:

   _____

   _____

11. Administrative Review:
   a. If your petition concerns conditions of confinement or other claims for which there are administrative remedies, failure to exhaust administrative remedies may result in the denial of your petition, even if it is otherwise meritorious. (See *In re Muszalski* (1975) 52 Cal.App.3d 500 [125 Cal.Rptr. 286].) Explain what administrative review you sought or explain why you did not seek such review:

   There is no 1040 administrative appeal at this time.  See, Exhibit

   "A" Transcripts, for date of final decision, May 03, 2005.)

   (Page: 62).

   _____

   _____

   _____

   _____

   _____

   _____

   b. Did you seek the highest level of administrative review available?  ☐ Yes.  ☒ No.
      *Attach documents that show you have exhausted your administrative remedies.*

MC-275 [Rev. January 1, 1999]            **PETITION FOR WRIT OF HABEAS CORPUS**            Page five of six

12. Other than direct appeal, have you fil... any other petitions, applications, or motions wit... ...spect to this conviction, commitment, or **issue** in any court?  [X] Yes. If yes, continue with number 13.  [ ] No. If no, skip to number 15.

13. a. (1) Name of court:   Court of Appeals of California, Second Appellate District.

(2) Nature of proceeding (for example, "habeas corpus petition"):   Petition for habeas corpus.

(3) Issues raised: (a)   Parole

(b)

(4) Result (Attach order or explain why unavailable):   Denied,   See,   Exhibit "D" Court Order.

(5) Date of decision:   July 06, 2005.

b. (1) Name of court:   Division Five.   Second Appellate.

(2) Nature of proceeding:

(3) Issues raised: (a)

(b)

(4) Result (Attach order or explain why unavailable):

(5) Date of decision:

c. *For additional prior petitions, applications, or motions, provide the same information on a separate page.*

14. If any of the courts listed in number 13 held a hearing, state name of court, date of hearing, nature of hearing, and result:

15. Explain any delay in the discovery of the claimed grounds for relief and in raising the claims in this petition. (See *In re Swain* (1949) 34 Cal.2d 300, 304.)

Lock-downs.

16. Are you presently represented by counsel?   [ ] Yes.   [X] No. If yes, state the attorney's name and address, if known:

Petition For Review,   IN THE SUPREME COURT OF CALIFORNIA.

17. Do you have any petition, appeal, or other matter pending in any court?   [X] Yes.   [ ] No. If yes, explain:

18. If this petition might lawfully have been made to a lower court, state the circumstances justifying an application to this court:   NONE.

I, the undersigned, say: I am the petitioner in this action. I declare under penalty of perjury under the laws of the State of California that the foregoing allegations and statements are true and correct, except as to matters that are stated on my information and belief, and as to those matters, I believe them to be true.

Date:   August 03, 2005

▶   Mr. John Thomas White
(SIGNATURE OF PETITIONER)

a. Suporting facts: (Continuing)

   See, Exhibit "B" Judgment.)


b. Supporting cases, rules, or other authority:

THE DISTRICT ATTORNEY MUST PROVIDE THE RICIPROCAL BENEFIT OF
LESSENED PUNISHMENT TO A PRISONER CONTRACTUALLY CONVICTED BY PLEA
AGREEMENT.

   A plea agreement is a contract between the defendant, the
executive branch of government, and the Court. ...
People v. Cunningham, (1996) 49 Cal.App.4th 1046, Thompson v.
Calderon, (9th Cir.1996) 86 F.3d 1509, United States v. Anderson,
(9th Cir 1992) 970 F.2d 602, 606, Brown v. Poole, (9th Cir. 2003
DJDAR 8706.)


THE DISTRICT ATTORNEY CANNOT RECHARACTERIZE A PLEA BASED ...
COMMITMENT OFFENSE AS A CRIME CARRYING A HIGHER DEGREE.

   Penal Code §1192.1 " Upon a plea of guilty to ... a crime
divided into degrees... such plea may specify the degree thereof,
and in such an event the defendant cannot be punished for a higher
degree of the crime... than the degree specified."

   Petitioner contends that; he plead guilty to Second Degree
Murder, 15 years (to life), plus two (2) years weapon enhancement,
with a minimum term of 10 years "LATTER" of the 17 year minimm.
U.S. v. DE LA Fuente (9th Cir. 1993) 8 F.3d 1333, 1340.  [It
would] impute governmental cyincism and bad faith in negotiating
an agreement under which [THE GOVERNMENT] persuaded a defendant
to [Plead Guilty] by offering what appeared to be a reduced ...
sentence, but in fact offered him no benefit.  [The petitioner]
could not have reasonably understood the terms of the plea ...
agreement to offer nothing in exchange for [pleading guilty and
serving a lengthy prison term.]  Or life without parole.

1

b. Supporting cases, rules, or other authority:

In <u>People v. Avila</u> (1994) 24 Cal.App.4th 1455, the defendant
was originally charged with first degree murder but entered a
plea to murder of the second degree.  In denying his motion to
withdraw his plea, the appellate court relied in part on the fact
that his negotiated sentence of 16 years to life was a favorable
one.  (<u>Id.</u> at 1460.)  A plea reducing the crime to second degree
murder would not, however, be favorable if a parole board
subsequently had the power to nullify the plea, re-characterize
the crime as first degree murder, and then deny parole principally
for that reason.

It would be a violation of due process for the State of
California and the Los Angeles County District Attorney to now be
allowed to re-characterize this petitioner's plea in contravention
of the earlier agreement of the parties. In re Ramirez, supra, 94
Cal.App.4th 549, 569-570, fn. 8.)

U.S. V. quan (9th Cir. 1986) 789 F.2d 711, 713.  When a plea
rests in any significant degree on a promise or agreement of the
prosecutor so that it can be said to be part of the inducement or
consideration, such promise must be fulfilled.  (Santobello v.
New Youk 404 U.S. 257, 262, 92 S.ct 495, 499, 30 L. Ed.2d 427
(1971).  If the prosecutor fails to perform his side of the plea
agreement the plea becomes involuntary and the ensuing sentence
subject to collateral attack.  (U.S. v. Clark (9th Cir. 1986) 781
F.2d 730, 731.)

The judicial branch, by accepting the plea reducing a first
degree murder to a second degree, places a constitutional
imprimatur upon the arrangement and is available to either party
seeking redress.  <u>Peopole v. Cunningham,</u> (1996) 49 Cal.App.4th
1044, 1047 [a plea agreement is, in essence, a contract between
the defendant and prosecutor to which the court consents to be
bound].  Continuing on page (3) three.

2

b. Supporting cases, rules, or other authority:

   ...The reciprocal nature of a plea bargain agreement mandates
that either party to the agreement be entitled to enforce the
agreement in a situation where the party is deprived of the
benefit of the bargain.  People v. Collins, (1996) 45 Cal.App.4th
849, 863.


   Petitioner contends that; He plead guilty to second degree
murder 15 years to life, plus two years weapon enhancement, with
a mimimum term of 10 years "latter" of the 17 years max.  (See,
Exhibit "C" DSL Term Sheet.)

Petitioner comes now before this Honorable Court, with a "Question
of Law."  " Is there a difference between a First Degree plea
Bargain and a Second Degree Plea Bargain, of murder? "  " And at
what point does first and second differ??

PRAYER FOR RELIEF

1. Issue a Writ of Habeas Corpus;

2. Issue an order directing petitioner's contract to be upheld;

3. Order petitioner released according to plea agreement;

4. Grant all other relief necessary to promote the end of JUSTICE.


Date: August 03, 2005                  M. Kay Henry White
                                          In-Pro-Per

3

1
2
3
4
5
6
7
8

**CONFORMED COPY**
OF ORIGINAL FILED
Los Angeles Superior Court

SEP 2005

John A. Clarke, Executive Officer/Clerk

By _____, Deputy

9

# SUPERIOR COURT OF THE STATE OF CALIFORNIA

10

# FOR THE COUNTY OF LOS ANGELES

11

12  In re,                                    )   Case No.: BH003526
                                             )        (A777487)
13  ROY WHITE                                )   ORDER RE: WRIT OF HABEAS CORPUS
                                             )
14                                            )
                                             )
15                Petitioner,                )
                                             )
16          On Habeas Corpus                  )
                                             )
17  _____)

18          The Court has read and considered petitioner's Writ of Habeas Corpus filed on April 15,

19  2005. On January 3, 2005, The Board of Prison Terms ("Board") found petitioner unsuitable for

20  parole. Petitioner argues that the Deputy District Attorney who appeared at the hearing

21  impermissibly recharacterized his conviction for second-degree murder to first-degree, in

22  violation of his plea agreement.

23          Petitioner pled guilty, pursuant to a plea agreement with the District Attorney's office, to

24  second-degree murder. In exchange he received a sentence of fifteen years to life, plus two years

25  for a weapon enhancement. The Board was not a party to that agreement. Petitioner does not

26  argue that anyone promised he would only serve the *minimum* term or that the District Attorney

27  agreed not to oppose parole.

28

1

1      Suitability for parole rests within the discretionary power of the Board of Prison Terms.

2  (Penal Code §§3040, 5075, et seq.)  The Board noted the District Attorney's opposition to

3  petitioner's parole but did not rely on that opposition as grounds for denying petitioner parole.

4  As such, the Deputy District Attorney's comments are not relevant to whether the Board

5  properly denied petitioner parole.  Regardless, petitioner agreed to an indeterminate sentence

6  with a maximum of *life*.  He will serve the maximum unless and until the Board acts to set a

7  shorter term.  (*In re Dannenberg* (2005) 34 Cal.4[th] 1061, 1097-1098.)

8      Accordingly, the petition is denied.

9

10

11

12  September **29**, 2005

13

14  Clerk to give notice



DAVID S. WESLEY
Judge of the Superior Court

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT "L"

Order/Petition

MC-275

Name  Roy Henry White

Address  P.O. Box 689

Z-Wing 308-L

Soledad, CA 93960-0689

CDC or ID Number  D-27085

## IN THE  SUPERIOR  COURT  OF  THE  STATE  OF  CALIFORNIA

### IN  AND  FOR  THE  COUNTY  OF  LOS  ANGELES

(Court)

Roy Henry White

Petitioner

vs.

Respondent

Ben Curry, Acting Warden

**PETITION FOR WRIT OF HABEAS CORPUS**

No. _____

(To be supplied by the Clerk of the Court)

## INSTRUCTIONS — READ CAREFULLY

- If you are challenging an order of commitment or a criminal conviction and are filing this petition in the Superior Court, you should file it in the county that made the order.

- If you are challenging the conditions of your confinement and are filing this petition in the Superior Court, you should file it in the county in which you are confined.

- Read the entire form *before* answering any questions.

- This petition must be clearly handwritten in ink or typed. You should exercise care to make sure all answers are true and correct. Because the petition includes a verification, the making of a statement that you know is false may result in a conviction for perjury.

- Answer all applicable questions in the proper spaces. If you need additional space, add an extra page and indicate that your answer is "continued on additional page."

- If you are filing this petition in the Superior Court, you need file only the original unless local rules require additional copies. Many courts require more copies.

- If you are filing this petition in the Court of Appeal, file the original and four copies.

- If you are filing this petition in the California Supreme Court, file the original and thirteen copies.

- Notify the Clerk of the Court in writing if you change your address after filing your petition.

- In most cases, the law requires service of a copy of the petition on the district attorney, city attorney, or city prosecutor. See Penal Code section 1475 and Government Code section 72193. You may serve the copy by mail.

Approved by the Judicial Council of California for use under Rules 56.5 and 201(h)(1) of the California Rules of Court [as amended effective January 1, 1999]. Subsequent amendments to Rule 44(b) may change the number of copies to be furnished the Supreme Court and Court of Appeal.

Page one of six

Form Approved by the
Judicial Council of California
MC-275 [Rev. January 1, 1999]
Optional Form

**PETITION FOR WRIT OF HABEAS CORPUS**

WEST
GROUP

Penal Code, § 1473 et seq.;
Cal. Rules of Court, rules 56.5, 201(h)

This petition concerns:

☐ A conviction                    ☐ Parole

☒ A sentence                      ☐ Credits

☐ Jail or prison conditions       ☐ Prison discipline

☐ Other (specify): _____

1. Your name: __Roy Henry White__

2. Where are you incarcerated? __Soledad-Correctional Training Facility/Central.__

3. Why are you in custody? ☒ Criminal Conviction  ☐ Civil Commitment

   *Answer subdivisions a. through i. to the best of your ability.*

   a. State reason for civil commitment or, if criminal conviction, state nature of offense and enhancements (for example, "robbery with use of a deadly weapon").

   __Secound degree murder, with use of weapon.__

   b. Penal or other code sections: __Penal Code §§ 187(a) and 12022.5.__

   c. Name and location of sentencing or committing court: __Los Angeles Superior Court.__

   d. Case number: __A777487.__

   e. Date convicted or committed: __April 04, 1986__

   f. Date sentenced: __February 28, 1986.__

   g. Length of sentence: __15-to-life-plus two (2) years.__

   h. When do you expect to be released? __Don't know.__

   i. Were you represented by counsel in the trial court? ☒ Yes. ☐ No. If yes, state the attorney's name and address:

   __Mr. Mike Duffey, Public Defender.  Address: Unknown.__

4. What was the LAST plea you entered? *(check one)*

   ☐ Not guilty  ☒ Guilty  ☐ Nolo Contendere  ☐ Other: _____

5. If you pleaded not guilty, what kind of trial did you have?

   ☐ Jury  ☐ Judge without a jury  ☐ Submitted on transcript  ☐ Awaiting trial

9. GROUNDS FOR RELIEF

Ground 1: State briefly the ground on which you base your claim for relief. For example, "the trial court imposed an illegal enhancement." (If you have additional grounds for relief, use a separate page for each ground. State ground 2 on page four. For additional grounds, make copies of page four and number the additional grounds in order.)

PC § 1191.1 in part "such plea may specify the degree thereof and in such

event the defendant cantnot be punished for a higher degree of the

crime."    Art. 1, § 10. In part " No state shall...; pass any bill of

attainder,...or law impairing the obligation of contracts,..."

a. Supporting facts:

Tell your story briefly without citing cases or law. If you are challenging the legality of your conviction, describe the facts upon which your conviction is based. If necessary, attach additional pages. CAUTION: You must state facts, not conclusions. For example, if you are claiming incompetence of counsel you must state facts specifically setting forth what your attorney did or failed to do and how that affected your trial. Failure to allege sufficient facts will result in the denial of your petition. (See In re Swain (1949) 34 Cal.2d 300, 304.) A rule of thumb to follow is: who did exactly what to violate your rights at what time (when) or place (where). (If available, attach declarations, relevant records, transcripts, or other documents supporting your claim.)

On January 31, 1986 petitioner entered into a plea agreement with the

Los Angeles District Attorney's Office.   The plea was for a second degree

with the  "Understanding..." that petitioner would do less time then a

first degree 25-to-life sentence, if petitioner accepted the 15-to-life

sentence.   See, Echibit "A" Certified Plea, Reporter's Transcript, at

page 3, lines 22-27.

Petitioner now come before this Honorable Court, with a question of law.

That question of law is, " Is there a difference in time between a second

degree 15-to-life and a first degree 25-to-life sentence? "

Petitioner is not claiming a violation of law.   Only asking this question

of law after doing over 20 years on a second degree 15-to-life plus 2

years sentence, nor is petitioner seeking to withdraw his plea, only the

answer to the question of law between the two sentences.

b. Supporting cases, rules, or other authority (optional):

(Briefly discuss, or list by name and citation, the cases or other authorities that you think are relevant to your claim. If necessary, attach an extra page.)

PC § 1192.2  Specification of degree in plea of guilty before committing

magistrate.   In part, " crime devided into degrees, when consented to by

the prosecuting attorney in open court and approved by such magistrate,

such plea may spcify the degree. "

**PETITION FOR WRIT OF HABEAS CORPUS**

7. Ground 2 or Ground _____ (if applicable):

a. Supporting facts:

b. Supporting cases, rules, or other authority:

8. Did you appeal from the conviction, sentence, or commitment?  ☐ Yes. ☒ No.   If yes, give the following information:

   a. Name of court ("Court of Appeal" or "Appellate Dept. of Superior Court"):

   b. Result: _____    c. Date of decision: _____

   d. Case number or citation of opinion, if known: _____

   e. Issues raised: (1) _____

      (2) _____

      (3) _____

   f. Were you represented by counsel on appeal?  ☐ Yes. ☐ No.  If yes, state the attorney's name and address, if known:

_____

9. Did you seek review in the California Supreme Court?  ☐ Yes. ☐ No.   If yes, give the following information:

   a. Result: _____    b. Date of decision: _____

   c. Case number or citation of opinion, if known: _____

   d. Issues raised: (1) _____

      (2) _____

      (3) _____

10. If your petition makes a claim regarding your conviction, sentence, or commitment that you or your attorney did not make on appeal, explain why the claim was not made on appeal:

_____

_____

11. Administrative Review:

   a. If your petition concerns conditions of confinement or other claims for which there are administrative remedies, failure to exhaust administrative remedies may result in the denial of your petition, even if it is otherwise meritorious. (See *In re Muszalski* (1975) 52 Cal.App.3d 500 [125 Cal.Rptr. 286].) Explain what administrative review you sought or explain why you did not seek such review:

There is on administrative appeal to this action.

_____

_____

_____

_____

_____

_____

_____

_____

   b. Did you seek the highest level of administrative review available?  ☐ Yes. ☒ No.
    *Attach documents that show you have exhausted your administrative remedies.*

12. Other than direct appeal, have you filed any other petitions, applications, or motions with respect to this conviction, commitment, or issue in any court?  [X] Yes. If yes, continue with number 13.    [ ] No. If no, skip to number 15.

13. a. (1) Name of court: __Los Angeles Superior Court__

    (2) Nature of proceeding (for example, "habeas corpus petition"): __Habeas corpus__

    (3) Issues raised: (a) __Parole__

        (b) _____

    (4) Result (Attach order or explain why unavailable): __Denied. Exhinit "B"__

    (5) Date of decision: __October 01, 2003__

  b. (1) Name of court: _____

    (2) Nature of proceeding: _____

    (3) Issues raised: (a) _____

        (b) _____

    (4) Result (Attach order or explain why unavailable): _____

    (5) Date of decision: _____

  c. For additional prior petitions, applications, or motions, provide the same information on a separate page.

14. If any of the courts listed in number 13 held a hearing, state name of court, date of hearing, nature of hearing, and result:

_____

15. Explain any delay in the discovery of the claimed grounds for relief and in raising the claims in this petition. (See *In re Swain* (1949) 34 Cal.2d 300, 304.) __The delay was the belife of not having enough time in and now petitioner believes he has done enough time on his second degree sentence.__

16. Are you presently represented by counsel?  [ ] Yes.  [X] No. If yes, state the attorney's name and address, if known:

_____

17. Do you have any petition, appeal, or other matter pending in any court?  [ ] Yes.  [ ] No. If yes, explain:

_____

18. If this petition might lawfully have been made to a lower court, state the circumstances justifying an application to this court:

__NONE.__

I, the undersigned, say: I am the petitioner in this action. I declare under penalty of perjury under the laws of the State of California that the foregoing allegations and statements are true and correct, except as to matters that are stated on my information and belief, and as to those matters, I believe them to be true.

Date: __July 24, 2006__

_(signature)_

(SIGNATURE OF PETITIONER)

PETITION FOR WRIT OF HABEAS CORPUS

SUPERIOR COURT OF CALIFORNIA
COUNTY OF LOS ANGELES
CENTRAL DISTRICT-CRIMINAL JUSTICE CENTER


Date: May 09, 2007


      To Calra Shortridge Foltz, Officer of The Los Angeles
Superior Court.  Nature of request.  On 8-01-06  this Court
received a Writ of Habesa Corpus, by Certified Mail from this
writer.  Inmate Roy Henry White, CDC# D-27085.

      As of writting to your office, I have not heard back on
said petition.  I have enclosed a copy of petition in question.
I also have another petition which is to be heard in July, to
which I received a order informing me so.

      Thank you! For your time in this matter.



Sincerely,

Mr. Roy H. White
D-27085 Z-Wing 308-L
P.O. Box 689
Soledad, CA 93960-0689

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Superior court of California
county of Los angeles
criminal Divisions D 100
210 west temple street
Los angeles California
90012

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X [signature] ☐ Agent ☐ Addressee

B. Received by (Printed Name)    C. Date of Delivery
[signature]    8/11/06

D. Is delivery address different from item 1?   ☐ Yes
   If YES, enter delivery address below:   ☐ No

3. Service Type
☐ Certified Mail    ☐ Express Mail
☐ Registered    ☐ Return Receipt for Merchandise
☐ Insured Mail    ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)    ☐ Yes

2. Article Number
(Transfer from service label)
7006 0100 0005 9598 0529

PS Form 3811, February 2004    Domestic Return Receipt    102595-02-M-1540

EXHIBIT "M"

Petition for Review/Order Denied/Petition to Second Appellate Court/
Order Denied/Petition to Los Angeles Superior Court/Order Denied.
All other orders and exhibits are enclosed.

Court of Appeal, Second Appellate District, Div. 1 - No. B202375
**S160963**

# IN THE SUPREME COURT OF CALIFORNIA

**En Banc**

In re ROY WHITE on Habeas Corpus

The petition for review is denied.

George, C.J., was absent and did not participate.

SUPREME COURT
FILED

APR 1 6 2008

Frederick K. Ohlrich Clerk

_____
Deputy

**WERDEGAR**

_____
Acting Chief Justice

IN THE SUPREME COURT OF CALIFORNIA

# S160963

No. _____

ROY HENRY WHITE

       Petitioner,

   v.

RESPONDENT,

       BEN CURRY, @ WARDEN

Court of Appeals
Second Appellate
District, Division 1
No. B202375

Los Angeles County
Superior Court
No. BH004419 , No. A777487

**SUPREME COURT**
**FILED**

FEB 1 9 2008

Frederick K. Ohlrich Clerk

_____
Deputy

## PETITION FOR REVIEW

After decision of the Court of Appeal, Second Appellate

District, Division one.  Denying the Petition for  Writ of Habeas

Corpus.

**RECEIVED**

FEB 1 9 2008

CLERK SUPREME COURT

Roy Henry White
D-27085 Z-Wing 308-L
P.O. Box 689
Soledad, CA 93960-0689

In-Pro-Per

i

IN THE SUPERME COURT OF THE STATE OF CALIFORNIA

No._____

ROY HENRY WHITE                    )
                                   )
        Petitioner,                )        COURT OF APPEALS
                                   )        SECOND APPELLATE
                                   )        DISTRICT, DIVISION
    v.                             )        ONE
                                   )        No.BH004419
        Respondent,                )
                                   )
BEN CURRY, @ Warden                )
                                   )

## PETITION FOR REVIEW

To the Honorable Chief Justice, and To the Honorable Associate
Justices of THE SUPREME COURT OF THE STATE OF CALIFORNIA:

        Petitioner Roy Henry White, petitions this Honorable Court, for
review following the decision of Appeal, to the Second Appellate
District Court, Division One, filed September 26, 2007: Opposition
thereto, filed December 31, 2007 and petition denied, on February 07,
2008.  See, copy, of the Court of Appeal denial attached hereto as
Exhibit "I".

1

## QUESTION PRESENTED

1.    Is the Board of Parole Hearings violating the Petitioner's State and Federal Due Process Rights when Parole Suitability determinations are not based on using current risk of danger under post-conviction evidence  to make a nexus between the commitment offense, or can the commitment offense be used solely without making any nexus between post-conviction?

## NECESSITY FOR REVIEW

A grant of review and resolution of this issue by this Honorable Court, is necessary to settle an important question of law and California Code of Regulations Title 15. 2402(c) finding by itself could not possibly be sufficient since it would necessarily apply to every second degree murder.

In summary, petitioner respectfully, submits that in this case "some evidence" having an indicia of reliability does not support the Board's finding as required by the Due Process Clause of the California Constitution Which is Protected Under the "Some Evidence" Standard of Review.  And the United States Constitution, Fourteenth Amendments.  Biggs v. Terhune, (9th Cir. 2003) 334 F.3d 910.

## ARGUMENT

The Board Panel decision that petitioner is an unreasonable current risk of danger to society if released upon parole...

2

1    ...was arbitrary and capricious in violation of California

2    Constitution Art. 1 § 7 because  there was no evidence having

3    indicia of reliability to overcome the reliance on commitment

4    offence thus contravene petitioner's Constitutionally protected

5    expectation of parole.

6

7                          A. INTRODUCTION

8

9        On July 12, 2006 petitioner appeared before the Board of

10   Parole Hearings for  the sixth (6) time for parole

11   consideration and was found unsuitable  for parole based on

12   no nexus between post-conviction and commitment offense.

13   Petitioner received a one (1) year denial.  See, Exhibit "H'

14   Petition for Writ of Habeas Corpus, to the Los Angeles, Superior

15   Court.

16       Petitioner respectfully, submits that in accordance with

17   State and Federal due process standards, given petitioner's now

18   22 years of being disciplinary free, and programming performance

19   the gravity of my offense can no longer provide the some ...

20   evidence without making any nexus between the commitment

21   offense to support a denial decision.

22

23                            CONCLUSION

24       Petitioner respectfully, submits for these reason that

25   this Honorable Court grant review to bring an end to all these

26   issues frequently litigated over and over... with no clear

27   answer to the question?

28

1
2
3
4
5
6   *Date February 14, 2008*
7   Date: February 14, 2008
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Respectfully,

*Mr. Roy Henry White*

Roy Henry White

"In-Pro-Per"

Roy Henry White

D-27085 Z-Wing 308-L

P.O. Box 689

Soledad, CA 93960

                                        -0689

4

EXHIBIT "I"

COURT OF APPEAL DENIAL

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re<br><br>    ROY WHITE,<br><br>on<br><br>Habeas Corpus. | B202375<br><br>(L.A.S.C. Nos. BH004419, A777487)<br><br>O R D E R |

COURT OF APPEAL - SECOND DIST.

**F I L E D**

FEB - 7 2008

JOSEPH A. LANE       Clerk

P. SILVA       Deputy Clerk

THE COURT*:

    The petition for writ of habeas corpus, filed September 26, 2007; the opposition thereto, filed December 31, 2007; and the reply to the opposition, filed January 22, 2008, have been read and considered.

    The petition is denied.

_____

_____

   *VOGEL, Acting P. J.         ROTHSCHILD, J.         JACKSON, J.**

_____

**Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

OFFICE OF THE CLERK
COURT OF APPEAL
STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT
300 South Spring Street, Room 2217
Los Angeles, California 90013

Telephone:  (213) 830-7000
Facsimile:  (213) 897-2430

Division One

Re:    In re Roy White
       B202375; Petition for Writ of Habeas Corpus
       (Hon. Peter Espinoza; L.A.S.C. Nos. BH004419, A777487)

Opposition to the above-entitled petition shall be served and filed by 10 a.m., on November 19, 2007.  Any reply thereto shall be served and filed no later than 20 days after the filing of the opposition.

JOSEPH LANE, Clerk

Deputy Clerk

## PROOF OF SERVICE BY MAIL

### (C.C.P. §§1013A, 2015.5)

STATE OF CALIFORNIA )
                     ) SS.
COUNTY OF MONTEREY )

I, __Roy Henry White_____, am a resident of the State of California,

County of Monterey. I am over the age of 18 years and I   am/am not   a party to the within action.

My   business/residence   address is P.O. Box 689, Soledad, California, 93960-0689.

On __February 14_____, 20 _08____, I served the foregoing:

_____PETITION FOR REVIEW, IN THE SUPREME COURT OF CALIFORNIA.

on the parties listed below by placing a true copy thereof enclosed in a sealed envelope with postage

fully prepaid in the United States mail at Soledad, California, addressed as follows:

OFFICE OF THE ATTORNEY GENERAL
110 West A Street suite 1100
San Diego, CA 92101

There is regular delivery service by the U.S. Postal Service between the place of mailing

and the places so addressed.

I declare under the penalty of perjury under the laws of the State of California that the

foregoing is true and correct.

Executed this __February__ day of _____14_____, 20 _08____, at

Soledad, California.

/S/ _M. Roy Henry White_____

"In-Pro-Per"

**S 160963**

COURT OF APPEALS OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

|  |  |
|---|---|
| Roy Henry White )<br>)<br>)<br>)<br>PETITIONER, )<br>O<br>V. )<br>)<br>A.P. Kane, Warden )<br>CORRECTIONAL TRAINING )<br>FACILITY, SOLEDAD. )<br>)<br>) | No. _____<br><br>Los Angeles County<br>Superior Court<br>No. BH 004419 _____ |

**RECEIVED**

FEB 1 9 2008

CLERK SUPREME COURT

PETITION FOR WRIT OF HABEAS CORPUS

After decision of the Superior Court, County of Los Angeles
Denying the Petition for Writ of Habeas Corpus.

Roy Henry White, Petitioner
CTF-Central Z-Wing 308-L
P.O. Box 689
Soledad, CA 93960-0689
CDC No. # D-27085

In-Pro-Per

Name  Roy Henry White

Address  P.O. Box 689 Z-Wing 308-L

‾‾Soledad, CA 93960-0689‾‾‾‾‾‾

‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾

CDC or ID Number  # D-27085

‾‾‾CALIFORNIA COURT OF APPEALS‾‾‾

SECOND APPELLATE DISTRICT DIVISION TWO
*(Court)*

| | |
|---|---|
| ROY HENRY WHITE | **PETITION FOR WRIT OF HABEAS CORPUS** |
| Petitioner | |
| vs. | No. _____ |
| A.P. KANE, Warden, CTF Soledad | *(To be supplied by the Clerk of the Court)* |
| Respondent | |

## INSTRUCTIONS — READ CAREFULLY

- **If you are challenging an order of commitment or a criminal conviction and are filing this petition in the Superior Court, you should file it in the county that made the order.**

- **If you are challenging the conditions of your confinement and are filing this petition in the Superior Court, you should file it in the county in which you are confined.**

- Read the entire form *before* answering any questions.

- This petition must be clearly handwritten in ink or typed. You should exercise care to make sure all answers are true and correct. Because the petition includes a verification, the making of a statement that you know is false may result in a conviction for perjury.

- Answer all applicable questions in the proper spaces. If you need additional space, add an extra page and indicate that your answer is "continued on additional page."

- If you are filing this petition in the Superior Court, you need file only the original unless local rules require additional copies. Many courts require more copies.

- If you are filing this petition in the Court of Appeal, file the original and four copies.

- If you are filing this petition in the California Supreme Court, file the original and thirteen copies.

- Notify the Clerk of the Court in writing if you change your address after filing your petition.

- In most cases, the law requires service of a copy of the petition on the district attorney, city attorney, or city prosecutor. See Penal Code section 1475 and Government Code section 72193. You may serve the copy by mail.

Approved by the Judicial Council of California for use under Rules 56.5 and 201(h)(1) of the California Rules of Court [as amended effective January 1, 1999]. Subsequent amendments to Rule 44(b) may change the number of copies to be furnished the Supreme Court and Court of Appeal.

**Page one of six**

Form Approved by the
Judicial Council of California
MC-275 [Rev. January 1, 1999]
**PETITION FOR WRIT OF HABEAS CORPUS**
Penal Code, § 1473 et seq.;
Cal. Rules of Court, rules 56.5, 201(h)

This petition concerns:

- [ ] A conviction     [X] Parole

- [ ] A sentence     [ ] Credits

- [ ] Jail or prison conditions     [ ] Prison discipline

- [ ] Other (specify): _____

1. Your name:  ROY HENRY WHITE

2. Where are you incarcerated?  Soledad, Correctional Training Facility.

3. Why are you in custody?  [X] Criminal Conviction    [ ] Civil Commitment

   *Answer subdivisions a. through i. to the best of your ability.*

   a. State reason for civil commitment or, if criminal conviction, state nature of offense and enhancements (for example, "robbery with use of a deadly weapon").

      Murder, with use of weapon.

   b. Penal or other code sections:  Penal Code §§ 187(a) and 12022.5.

   c. Name and location of sentencing or committing court:  Los Angeles, Superior Court.

   d. Case number:  A777487.

   e. Date convicted or committed: February 03, 1986.

   f. Date sentenced:  April 04, 1986.

   g. Length of sentence: 15 years to life-plus 2, for the total of 17.

   h. When do you expect to be released? _____

   i. Were you represented by counsel in the trial court?  [X] Yes.   [ ] No.  If yes, state the attorney's name and address:

      Mike Duffey, Deputy Public Defender.  Address: Unknown.

4. What was the LAST plea you entered? *(check one)*

   [ ] Not guilty   [X] Guilty   [ ] Nolo Contendere   [ ] Other: _____

5. If you pleaded not guilty, what kind of trial did you have?

   [ ] Jury   [ ] Judge without a jury   [ ] Submitted on transcript   [ ] Awaiting trial

**PETITION FOR WRIT OF HABEAS CORPUS**

6. **GROUNDS FOR RELIEF**

**Ground 1:** State briefly the ground on which you base your claim for relief. For example, "the trial court imposed an illegal enhancement." *(If you have additional grounds for relief, use a separate page for each ground. State ground 2 on page four. For additional grounds, make copies of page four and number the additional grounds in order.)*

The Superior Court of Los Angeles, Order Denying Writ of Habeas Corpus.

was in error.   In violation of California Constitution Art. 1 § 7

and the U.S. Constitution's 14th Amendment due process guarantees,

because there was no " Some Evidence having indicia of reliability to ..

. .(Continue on attached page 1)...

a. Supporting facts:
Tell your story briefly without citing cases or law. If you are challenging the legality of your conviction, describe the facts upon which your conviction is based. *If necessary, attach additional pages.* CAUTION: You must state facts, not conclusions. For example, if you are claiming incompetence of counsel you must state facts specifically setting forth what your attorney did or failed to do and how that affected your trial. Failure to allege sufficient facts will result in the denial of your petition. (See *In re Swain* (1949) 34 Cal.2d 300, 304.) A rule of thumb to follow is: *who* did exactly *what* to violate your rights at what time *(when)* or place *(where). (If available, attach declarations, relevant records, transcripts, or other documents supporting your claim.)*

On December 27, 2006 Appellee, petition THE LOS ANGELES SUPERIOR COURT,

for a WRIT OF HABEAS CORPUS.   On September 04, 2007 Appellee received

Court Order denied.    (See, Exhibit " G " Court Order).

The Court error in it's review do to appellee pleading is there was

no "Some Evidence" of current risk or danger to society under appellee

"Post-conviction".  See attched, petition for writ of habeas corpus,

as exhibit "H".

b. Supporting cases, rules, or other authority (optional):
*(Briefly discuss, or list by name and citation, the cases or other authorities that you think are relevant to your claim. If necessary, attach an extra page.)*

See, attched page 1, for Supporting cases, rules, or other authority.

7. **Ground 2** or **Ground** _____ (if ap,  able):

a.  Supporting facts:

b.  Supporting cases, rules, or other authority:

8. Did you appeal from the conviction, ...tence, or commitment? [ ] Yes. [X] ... If yes, give the following information:

a. Name of court ("Court of Appeal" or "Appellate Dept. of Superior Court"): ______

b. Result: ______ c. Date of decision: ______

d. Case number or citation of opinion, if known: ______

e. Issues raised: (1) ______

(2) ______

(3) ______

f. Were you represented by counsel on appeal? [ ] Yes. [ ] No. If yes, state the attorney's name and address, if known:

______

9. Did you seek review in the California Supreme Court? [ ] Yes. [ ] No. If yes, give the following information:

a. Result: ______ b. Date of decision: ______

c. Case number or citation of opinion, if known: ______

d. Issues raised: (1) ______

(2) ______

(3) ______

10. If your petition makes a claim regarding your conviction, sentence, or commitment that you or your attorney did not make on appeal, explain why the claim was not made on appeal:

______

11. Administrative Review:

a. If your petition concerns conditions of confinement or other claims for which there are administrative remedies, failure to exhaust administrative remedies may result in the denial of your petition, even if it is otherwise meritorious. (See *In re Muszalski* (1975) 52 Cal.App.3d 500 [125 Cal.Rptr. 286].) Explain what administrative review you sought or explain why you did not seek such review:

There is no Administrative Review, in this action.

b. Did you seek the highest level of administrative review available? [ ] Yes. [ ] No.

*Attach documents that show you have exhausted your administrative remedies.*

12. Other than direct appeal, have you . . any other petitions, applications, or motions w . respect to this conviction, commitment, or **issue** in any court?  [X] Yes. If yes, continue with number 13.  [ ] No. If no, skip to number 15.

13. a. (1) Name of court:  Los Angeles, Superior Court.

    (2) Nature of proceeding (for example, "habeas corpus petition"):  WRIT OF HABEAS CORPUS.

    (3) Issues raised: (a)  Parole.

        (b) _____

    (4) Result (Attach order or explain why unavailable):  Denied. See Exhibit "G" Court Order.

    (5) Date of decision:  August 24, 2007

   b. (1) Name of court:  Los Angeles Superior Court.

    (2) Nature of proceeding:  Parole.

    (3) Issues raised: (a)  Post-Conviction Claim.

        (b) _____

    (4) Result (Attach order or explain why unavailable): _____

    (5) Date of decision: _____

   c. For additional prior petitions, applications, or motions, provide the same information on a separate page.

14. If any of the courts listed in number 13 held a hearing, state name of court, date of hearing, nature of hearing, and result:
    None.

15. Explain any delay in the discovery of the claimed grounds for relief and in raising the claims in this petition. (See In re Swain (1949) 34 Cal.2d 300, 304.)

16. Are you presently represented by counsel?  [ ] Yes.  [X] No. If yes, state the attorney's name and address, if known:

17. Do you have any petition, appeal, or other matter pending in any court?  [ ] Yes.  [X] No. If yes, explain:

18. If this petition might lawfully have been made to a lower court, state the circumstances justifying an application to this court:

I, the undersigned, say: I am the petitioner in this action. I declare under penalty of perjury under the laws of the State of California that the foregoing allegations and statements are true and correct, except as to matters that are stated on my information and belief, and as to those matters, I believe them to be true.

Date: September 20, 2007

▶ *Mr. Roy Henry White*
(SIGNATURE OF PETITIONER)

MC-275 [Rev. January 1, 1999]        **PETITION FOR WRIT OF HABEAS CORPUS**        Page six of six

1  ...overcome the reliance on petitioner's commitment offense.

2  Which contravene this inmate's Constitutionally protected

3  expectation or parole.  The decision that appellee is an

4  unreasonable risk or danger to society if released upon parole was

5  arbitrary and capricious.

6  b. Supporting cases, rules, or other authority (opotional):

7        The pleading on appeal is "some evidence, viewed under appellee

8  post-conviction" which is absent a shred of evidence that appellee

9  parole currently poses an "Unreasonable risk or danger" to society

10  if paroled.

11        In re Lawrence, 150 Cal.App.4th 1511, 1554-1556 (2007), This

12  Court stated, " The board and Governor must focus their parole

13  decision on whether a prisoner continues to pose an unreasonable

14  risk to public safety."  See also In re Gray, 151 Cal.App.4th 379

15  (007); In re Barker, 151 Cal.App.4th 346, 375-377 (2007).

16  Also In re Lawrence, Cal.Rptr. 3d 13, (2007) WL 1475283 (Cal.App.2

17  Dist.)  This Court stated, " [W]e conclude that the judicial

18  branch is authorized to review the factual basis of a decision of

19  the Board denying parole in order to ensure that the decision

20  comports with the requirements of due process of law, but that in

21  conducting such a review, the Court may inquire only whether some

22  evidence in the record before the Board supports the decision to

23  deny parole, based upon the factors specified by statute and

24  regulation. "

25        In re Rosenkrantz, supra, 29 Cal.4th 658.   The Calafornia

26  Supreme Court stated, " If the decision's consideration of the

27  specified factors is not supported by some evidence in the record

28  and thus is devoid of a factual basis, the Court...

1  should grant the prisoner's petition for writ of habeas corpus

2  and should order the Board to vacate its decision denying parole

3  and thereafter to proceed in accordance with due process of law."

4  The offense facts must demonstrate that the " Timing " or "

5  Gravity " of the commitment offense renders the inmate's parole a

6  current, public safety risk (for which every prospective parolee

7  was dangerous when he/she committed murder).  Cal. Penal Code

8  §3041(b).

9  Notwithstanding the terrible nature of my crime, if reliance

10  on an unchanging factor will forver constitute a valid denial of

11  parole, I would have "no hope of ever obtaining parole except

12  perhaps that a panel in the future will arbitrarily hold that the

13  circumstances were not that serious or the motive was more than

14  trivial.  I was conivcted of second-degree murder (under a plea

15  bargain).  The some evidence that a second-degree murder was

16  committed twenty-two years earlier, even dispassionate or trivial

17  in relation to the offense, does not satisfy the some evidence

18  standard of review.  For such evidence that the prespective

19  parolee obviously pose an unreasonable public safety risk at the

20  time of the murder, will always exist.  This is my six parole

21  hearing (and a resent BPH hearing held August 28, 2007) which

22  occurred after I served twenty-one years of a seventeen years-to-

23  life sentence.

24  The board panel, and the Superior Court merely recited

25  immutable offense factors without expaining how those factors

26  still serve to make this inmate a public safety risk if paroled.

27  The omission is flagrant because the State's Psychologist(s)

28  experts have determined this inmate further risk to public safety

1  ...to be negligible ("no greater then that of the average

2  citizen")  See Exhibit "H" Superior Court petition for writ of

3  hebeas, at exhibit "B" for psychological reports.

4      The BPH's continued reliance on the commitment offense

5  absent any nexus found by the panel or by the Superior Court,

6  between the codified offense factors dutifully recited to deny

7  parole, violates due process because it resulted in an arbitrary

8  decision and because the facts surrounding the offense should no

9  longer constitue "some evidence" with "some indicia of

10  reliability" of petitioner's dangerousness.  See Hill, 472 U.S.

11  at 455; Biggs, 334 F.3d at 917; Irons, 358 F.Supp.2d at 947;

12  Masoner v. State, 2004 WL 1080177 *1-2 (C.D.Cal.2004).

13      Also the panel and the Superior Court deemed this inmate a

14  current unreasonable risk to public safety by arbitrarily

15  characterizing my commitment offense as an calculated manner,

16  premeditated first-degree murder.  Do to my second-degree plea

17  bargain, the Superior Court's decision on that basis erred.

18      Although the gravity of the commitment offense and other

19  pre-conviction factors alone may be sufficient to justify the

20  denial of a parole date at a prisoner's initial hearing,

21  subsequent BPH decisions to deny a paorle date must be supported

22  by some post-conviction evidnce that the release of an inmate is

23  against the interest of public safety.  This inmate successful

24  rehabilitation and spotless prison record, in combination with my

25  served now twenty-two years indicate that there is no legitimate

26  post-conviction justification for the BPH repeated refusals to

27  grant this inamte a parole date.  See Johnson, 2006 WL 195159 at

28  *8.

Againg, appellee's claim for relief, is that there was no some evidence in his post-conviction, to find an unreasonable risk or danger to society if released upon parole.  See Exhibit "H" petition for writ of habeas corpus, to the Superior Court, for first pleading.

Based on the indisputable facts and the lack of a scintilla of evidence (other then the offense stated by the BPH and the Surerior Court) in this inmate post-conviction record-suggesting that this inmate would currently pose an unreasonable risk of danger to public safety if paroled, I am suitable for parole as a matter of " LAW and my Second-Degree Plea Bargain".

Therefore, the Superior Court decision should be reversed.

                        PRAYER FOR RELIEF

1. Issue a writ of habeas corpus,

2. Order petitioner released or back to the BPH for new hearing
   without the use of commitment offense, unless post-conviction
   has changed to justify the use of commitment offense.

3. Grant any and all other relief deemed appropriate.


Date: September 20, 2007              Roy Henry White
                                      In-Pro-Per

## PROOF OF SERVICE BY MAIL

### (C.C.P. §§1013A, 2015.5)

STATE OF CALIFORNIA )
                       ) SS.
COUNTY OF MONTEREY )

      I, <u>Roy Henry White</u>, am a resident of the State of California,

County of Monterey. I am over the age of 18 years and I <u>am</u>/am not a party to the within action.

My business/~~residence~~ address is P.O. Box 689, Soledad, California, 93960-0689.

      On <u>September  20</u>, 20<u>07</u>, I served the foregoing:

<u>PETITION FOR WRIT OF HABEAS CORPUS</u>

on the parties listed below by placing a true copy thereof enclosed in a sealed envelope with postage

fully prepaid in the United States mail at Soledad, California, addressed as follows:

```
Office of the Attorney General
P.O. Box 8266
San Diego, CA 92186-5266
ATTN: Cynthia Lumely
```

      There is regular delivery service by the U.S. Postal Service between the place of mailing

and the places so addressed.

      I declare under the penalty of perjury under the laws of the State of California that the

foregoing is true and correct.

      Executed this <u>9</u> day of <u>20</u>, 20<u>07</u>, at

~~Soledad,~~ California.

*Los Angeles*

/S/ <u>Roy Henry White</u>
          In-Pro-Per

EXHIBIT "G"

LOS ANGELES SUPERIOR COURT...

COURT ORDER DENIED

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

**DEPT 100**

| Date: | AUGUST 24, 2007 | | | |
|---|---|---|---|---|
| Honorable: | PETER ESPINOZA | Judge | JOSEPH M. PULIDO | Deputy Clerk |
| | NONE | Bailiff | NONE | Reporter |

<div align="center">(Parties and Counsel checked if present)</div>

| | |
|---|---|
| BH 004419 | |
| In re, | |
| ROY HENRY WHITE, | Counsel for Petitioner: |
| Petitioner, | |
| On Habeas Corpus | Counsel for Respondent: |

Nature of Proceedings: ORDER RE: WRIT OF HABEAS CORPUS

The Court has read and considered the Petition for Writ of Habeas Corpus filed on December 27, 2006 by Petitioner. Having independently reviewed the record, giving deference to the broad discretion of the Board of Parole Hearings ("Board") in parole matters, the Court concludes that the record contains "some evidence" to support the determination that Petitioner presents an unreasonable risk of danger to society and is, therefore, not suitable for release on parole. See Cal. Code Reg. Tit. 15, §2402; *In re Rosenkrantz* (2002) 29 Cal.4th 616, 667.

Petitioner was received in the Department of Corrections on April 1, 1986 after a conviction for murder in the second degree. He was sentenced to 17 years to life. The record reflects that on February 16, 1985, Petitioner was freebasing cocaine and decided to rob his drug dealer to obtain more drugs. He went to his residence, retrieved a shotgun and went to the victim's house. Upon arriving, Petitioner pointed his shotgun at the victim, demanding drugs. The victim reached for his gun and Petitioner shot him twice, hitting him in his back and back of his head. Petitioner denied being involved when questioned by police for nearly a year until he finally surrendered to police in January of 1986.

The Board found Petitioner unsuitable for parole after a parole consideration hearing held on July 12, 2006. Petitioner was denied parole for one year. The Board concluded that Petitioner was unsuitable for parole and would pose an unreasonable risk of danger to society and a threat to public safety. The Board based its decision primarily upon the commitment offense.

The Court finds that there is some evidence to support the Board's finding that Petitioner's offense was carried out in a dispassionate and calculated manner. Cal. Code Regs., tit. 15, §2402, subd. (c)(1)(B). Petitioner decided to rob his drug dealer while freebasing cocaine. He went to his home to retrieve a shotgun for that purpose and then returned to the victim's home. These actions were deliberate and calculated.

The Court also finds that there is some evidence to support the Board's finding that Petitioner's motive was very trivial in relation to the offense. Cal. Code Regs., tit. 15, §2402, subd. (c)(1)(E). Even if the victim was reaching for his gun when Petitioner shot him, he was only doing so because Petitioner was already aiming a gun at him. Petitioner's motive of stealing drugs is very trivial in relation to the robbery and murder of the victim.

<div align="center">1</div>

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
**DEPT 100**

| | | | | |
|---|---|---|---|---|
| Date: | AUGUST 24, 2007 | | | |
| Honorable: | PETER ESPINOZA | Judge | JOSEPH M. PULIDO | Deputy Clerk |
| | NONE | Bailiff | NONE | Reporter |

| | (Parties and Counsel checked if present) | |
|---|---|---|
| | BH 004419 | |
| | In re, | |
| | ROY HENRY WHITE, | Counsel for Petitioner: |
| | Petitioner, | |
| | On Habeas Corpus | Counsel for Respondent: |

The Board also considered Petitioner's non-violent prior offenses and his incomplete file with regard to vocational program certifications. While these factors may not justify a finding of unsuitability on their own, the Board may properly consider them.

Accordingly, the petition is denied.

The court order is signed and filed this date. The clerk is directed to give notice.

A true copy of this minute order is sent via U.S. Mail to the following parties:

Roy Henry White
D-27085
Correctional Training Facility
P.O. Box 689
Soledad, California 93960-0689

Department of Justice- State of California
Office of the Attorney General
110 West A Street, Suite 1100
San Diego, CA 92101
Attn: Cynthia Lumely

2

| Minutes Entered |
|---|
| 08-24-07 |
| County Clerk |

EXHIBIT "H"

Petition For Writ Of Habeas Corpus, to the

Los Anglels, Superior Court.

**MC-275**

Name <u>Roy Henry White</u>

Address <u>P.O. Box 689 Z-Wing 308-L</u>

<u>Soledad, CA 93960-0689</u>

CDC or ID Number <u>D-27085</u>

## IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

## IN AND FOR THE COUNTY OF LOS ANGELES

*(Court)*

Petitioner Roy Henry White
                    vs.

Respondent B. Curry, @ Warden
Soledad, C.T.F.

**PETITION FOR WRIT OF HABEAS CORPUS**

No. _____

*(To be supplied by the Clerk of the Court)*

## INSTRUCTIONS — READ CAREFULLY

- **If you are challenging an order of commitment or a criminal conviction and are filing this petition in the Superior Court, you should file it in the county that made the order.**

- **If you are challenging the conditions of your confinement and are filing this petition in the Superior Court, you should file it in the county in which you are confined.**

- Read the entire form *before* answering any questions.

- This petition must be clearly handwritten in ink or typed. You should exercise care to make sure all answers are true and correct. Because the petition includes a verification, the making of a statement that you know is false may result in a conviction for perjury.

- Answer all applicable questions in the proper spaces. If you need additional space, add an extra page and indicate that your answer is "continued on additional page."

- If you are filing this petition in the Superior Court, you need file only the original unless local rules require additional copies. Many courts require more copies.

- If you are filing this petition in the Court of Appeal, file the original and four copies.

- If you are filing this petition in the California Supreme Court, file the original and thirteen copies.

- Notify the Clerk of the Court in writing if you change your address after filing your petition.

- In most cases, the law requires service of a copy of the petition on the district attorney, city attorney, or city prosecutor. See Penal Code section 1475 and Government Code section 72193. You may serve the copy by mail.

Approved by the Judicial Council of California for use under Rules 56.5 and 201(h)(1) of the California Rules of Court [as amended effective January 1, 1999]. Subsequent amendments to Rule 44(b) may change the number of copies to be furnished the Supreme Court and Court of Appeal.

Page one of six

Form Approved by the
Judicial Council of California
MC-275 [Rev. January 1, 1999]
Optional Form

**PETITION FOR WRIT OF HABEAS CORPUS**

 WEST GROUP

Penal Code, § 1473 et seq.;
Cal. Rules of Court, rules 56.5, 201(h)

**This petition concerns:**

☐ A conviction                    ☒ Parole

☐ A sentence                      ☐ Credits

☐ Jail or prison conditions       ☐ Prison discipline

☐ Other (specify): _____

1. Your name:    Roy Henry White

2. Where are you incarcerated?    Soledad-Correctional Training Facility.

3. Why are you in custody?    ☒ Criminal Conviction    ☐ Civil Commitment

   *Answer subdivisions a. through i. to the best of your ability.*

   a. State reason for civil commitment or, if criminal conviction, state nature of offense and enhancements (for example, "robbery with use of a deadly weapon").

      Second degree murder with use of weapon.


   b. Penal or other code sections:    PC §§187(a) and 12022.5.

   c. Name and location of sentencing or committing court:    Los Angeles Superior Court.


   d. Case number:    A777487.

   e. Date convicted or committed:    April 04, 1986.

   f. Date sentenced:    February 03, 1986.

   g. Length of sentence:    15 years to life-plus 2.

   h. When do you expect to be released?    See, Exhibit "C" for expected release.

   i. Were you represented by counsel in the trial court?    ☒ Yes.    ☐ No.   If yes, state the attorney's name and address:

      Mike Duffey, (Deputy Public Defender) address: unknown.


4. What was the LAST plea you entered? *(check one)*

   ☐ Not guilty    ☒ Guilty    ☐ Nolo Contendere    ☐ Other: _____

5. If you pleaded not guilty, what kind of trial did you have?

   ☐ Jury    ☐ Judge without a jury    ☐ Submitted on transcript    ☐ Awaiting trial

6. **GROUNDS FOR RELIEF**
   **Ground 1:** State briefly the ground on which you base your claim for relief. For example, "the trial court imposed an illegal enhancement." *(If you have additional grounds for relief, use a separate page for each ground. State ground 2 on page four. For additional grounds, make copies of page four and number the additional grounds in order.)*

   The Board Of Parole Hearings ( hereafter...BPH) decision that petitioner
   would pose an unreasonable risk or danger to society if released from
   prison.  Violated California's Constitution Art. 1 § 7 and the U.S.
   Constitution 14th Amendment due process guarantees, because there ...
   continue on attached page 1, grounds for relief...

   a. Supporting facts:
      Tell your story briefly without citing cases or law. If you are challenging the legality of your conviction, describe the facts upon which your conviction is based. *If necessary, attach additional pages.* CAUTION: You must state facts, not conclusions. For example, if you are claiming incompetence of counsel you must state specifically setting forth what your attorney did or failed to do and how that affected your trial. Failure to allege sufficient facts will result in the denial of your petition. (See *In re Swain* (1949) 34 Cal.2d 300, 304.) A rule of thumb to follow is: *who* did exactly *what* to violate your rights at what time *(when)* or place *(where)*. *(If available, attach declarations, relevant records, transcripts, or other documents supporting your claim.)*

      On July 12, 2006 I appeared before the Board of Parole Hearings  (hear-
      after...BPH) for my sixth subsequent parole hearing.   At Soledad-
      Correctional Training facility, around 9:35 pm .
      1. The BPH found this inmate has been disciplinary-free, during his
      entire period of (Post-Conviction) incarceration.  See, BPH, Transcript
      at page 29, lines 12-17.  Exhibit "F".
      2. The BPH found this inmate is an active participant in narcotic
      anonymous. See, BPH, Transcript, at page 30, lines 10-14.
      3. The BPH found this inmate has good work reports.  See, BPH, Trans-
      cript, at page 31, lines 3-4.
      4. This inmate has vocational certificates of completion, in Drafting-
      Architecture. See, Exhibit "A" and also see, BPH Transcript, at page
      31, lines 7-17.  Continue on attached page 1, supporting facts...

   b. Supporting cases, rules, or other authority (optional):
      *(Briefly discuss, or list by name and citation, the cases or other authorities that you think are relevant to your claim. If necessary, attach an extra page.)*

      1. California Code of Regulations title 15. §2402(d)(8) Institutional
      behavior. " Institutional activities indicate an enhanced ability to
      function within the law upon release. "  Continue on attached page
      two (2) for supporting cases, reles,...

7. **Ground 2** or **Ground** _____ *(if applicable):*

a.  Supporting facts:

b.  Supporting cases, rules, or other authority:

8. Did you appeal from the conviction, sentence, or commitment? ☐ Yes. ☒ No. If yes, give the following information:

a. Name of court ("Court of Appeal" or "Appellate Dept. of Superior Court"): _____

b. Result: _____    c. Date of decision: _____

d. Case number or citation of opinion, if known: _____

e. Issues raised: (1) _____

    (2) _____

    (3) _____

f. Were you represented by counsel on appeal? ☐ Yes. ☐ No. If yes, state the attorney's name and address, if known:

_____

9. Did you seek review in the California Supreme Court? ☐ Yes. ☐ No.    If yes, give the following information:

a. Result: _____    b. Date of decision: _____

c. Case number or citation of opinion, if known: _____

d. Issues raised: (1) _____

    (2) _____

    (3) _____

10. If your petition makes a claim regarding your conviction, sentence, or commitment that you or your attorney did not make on appeal, explain why the claim was not made on appeal: _____

_____

_____

11. Administrative Review:

a. If your petition concerns conditions of confinement or other claims for which there are administrative remedies, failure to exhaust administrative remedies may result in the denial of your petition, even if it is otherwise meritorious. (See *In re Muszalski* (1975) 52 Cal.App.3d 500 [125 Cal.Rptr. 286].) Explain what administrative review you sought or explain why you did not seek such review:

There is no administrative appeal. _____

_____

_____

_____

_____

_____

_____

_____

_____

b. Did you seek the highest level of administrative review available? ☐ Yes. ☒ No.    There is none.

*Attach documents that show you have exhausted your administrative remedies.*

MC-275 [Rev. January 1, 1999]    **PETITION FOR WRIT OF HABEAS CORPUS**

12. Other than direct appeal, have you filed any other petitions, applications, or motions with respect to this conviction, commitment, or **issue** in any court? ☒ Yes. If yes, continue with number 13. ☐ No. If no, skip to number 15.

13. a. (1) Name of court: LOS ANGELES SUPERIOR COURT.

   (2) Nature of proceeding (for example, "habeas corpus petition"): Habeas Corpus Petitoion.

   (3) Issues raised: (a) Question of law.

      (b) _____

   (4) Result (Attach order or explain why unavailable): Still pending.  See, Exhibit "C"

   (5) Date of decision: None as of now.

   b. (1) Name of court: _____

   (2) Nature of proceeding: _____

   (3) Issues raised: (a) _____

      (b) _____

   (4) Result (Attach order or explain why unavailable): _____

   (5) Date of decision: _____

   c. For additional prior petitions, applications, or motions, provide the same information on a separate page.

14. If any of the courts listed in number 13 held a hearing, state name of court, date of hearing, nature of hearing, and result:

_____

15. Explain any delay in the discovery of the claimed grounds for relief and in raising the claims in this petition. (See In re Swain (1949) 34 Cal.2d 300, 304.)

_____

16. Are you presently represented by counsel? ☐ Yes. ☒ No. If yes, state the attorney's name and address, if known:

_____

17. Do you have any petition, appeal, or other matter pending in any court? ☒ Yes. ☐ No. If yes, explain:

See, Exhibit "C".

18. If this petition might lawfully have been made to a lower court, state the circumstances justifying an application to this court:

_____

I, the undersigned, say: I am the petitioner in this action. I declare under penalty of perjury under the laws of the State of California that the foregoing allegations and statements are true and correct, except as to matters that are stated on my information and belief, and as to those matters, I believe them to be true.

Date: December 18, 2006      ▶ Mr. Kay Henry White
                                   (SIGNATURE OF PETITIONER)

MC-275 [Rev. January 1, 1999]       **PETITION FOR WRIT OF HABEAS CORPUS**       Page six of six

GROUNDS FOR RELIEF

Ground 1: Continuing...

1 ...was on evidence, of unreasonable risk or danger in petitioner's

2 post-conviction record.

3 Supporting facts: Continuing...

4 5. The BPT found no assessment of dangerousness, in Psychological

5 Evaluation, dated April 9th, 2006, prepared by Dr. Portnoff.  See,

6 Exhibit "B" Psychological Evaluation for the BPH's.  Also see, BPH

7 transcript, at page 33, lines 4-22.

8 6. This inmate parole plans are viable.  See, BPH Transcript, at page

9 36, lines 1-15.

10 The BPH found this inmate has no prior juvenile record, of assaulting

11 others or committing crimes with a potential of personal harm to

12 victims.  See, BPH Transcript, at page 22, lines 4-5.

13

14 These findings of information of record shows the BPH panel found no

15 evidence, of unreasonable risk of danger to society if released.  This

16 inmate post-conviction record shows no "Some-Evidence" of dangerousness

17 or unsuitability.

18 This inmate commitment offense is the first and foremost reason for

19 being denied, parole.  See, Transcript, at page 52, lines 10-13.

20 Sole reliance on circumstances of this inmate's offense and conduct

21 prior to the offense in denying parole constituted a due process

22 violation.

23 At best the BPH panel gave this inmate post-conviction accmplishments

24 crusory attention; the conclusion, however, appears to have been

25 preordained.

26

27

28

b. Supporting case, rules, or other authori (Continuing)...

2. The BPH panel found this inmate is an active participant in

Narcotics Anonymous. See, Exhibit "D" Narcoties Anonymous Chronos.

3. The BPH found this inmate has good Work Supervisor's Reports.

See, Exhibit "E" for work reports.

5. The BPH found no assessment of dangerousness. See, Exhibit

"B" at page 4, number XIV. Assessment of Dangerousness.

4. 2402(d)(7) Understanding and plans for future. XxXnBxXxuXxBxHaX

" The prisoner has made realistic plans for release or has developed m

marketable skills that can be put to use upon release. " See,

Exhibit "A" Marketable skills and Vocational Certificates.

The BPH, is authorized by statute to determine parole and to exercise

its descretion in deciding whether to grant or deny parole. Penal

Code §3040.  In exercising that function, the BPH is obliged to hold

a fair hearing at which three or two unbiase commissioners actually

read the reports and other documents and then make a reasoned decision

based on appropriate factors.

The BPH sole reliance on the gravity of the offense to justify denial

of parole can be initially justified as fulfilling the requirements

set forth by state law. See, In re Rosenkrantz, Los Angeles Superior

Court No. BH003529(#)  Also, See In re Ramirez 94 CA(4) 569, 570.

Biggs v. Terhune (9th Cir 2003) 334 F.3d 910, 916.)  And Rosenkrantz

v. Marshall 444 F.Supp.2d 1063 (C.D. Cal. 2006) (#).

Because there was no affirmative evidence of dangerousness, let

alone of " Unreasonable risk" of danger to society, the decision

Contra, was arbitrary and capricious in violation of due process

of law as quaranteed by the California Constitution, Art. 1, § 7

and the Fourteenth Amendment to the United States Constitution.

2

Prayer For Relief!!!

1. Issue a writ of habeas corpus;

2. Issue an order to show cause;

3. Declare the rights of the parties;

4. Order petititioner's released or back to the BPH for new hearing without the use of commitment offense.

5. Grant any and all other relief deemed appropriate.

Date: December 18, 2006                    Roy Henry White

3

EXHBITE "F"

SUBSEQUENT PAROLE CONSIDERATION HEARING

STATE OF CALIFORNIA

BOARD OF PAROLE HEARINGS

```
In the matter of the Life      )
Term Parole Consideration      )
Hearing of:                    ) CDC Number D-27085
                               )
ROY WHITE                      )
                               )
_____)
```

**INMATE COPY**

CORRECTIONAL TRAINING FACILITY

SOLEDAD, CALIFORNIA

JULY 12, 2006

PANEL PRESENT,

Mr. James Davis, Presiding Commissioner
Mr. Dennis Smith, Deputy Commissioner

OTHERS PRESENT:

Mr. Roy White, Inmate
Mr. Paul Turley, Deputy District Attorney
Correctional Officers Unidentified.


CORRECTIONS TO THE DECISION HAVE BEEN MADE.

```
_____    No   See Review of Hearing
_____    Yes  Transcript Memorandum.
```


**Kerry Viens, Northern California Court Reporters**

ii

## INDEX

PAGE

Proceedings ..................................... 1

Case Factors ................................... 20

Pre-Commitment Factors ......................... 23

Post-Commitment Factors ........................ 28

Parole Plans ................................... 34

Closing Statements ............................. 47

Recess ......................................... 51

Decision ....................................... 52

Adjournment .................................... 55

Transcriber Certification ...................... 56

--oOo--

1

# P R O C E E D I N G S

1

2       **PRESIDING COMMISSIONER DAVIS:** We're on the

3   record.  This is a subsequent parole consideration

4   hearing for Roy White, CDC number D-27085.  Today's

5   date is July the 12th, 2006.  We're located at the

6   Correctional Training Facility.  The inmate was

7   received on April 1st, 1986, from Los Angeles County.

8   The life term began on April 1st, 1986.  He has a

9   minimum eligible parole date of November 17th, 1986.

10  The controlling offense for which the inmate's been

11  committed is murder second with use of a firearm, case

12  number A 777487.  (Inaudible) Penal Code section 187

13  slash (inaudible) 3.5.  The inmate received a term of

14  15 years to life plus two.  This hearing is being tape

15  recorded.  For the purposes of voice identification,

16  we'll each state our first and last name.  When we

17  reach you, Mr. White, would you also give us your CDC

18  number, please?  Will start and move to my left.

19  James Davis, D-A-V-I-S, Commissioner.

20      **DEPUTY COMMISSIONER SMITH:** My name's Dennis

21  Smith, S-M-I-T-H, and I'm a Deputy Commissioner.

22      **DEPUTY DISTRICT ATTORNEY TURLEY:** Paul Turley,

23  T-U-R-L-E-Y, District Attorney's Office from Los

24  Angeles County.

25      **INMATE WHITE:** Roy White, D-27085.

26      **PRESIDING COMMISSIONER DAVIS:** And spell your

27  last name for the record.

2

1           **INMATE WHITE:**  W-H-I-T-E.

2           **PRESIDING COMMISSIONER DAVIS:**  Thank you.  And

3    let the record also reflect that we are joined by two

4    correctional officers who are here for security

5    purposes only and will not be actively identified on

6    tape or technically participating in this hearing.  Mr.

7    White, before you is the Americans with Disabilities

8    Act statement.  Would you please read that aloud, sir?

9           **INMATE WHITE:**  The Americans with

10                 Disabilities Act, ADA is a law to help

11                 people with disabilities.  Disabilities are

12                 problems that make it harder for some people

13                 to see, hear, breathe, talk, walk, learn,

14                 think, walk or take care of themselves than

15                 it is for others.  Nobody can be kept out of

16                 a public place or activity because of a

17                 disability.  If you have a disability, you

18                 have a right to ask for help to get ready

19                 for your BPH hearing, get to the hearing,

20                 talk, read from the paper forms and

21                 (inaudible) we will look at what you ask for

22                 to make sure that you have a disability that

23                 is covered by the ADA and that you have

24                 asked for the right kind of help.  If you do

25                 not get the help or if you don't think you

26                 got the kind of help you need, ask for a BPT

27                 1074 grievance form.  You can get help to

3

1       fill it out.

2           PRESIDING COMMISSIONER DAVIS:  Very good.

3   Thank you.  According to our records, along with staff

4   from the institution on September 29th, 2005, you

5   reviewed and signed the BPT for 1073 indicating that

6   you do not have any disabilities that would qualify

7   under the Americans with Disabilities Act; is that

8   correct?

9           INMATE WHITE:  Yes.

10          PRESIDING COMMISSIONER DAVIS:  And I note here

11  that you do have a high school diploma?

12          INMATE WHITE:  Yes.

13          PRESIDING COMMISSIONER DAVIS:  Okay.  And you

14  were able to read this this morning with glasses.  Do

15  you normally wear glasses?

16          INMATE WHITE:  Yeah.

17          PRESIDING COMMISSIONER DAVIS:  And they work

18  all right for you?

19          INMATE WHITE:  Uh-huh.

20          PRESIDING COMMISSIONER DAVIS:  And they are for

21  reading?

22          INMATE WHITE:  Yes.

23          PRESIDING COMMISSIONER DAVIS:  And you can hear

24  me all right?

25          INMATE WHITE:  Uh-huh.

26          PRESIDING COMMISSIONER DAVIS:  And you were

27  able to walk here under your own power today?

4

1          **INMATE WHITE:**  Yes.

2          **PRESIDING COMMISSIONER DAVIS:**  Very good sir.

3    Any reason that you can think of that you would not be

4    able to actively participate in this hearing today?

5          **INMATE WHITE:**  No.

6          **PRESIDING COMMISSIONER DAVIS:**  You're not part

7    of Triple CMS or any of the other health care

8    providers?

9          **INMATE WHITE:**  No.

10         **PRESIDING COMMISSIONER DAVIS:**  Have you ever

11   been?

12         **INMATE WHITE:**  No.

13         **PRESIDING COMMISSIONER DAVIS:**  No.  All right.

14   Mr. Smith, we note that you chose to waive your

15   attorney this morning.

16         **INMATE WHITE:**  White.

17         **PRESIDING COMMISSIONER DAVIS:**  I'm sorry.  Mr.

18   White, we note that you chose to waive your attorney

19   this morning?

20         **INMATE WHITE:**  Yes.

21         **PRESIDING COMMISSIONER DAVIS:**  Can you tell me

22   why that is?

23         **INMATE WHITE:**  She was just about (inaudible).

24         **PRESIDING COMMISSIONER DAVIS:**  Originally you

25   had asked for an attorney.

26         **INMATE WHITE:**  Well, the attorney got the

27   attorney for the (inaudible) ask me if I want one, and

5

1  I said no.  And she was she told she (inaudible).  I

2  said I didn't want one.  So I guess (inaudible).  She

3  didn't know who I was (inaudible).

4        PRESIDING COMMISSIONER DAVIS:  So, why,

5  specifically do you not want an attorney?

6        INMATE WHITE:  (Inaudible).

7        PRESIDING COMMISSIONER DAVIS:  You know you

8  have that right?

9        INMATE WHITE:  Yes.

10        PRESIDING COMMISSIONER DAVIS:  And you don't

11  have $1,500 on the books so the attorney will not cost

12  you anything.  So it's provided for you.

13        INMATE WHITE:  Yes.

14        PRESIDING COMMISSIONER DAVIS:  And do you

15  understand this morning that there is a representative

16  from the district attorney's office here who may be

17  asking you questions?

18        INMATE WHITE:  Uh-huh.

19        PRESIDING COMMISSIONER DAVIS:  And that it --

20  you would -- you -- you are competent enough with rules

21  and regulations that you could choose to answer or not

22  answer questions?

23        INMATE WHITE:  Yes.

24        PRESIDING COMMISSIONER DAVIS:  And have you

25  ever represented yourself before?

26        INMATE WHITE:  Not at the Board hearings.

27        PRESIDING COMMISSIONER DAVIS:  And how many

6

1   prior Board hearings have you had?

2           **INMATE WHITE:**  This is -- probably five prior

3   to this.  This is my sixth.

4           **PRESIDING COMMISSIONER DAVIS:**  Why is this one

5   unique from the others?

6           **INMATE WHITE:**  I have a case pending.

7           **PRESIDING COMMISSIONER DAVIS:**  You have what

8   kind of a case pending?

9           **INMATE WHITE:**  A appeal for my last (inaudible)

10  hearing.

11          **PRESIDING COMMISSIONER DAVIS:**  So you have

12  appealed your last BPT hearing?

13          **INMATE WHITE:**  Yes.

14          **PRESIDING COMMISSIONER DAVIS:**  And is that

15  because --

16          **INMATE WHITE:**  (Inaudible) so that's the one

17  reason I don't want an attorney.

18          **PRESIDING COMMISSIONER DAVIS:**  And the appeal

19  affects your choice of having an attorney how?

20          **INMATE WHITE:**  (Inaudible).

21          **PRESIDING COMMISSIONER DAVIS:**  And what for?

22  (Inaudible).

23          **INMATE WHITE:**  (Inaudible).

24          **PRESIDING COMMISSIONER DAVIS:**  You also chose

25  to not review your Central File prior to this hearing;

26  is that correct?

27          **INMATE WHITE:**  Yes.

7

1    PRESIDING COMMISSIONER DAVIS:  Why did you do

2  that?

3    INMATE WHITE:  Because, to my knowledge,

4  nothing has changed until recently.  I just found out

5  that there was a 128 placed in my file which is not

6  mine.  Was it was (inaudible) cell (inaudible) I just

7  found out (inaudible).

8    PRESIDING COMMISSIONER DAVIS:  This is, of

9  course, one of the reasons why you want to review your

10  Central File just to make sure nothing has changed or

11  nothing's in there that shouldn't be or that everything

12  that is in there should be.

13    INMATE WHITE:  It's just (inaudible).  You

14  know, and I wasn't (inaudible).  This just happened not

15  long ago.

16    PRESIDING COMMISSIONER DAVIS:  Commissioner, do

17  you have questions?

18    DEPUTY COMMISSIONER SMITH:  Did you review your

19  Board packet?

20    INMATE WHITE:  Yes.

21    DEPUTY COMMISSIONER SMITH:  Where is your Board

22  packet?

23    INMATE WHITE:  It's (inaudible).

24    DEPUTY COMMISSIONER SMITH:  So you don't feel

25  that you need to refer to your Board packet?

26    INMATE WHITE:  No.

27    DEPUTY COMMISSIONER SMITH:  Because everything

8

1    that we're -- all the documentation that we're going to

2    be reviewing is either in your C-File or your Board

3    packet.  And if you haven't reviewed your C-File, and

4    you don't have your Board packet with you, it's going

5    to be a little difficult for you to follow along, don't

6    you think?

7          INMATE WHITE:  I pretty much know what's, you

8    know, in there.  The only thing that's in there that I

9    didn't know is (inaudible) 128.  (Inaudible) written

10   (inaudible) not standing this (inaudible).  We just

11   broke out and had a (inaudible).

12         DEPUTY COMMISSIONER SMITH:  And then you

13   realize that we're going to consider that 128 as being

14   yours?

15         INMATE WHITE:  Oh, you're --

16         DEPUTY COMMISSIONER SMITH:  Yes, sir, we are.

17         INMATE WHITE:  So what do I need to do?

18         DEPUTY COMMISSIONER SMITH:  There isn't

19   anything you can do about it right now.

20         INMATE WHITE:  Okay.  Fine.

21         DEPUTY COMMISSIONER SMITH:  But you need to

22   understand.  If you had counsel, counsel could raise a

23   factual objection, which we would then rule on, which

24   is one of the advantages on occasion to having counsel.

25   That plus the fact that you've had counsel all the way

26   along.  You had a chance to review the psychological

27   evaluation?

9

1        **INMATE WHITE:**  Yes.

2        **DEPUTY COMMISSIONER SMITH:**  And we just got

3   that today.

4        **INMATE WHITE:**  (Inaudible).

5        **DEPUTY COMMISSIONER SMITH:**  Okay.  Because we

6   just gave it to you today.

7        **INMATE WHITE:**  No.  I had that.  I was called

8   to pick it up.

9        **DEPUTY COMMISSIONER SMITH:**  Oh.  So you've had

10  a chance to review that, and you don't have any

11  questions with regard to that evaluation?

12       **INMATE WHITE:**  No.

13       **PRESIDING COMMISSIONER DAVIS:**  We need to

14  talk -- let me ask one more question, and we'll just

15  step out so we can have a chance to chat.

16       **INMATE WHITE:**  Okay.

17       **PRESIDING COMMISSIONER DAVIS:**  I almost get the

18  sense that this is sort of just a pro forma thing for

19  you today, that you're really depending on your

20  (inaudible) to exercise for you.  Okay.  That you

21  haven't brought any paperwork with you, you really

22  haven't reviewed your C-File, that you're really

23  depending on your appeal process for your last Board

24  hearing.  Am I correct in that or is that a false

25  impression?

26       **INMATE WHITE:**  Not really, no.

27       **PRESIDING COMMISSIONER DAVIS:**  Okay.  So you're

10

1  taking this seriously and - -

2          **INMATE WHITE:**  Yes.

3          **PRESIDING COMMISSIONER DAVIS:**  All right.

4  Let's recess for just a minute, and I'll step out.

5                      R-E-C-E-S-S

6          **DEPUTY COMMISSIONER SMITH:**  -- previously

7  identified is in the hearing room.

8          **PRESIDING COMMISSIONER DAVIS:**  All right.  Mr.

9  White, I think there might be a few issues that we need

10  to disburse while this is on record.  One is that

11  you've -- were not aware about this 128 that exists;

12  but, again, you did have a chance to review your C-

13  File, and if you had counsel here, he might ask for a

14  postponement to give a chance to look at that.

15  However, I don't think that that's a -- because you did

16  have an opportunity to review your C-File and chose not

17  to.  I don't think that -- there wouldn't be a

18  favorable ruling if we had an attorney here today for

19  that.  Secondly, if you would like, we will make

20  arrangements to get your Board package and have it in

21  front of you, but if you chose not to, that's up to

22  you.  So if you don't want to refer to it, that's just

23  strictly up to you.  What's your decision?

24          **INMATE WHITE:**  I'll get it.

25          **PRESIDING COMMISSIONER DAVIS:**  Okay.  We'll get

26  it.  And that will have your psychological report in it

27  also.  That's the other issue, the third issue is the

1   psychological report.  So you've indicated that you had

2   had that delivered to you when?

3           **INMATE WHITE:**  About, I don't know, about two

4   weeks ago.

5           **PRESIDING COMMISSIONER DAVIS:**  Okay.  So you've

6   had two weeks to review it and so forth, so any

7   questions you might have, you're well prepared to

8   address those?

9           **INMATE WHITE:**  Yes.

10          **PRESIDING COMMISSIONER DAVIS:**  Well, with that

11  said, I think that you are certainly articulate enough,

12  you have a high school education, you have had the

13  opportunity to review your Board packet and all new

14  information, and there aren't any obstacles that we can

15  see that would preclude us from going forward today.

16  So, Commissioner, without (inaudible) we will continue

17  with Mr. White's hearing.  He's representing himself

18  today.

19          **DEPUTY COMMISSIONER SMITH:**  I concur.

20          **PRESIDING COMMISSIONER DAVIS:**  All right.  This

21  hearing is being conducted pursuant to Penal Code

22  section 3041 and 3042 and the rules and regulations of

23  the Board of Prison Terms governing Parole

24  Consideration Hearings for life inmates.  The purpose

25  of today's hearing is to once again consider the number

26  and nature of your crimes, your prior criminal and

27  social history, your behavior and programming since

12

1   your commitment.  We've had the opportunity to review

2   your Central File and your prior transcript, and you

3   will have the opportunity to correct or clarify the

4   report as we proceed.  We will reach a decision today

5   and inform you whether or not we find you suitable for

6   parole and the reasons for that decision.  If you are

7   found suitable for parole, the length of your

8   confinement will be explained to you.  Once again,

9   nothing that happens here today will change the

10  findings of the court.  This Panel is not here to retry

11  your case.  We're here for the sole purpose of

12  determining your suitability for parole.  Do you

13  understand that?

14          **INMATE WHITE:**  Yes.

15          **PRESIDING COMMISSIONER DAVIS:**  This hearing

16  will be conducted in two phases.  First I will discuss

17  with you the crimes for which you were committed, your

18  prior criminal and social history, then Commissioner

19  Smith will discuss with you your progress since your

20  commitment and your counselor's psychological

21  evaluation.  Following that, we will go through your

22  parole plans and any letters of support or opposition

23  if any exist.  Once this is concluded, the

24  commissioners and the district attorney will have an

25  opportunity to ask you questions.  Questions from the

26  district attorney will be asked to the chair, and then

27  you will respond back to the Panel with your answer.

13

1      **INMATE WHITE:**  Okay.

2      **PRESIDING COMMISSIONER DAVIS:**  So indirect

3   conversation between and you the district attorney.

4   Next, the district attorney can then (inaudible) make a

5   final closing statement.  Now, I should also tell you

6   at this point that because you don't have an attorney

7   here -- normally, you will be limited to telling us why

8   you're suitable for parole.  However, I will give you

9   an opportunity during that (inaudible) to make any real

10  specific comments that you would have regarding your

11  programming, regarding your insight into the crime, and

12  that sort of thing, questions that your attorney might

13  have asked you to really flush out any areas that we

14  might not have covered sufficiently that will give you

15  the best opportunity to present yourself in the best

16  possible light.  All right.  And then once again

17  following that, the district attorney will make a

18  closing statement, and you will have an opportunity to

19  make a closing statement.  Your closing statement, at

20  that point, should focus on why you believe you're

21  suitable for parole.  California Code of Regulations

22  states that regardless of time served, a life inmate

23  shall be found unsuitable for and denied parole if, in

24  the judgment of the Panel, the inmate would pose an

25  unreasonable risk of danger to society if released from

26  prison.  You have certain rights.  Those rights include

27  the timely notice of this hearing, the right to review

14

1    your Central File, and the right to present relevant

2    documents.  Do you believe that your rights have been

3    met today?

4            **INMATE WHITE:**  Yes.

5            **PRESIDING COMMISSIONER DAVIS:**  Okay.  Good.

6    You have an additional right, and that is to be heard

7    by an impartial Panel.  Now, you've heard Commissioner

8    Smith and I introduce ourselves this morning.  Would

9    you have any reason to believe that we would not be

10   impartial?

11           **INMATE WHITE:**  No, I don't.

12           **PRESIDING COMMISSIONER DAVIS:**  You will receive

13   a written copy of our tentative decision today.  That

14   decision becomes effective within 120 days.  A copy of

15   the decision and a copy of the transcript will be sent

16   to you, and you will have 90 days from that date to

17   appeal it if you so desire.  You are not required to

18   admit your offense or discuss your offense, although

19   this Panel does accept the findings of the court as

20   true.  Do you understand that?

21           **INMATE WHITE:**  Yes.

22           **PRESIDING COMMISSIONER DAVIS:**  As you know, the

23   Board has eliminated its appeal process.  If you

24   disagree with anything in today's hearing, you have the

25   right to go directly to court (inaudible).  Mr. Smith,

26   are we going to be dealing with anything from the

27   confidential file today?

15

1        **INMATE WHITE:**  We are not, no.

2        **PRESIDING COMMISSIONER DAVIS:**  All right.  I'm

3    going to pass a checklist of documents to counsel and

4    Mr. Smith -- Mr. White, I'm sorry.  You want to take a

5    look at this as well, and you want to make sure that

6    you have all the same documents that we have.

7        **INMATE WHITE:**  Yes.

8        **PRESIDING COMMISSIONER DAVIS:**  Very well.

9        **INMATE WHITE:**  (Inaudible).

10       **PRESIDING COMMISSIONER DAVIS:**  There you go,

11   sir.  Mr. White, do you have any additional documents

12   that you would like us to review today?

13       **INMATE WHITE:**  Yes.

14       **PRESIDING COMMISSIONER DAVIS:**  And what are we

15   looking at here?

16       **INMATE WHITE:**  This is a (inaudible) that I

17   filed (inaudible) district attorney right after the

18   fact.

19       **PRESIDING COMMISSIONER DAVIS:**  This is a plea

20   agreement that was made at your hearing?

21       **INMATE WHITE:**  Yes.

22       **PRESIDING COMMISSIONER DAVIS:**  At your trial or

23   something?

24       **INMATE WHITE:**  At my trial.

25       **PRESIDING COMMISSIONER DAVIS:**  And, once again,

26   and I'm not sure what context you want to use that, but

27   once again we're not here to retry the case itself.

16

1   Which, of course, the plea would be part of the case.

2   So if that is an issue, if the issue is that the

3   sentence is not consistent with the plea agreement,

4   that would be something that you would take up

5   separately.

6          **INMATE WHITE:**   Yes.

7          **PRESIDING COMMISSIONER DAVIS:**   Okay.   All

8   right.

9          **INMATE WHITE:**   (Inaudible).

10         **PRESIDING COMMISSIONER DAVIS:**   Okay.   That's

11  fine.   I just want you to be prepared.   I appreciate

12  that.   Any other documents that you want to present

13  today?

14         **INMATE WHITE:**   No.

15         **PRESIDING COMMISSIONER DAVIS:**   No chronos,

16  additional chronos?

17         **INMATE WHITE:**   They should be in the file.

18         **PRESIDING COMMISSIONER DAVIS:**   Letters of

19  support?

20         **INMATE WHITE:**   They should be in the file.   If

21  not -- well.

22         **PRESIDING COMMISSIONER DAVIS:**   Okay.   Well, as

23  we go through that process, then you can make sure that

24  we're covering all of the appropriate chronos.

25         **DEPUTY COMMISSIONER SMITH:**   Mr. White, that's

26  part of the purpose of you having an opportunity to

27  review the Board packet so that you can make a

17

1   determination as to whether or not --

2        INMATE WHITE:  Well, I didn't see --

3   (inaudible) I didn't see them.  But I don't know if you

4   have them.

5        DEPUTY COMMISSIONER SMITH:  So what do you

6   have?  What additionals do you have?  You have one

7   letter?

8        INMATE WHITE:  Yes.

9        DEPUTY COMMISSIONER SMITH:  And only one letter

10  in the Board packet.  Do you have other letters?

11       INMATE WHITE:  No.  That is all I ever did.

12       DEPUTY COMMISSIONER SMITH:  All right.  Okay.

13  That's a work report as well as --

14       INMATE WHITE:  And a (inaudible).

15       DEPUTY COMMISSIONER SMITH:  Right.  And you're

16  still working as a porter?

17       INMATE WHITE:  Yes.

18       DEPUTY COMMISSIONER SMITH:  Okay.  I have these

19  documents.  The fact is (inaudible) to discuss those in

20  more detail.

21       INMATE WHITE:  Okay.

22       PRESIDING COMMISSIONER DAVIS:  Mr. White, do

23  you have any preliminary objections?

24       INMATE WHITE:  No.

25       PRESIDING COMMISSIONER DAVIS:  And will you be

26  speaking with us today?

27       INMATE WHITE:  Yes.

24

1          **INMATE WHITE:**  Yes.

2          **PRESIDING COMMISSIONER DAVIS:**  The third of

3     eight children.  Your parents separated when you were

4     six months old.  Your mother remarried when you were

5     eight years old.  How did you get along with your step-

6     father?

7          **INMATE WHITE:**  Good.

8          **PRESIDING COMMISSIONER DAVIS:**  Yeah.  And you

9     met your first wife when you were a teenager.  How old

10    were you?

11         **INMATE WHITE:**  I was 17.

12         **PRESIDING COMMISSIONER DAVIS:**  17.  And your

13    mother remained married to your step-father?

14         **INMATE WHITE:**  Yes.

15         **PRESIDING COMMISSIONER DAVIS:**  And are they

16    still married?

17         **INMATE WHITE:**  (Inaudible).

18         **PRESIDING COMMISSIONER DAVIS:**  But, generally,

19    your relationship with your mom and your step-father

20    was good?

21         **INMATE WHITE:**  Yes.

22         **PRESIDING COMMISSIONER DAVIS:**  Home life good?

23         **INMATE WHITE:**  Yes.

24         **PRESIDING COMMISSIONER DAVIS:**  Pretty normal?

25         **INMATE WHITE:**  Yes.

26         **PRESIDING COMMISSIONER DAVIS:**  Any of the other

27    children have any problems with the law?

25

1          **INMATE WHITE:**  Two of my brothers (inaudible).

2          **PRESIDING COMMISSIONER DAVIS:**  (Inaudible) you

3    had four children?

4          **INMATE WHITE:**  Yes.

5          **PRESIDING COMMISSIONER DAVIS:**  And you've been

6    divorced -- you were divorced from her in 1996 and

7    married your second wife in '97, and that marriage

8    remains intact?

9          **INMATE WHITE:**  No.

10         **PRESIDING COMMISSIONER DAVIS:**  Are you still

11   married?  No?

12         **INMATE WHITE:**  She had an affair and

13   (inaudible).

14         **PRESIDING COMMISSIONER DAVIS:**  How long ago was

15   that?

16         **INMATE WHITE:**  Oh, a couple years now.

17         **PRESIDING COMMISSIONER DAVIS:**  Yeah.

18         **INMATE WHITE:**  (Inaudible) came by (inaudible).

19         **PRESIDING COMMISSIONER DAVIS:**  You attended the

20   12th grade but dropped out of school prior to

21   graduation?

22         **INMATE WHITE:**  Yes.

23         **PRESIDING COMMISSIONER DAVIS:**  How come?

24         **INMATE WHITE:**  We had to do three tests with

25   our (inaudible) for drug --

26         **PRESIDING COMMISSIONER DAVIS:**  Did you --

27         **INMATE WHITE:**  They lost my test, so I couldn't

26

1    (inaudible).  I had to take it over, so I did not take

2    it over.

3           PRESIDING COMMISSIONER DAVIS:  It says you have

4    a high school diploma.  When did you get your high

5    school diploma?

6           INMATE WHITE:  1998, 1999.

7           PRESIDING COMMISSIONER DAVIS:  '98 or '99.  So

8    you got that in here?

9           INMATE WHITE:  Yes.

10          PRESIDING COMMISSIONER DAVIS:  Did you actually

11   get a diploma or did you get your GED.

12          INMATE WHITE:  No.  I got a diploma.

13          PRESIDING COMMISSIONER DAVIS:  You got your

14   diploma.  Good for you.  All right.  So it does

15   indicate that you had a prior criminal history, that

16   you (inaudible) free basing cocaine for six months

17   prior to the commitment offense.  What got you started

18   with cocaine?

19          INMATE WHITE:  (Inaudible).

20          PRESIDING COMMISSIONER DAVIS:  So you were

21   married at the time?

22          INMATE WHITE:  No, no, no.

23          PRESIDING COMMISSIONER DAVIS:  You were not

24   married at the time?

25          INMATE WHITE:  Yes.

26          PRESIDING COMMISSIONER DAVIS:  Working?

27          INMATE WHITE:  On and off.  On and off.

27

1   (Inaudible) and here and there or fixing cars like

2   that, but not set.

3          PRESIDING COMMISSIONER DAVIS:  How come?

4          INMATE WHITE:  (Inaudible) two (inaudible) at

5   that time.  Once I was gone for good (inaudible).

6          PRESIDING COMMISSIONER DAVIS:  When did you

7   start using drugs?

8          INMATE WHITE:  Between 18, 25, about 1981 or

9   something like that.

10          PRESIDING COMMISSIONER DAVIS:  So if you did

11   drugs and stopped working, how were you supporting your

12   drugs?

13          INMATE WHITE:  Well, I (inaudible) few jobs

14   here or there or getting money (inaudible) for my drugs

15   or something like that (inaudible).

16          PRESIDING COMMISSIONER DAVIS:  Where were you

17   living?

18          INMATE WHITE:  I was staying with my mother.

19   You know, back and forth between her and (inaudible).

20          PRESIDING COMMISSIONER DAVIS:  No military

21   history?

22          INMATE WHITE:  No.

23          DEPUTY COMMISSIONER SMITH:  And you have skills

24   as a cook and manual labor and security officer.

25          INMATE WHITE:  Yes.

26          PRESIDING COMMISSIONER DAVIS:  You were kind of

27   holding down a variety of different jobs?

28

1          **INMATE WHITE:**  Yes.

2          **PRESIDING COMMISSIONER DAVIS:**  It sounds like

3    your home life was pretty normal.  Why do you think you

4    started doing drugs?

5          **INMATE WHITE:**  A variety of things for it,

6    trying to (inaudible) in and that, (inaudible) really

7    not doing things that I was supposed to.  That's what

8    (inaudible) that's what really started all of this.

9          **PRESIDING COMMISSIONER DAVIS:**  How (inaudible)

10   directly connected to the commitment offense, which

11   we're not going to talk about today, but that's -- how

12   do you think that affected your life additionally?  How

13   did the use of drugs affect your life?

14         **INMATE WHITE:**  I stopped being able to do

15   things I should be doing.  Even helping out with my

16   family (inaudible).

17         **PRESIDING COMMISSIONER DAVIS:**  Would you

18   describe yourself as a bit out of control at that

19   point?

20         **INMATE WHITE:**  Yes.  Yes, I was.

21         **PRESIDING COMMISSIONER DAVIS:**  (Inaudible).

22         **INMATE WHITE:**  No (inaudible).

23         **PRESIDING COMMISSIONER DAVIS:**  Could I ask you

24   for your attention for, please (inaudible).

25   Commissioner Smith will be --

26         **DEPUTY COMMISSIONER SMITH:**  You were received

27   by the Department of Corrections April 1st, 1986.

29

1          **INMATE WHITE:**  Yes.

2          **DEPUTY COMMISSIONER SMITH:**  You were received

3     here at CTF, February 9th, 1993.  You have a

4     classification score of 19, which is the lowest

5     classification score that a life inmate can attain.

6     Your last hearing was held on January 3rd, 2005.  That

7     was your fifth subsequent hearing.  You received a one-

8     year denial.  So, this is actually your seventh

9     hearing.  You had your initial hearing prior to.

10          **INMATE WHITE:**  (Inaudible).

11          **DEPUTY COMMISSIONER SMITH:**  You had generally a

12    very positive disciplinary history.  You've had no CDC

13    115's, and we recognize both the level of

14    accomplishment that that is as well as how difficult it

15    is for an individual not to get any 115's in over 20

16    years.  When I say you are to be congratulated for

17    that, that record, I don't make that comment lightly.

18          **INMATE WHITE:**  Thank you, sir.

19          **PRESIDING COMMISSIONER DAVIS:**  Now, you've had

20    ten CDC 128A's, one since your last hearing dated April

21    7th, 2006 for (inaudible).  We do understand that there

22    may be, you know, some question whether or not that 128

23    will hold water as you file a 602 or take whatever

24    steps you're going to take.

25          **INMATE WHITE:**  (Inaudible).

26          **DEPUTY COMMISSIONER SMITH:**  Necessary to

27    disappear based upon the information that you have.

30

1        **INMATE WHITE:**  (Inaudible).

2        **DEPUTY COMMISSIONER SMITH:**  However, for the

3    purpose of this hearing, based on this date and this

4    time, we have to consider it.

5        **INMATE WHITE:**  Okay.

6        **DEPUTY COMMISSIONER SMITH:**  But it's certainly

7    not that (inaudible) in relationship to the fact that

8    you have no 115's.  You know, it's certainly not going

9    to be unduly negative, at least in my opinion.  You've

10   been an active participant in narcotic anonymous?

11       **INMATE WHITE:**  Yes.

12       **DEPUTY COMMISSIONER SMITH:**  And since your last

13   hearing, you've received five laudatory chronos

14   regarding that participation.  Is that a program that

15   you would continue to participate in in the community?

16       **INMATE WHITE:**  Yes.  I have wrote a few NA

17   (inaudible) you have to be (inaudible) there's a copy

18   in here.

19       **DEPUTY COMMISSIONER SMITH:**  Well, why would you

20   continue to participate in the program?

21       **INMATE WHITE:**  Because I think it's a good

22   program.  It helps me a lot too.  It helps me a lot.

23       **DEPUTY COMMISSIONER SMITH:**  How's it --

24       **INMATE WHITE:**  Listening to other people's

25   stories and seeing what they went through and, then,

26   you know (inaudible) so I (inaudible).

27       **DEPUTY COMMISSIONER SMITH:**  All right.  You've

31

1  been assigned for sometime as a Z-wing porter?

2        INMATE WHITE:  Yes.

3        DEPUTY COMMISSIONER SMITH:  And you're getting

4  good work reports there.  Have you been involved in any

5  vocational training?

6        INMATE WHITE:  Yes.

7        DEPUTY COMMISSIONER SMITH:  And what kind of

8  vocational training?

9        INMATE WHITE:  It's computer programming,

10  that's one, and vocational drafting certificate in

11  that.

12        DEPUTY COMMISSIONER SMITH:  Did you complete

13  both of those vocations?  And do you have certificates

14  for those?

15        INMATE WHITE:  Yes.

16        DEPUTY COMMISSIONER SMITH:  When did you

17  complete the drafting?

18        INMATE WHITE:  That was 2003, somewhere in

19  here.  There should be a copy.

20        DEPUTY COMMISSIONER SMITH:  I didn't see it in

21  the Board packet, or I may have missed it or because it

22  occurred prior to your last hearing, it may not have

23  been put in.  I'll look in the C-File as well.

24        INMATE WHITE:  It will be in the C-File.

25        DEPUTY COMMISSIONER SMITH:  And what about the

26  other vocation?

27        INMATE WHITE:  I was in computer programming.

32

1          **DEPUTY COMMISSIONER SMITH:**  And did you

2   complete that?

3          **INMATE WHITE:**  Yes.

4          **DEPUTY COMMISSIONER SMITH:**  And when did you

5   complete that?

6          **INMATE WHITE:**  (Inaudible) it's somewhere

7   around here -- '95.

8          **DEPUTY COMMISSIONER SMITH:**  So basically right

9   now you're attending NA and working as a porter?

10          **INMATE WHITE:**  Yes.

11          **DEPUTY COMMISSIONER SMITH:**  Any other activity

12  that you've been involved in since your last hearing

13  that we should be aware of that I haven't addressed?

14          **INMATE WHITE:**  No.

15          **DEPUTY COMMISSIONER SMITH:**  We have a core

16  psychological evaluation, and it's dated April 9th,

17  2006, prepared by Dr. Portnoff, P-O-R-T-N-O-F-F.  And

18  I'm going to address a couple of the sections in the

19  report that I think are the most pertinent, and then if

20  there are any other sections, Mr. White, that you'd

21  like to address for the record or address yourself,

22  I'll certainly give you that opportunity.  Moving to

23  the second page under diagnostic impressions, he

24  indicates under Axis I, cocaine dependence in remission

25  in a controlled setting; Axis II, adolescent anti-

26  social behavior in remission; Axis IV is incarceration,

27  that's stress.  That's a standard diagnostic impression

33

1   for all life prisoners.  And Axis V is a Global

2   Assessment Functioning score of 90.  That's based on a

3   scale of zero to 100, so that's relatively high.

4   Moving to page four under assessment of dangerousness,

5   the doctor writes that within a controlled setting your

6   violence potential has been nil.  Over the last 21

7   years, you've not demonstrated any aggressive behavior.

8   If released to the community, your violence potential

9   is estimated to be low in comparison with the average

10  inmate, and that conclusion is based upon your record

11  preceding the offense, the circumstances of the

12  offense, your post conviction history, and the lack of

13  criminally oriented personality style.  The doctor goes

14  on to write that significant risk factors or precursors

15  for violence that applied at the time of the crime

16  included an addiction to cocaine, intoxication from

17  cocaine at the time of the offense, affiliation and

18  affiliation with like-minded associates.  The doctor

19  concludes that significant risk factors (inaudible) to

20  violence that that applied at the time of the

21  controlling offense are no longer applicable some 21

22  years later.  Any comments or any other sections you'd

23  like to have noted for the report?

24          **INMATE WHITE:**  No.  That's good.

25          **DEPUTY COMMISSIONER SMITH:**  In the case of your

26  parole plans, I'm going to refer back to the January

27  '06 Board report and that indicates at the time this

34

1    Board report was done that you planned on living with

2    your wife (inaudible)?

3            **INMATE WHITE:**  Yes.

4            **DEPUTY COMMISSIONER SMITH:**  And that's

5    obviously changed?

6            **INMATE WHITE:**  Yes.  I changed that.

7            **DEPUTY COMMISSIONER SMITH:**  Okay.  It's not

8    reflected here in the Board record.

9            **INMATE WHITE:**  No.  It's not in the Board

10   report.

11           **DEPUTY COMMISSIONER SMITH:**  And it also

12   indicates that you'd gain employment with your mother-

13   in-law?

14           **INMATE WHITE:**  Yes.

15           **DEPUTY COMMISSIONER SMITH:**  (Inaudible) as an

16   administrative clerk or assistant in her (inaudible)

17   healing foundation.  Where is that located?

18           **INMATE WHITE:**  It's in Beverly Hills.

19           **DEPUTY COMMISSIONER SMITH:**  Or you would be

20   able to work as a short-order cook or in janitorial

21   maintenance.  You indicated that updated information

22   offers would be forthcoming.

23           **INMATE WHITE:**  Yes.  There should be one in

24   there from (inaudible).

25           **DEPUTY COMMISSIONER SMITH:**  Well, yes, since

26   you reviewed the Board packet.

27           **INMATE WHITE:**  It's not.

35

1          **DEPUTY COMMISSIONER SMITH:**  You know that it's

2    not there.

3          **INMATE WHITE:**  (Inaudible) it was at my last

4    hearing.

5          **DEPUTY COMMISSIONER SMITH:**  Okay.  Well --

6          **INMATE WHITE:**  And nothing's changed.

7          **DEPUTY COMMISSIONER SMITH:**  Well, excuse me.  I

8    don't mean to interrupt you either, but you need to

9    understand that if you had a letter of employment or

10   residence or support or whatever, it might be the same

11   letters that you may have had at the last hearing.

12   They all have to be updated for your next hearing.  So,

13   even if you had had those letters with you and they had

14   been addressed at the last hearing, we wouldn't

15   consider them at this hearing.

16         **INMATE WHITE:**  Okay.  Okay.

17         **DEPUTY COMMISSIONER SMITH:**  Okay.  So they all

18   have to -- always have to be updated.

19         **INMATE WHITE:**  Okay.

20         **DEPUTY COMMISSIONER SMITH:**  You indicated

21   there's one letter from your mother, Lucille Dawson.

22         **INMATE WHITE:**  Yes.

23         **DEPUTY COMMISSIONER SMITH:**  D-A-W-S-O-N, very

24   supportive letter, goes into a lot of history about

25   your history, her history, you know, the involvement in

26   church and her very positive social report.

27         **INMATE WHITE:**  Yes.

1      **DEPUTY COMMISSIONER SMITH:**  And she offers you

2    residence with her and any support that she can provide

3    you.

4      **INMATE WHITE:**  Yes.

5      **DEPUTY COMMISSIONER SMITH:**  How old is she now?

6      **INMATE WHITE:**  She's 76.

7      **DEPUTY COMMISSIONER SMITH:**  76.  Okay.  And do

8    you know what kind of home she has?

9      **INMATE WHITE:**  Yes.  She owns her own home.

10     **DEPUTY COMMISSIONER SMITH:**  Okay.  So there

11    would be plenty of room for you there?

12     **INMATE WHITE:**  Yes.  She's by herself.

13     **DEPUTY COMMISSIONER SMITH:**  Okay.  Anything

14    else that we should know about your parole plans?

15     **INMATE WHITE:**  No.  That's it.

16     **DEPUTY COMMISSIONER SMITH:**  We sent out a

17    notice, 3042 notices.  Those are letters that go out to

18    the various criminal justice agencies that were

19    involved in your commitment offense.  We have Mr.

20    Turley here who is representing the Los Angeles County

21    District Attorney's office.  He will be participating

22    in the hearing in a few moment, and we also have a

23    letter from the Los Angeles Police Department, dated

24    June 27th of this year, signed by Captain (inaudible)

25    commanding officer of the detective support division,

26    and I'm not going to read the entire letter for the

27    record, but let the record reflect that the Los Angeles

37

1    Police Department is recommending that parole be

2    denied, that it's the department's position to

3    adamantly oppose the release of Mr. White back into the

4    community and that he should remain segregated from

5    society.  And with that, I'll return to Commissioner

6    Davis.

7          **PRESIDING COMMISSIONER DAVIS:**  Thank you.  What

8    kind of programming did you learn (inaudible)?

9          **INMATE WHITE:**  Excuse me?

10         **PRESIDING COMMISSIONER DAVIS:**  Your computer

11   programming.

12         **INMATE WHITE:**  Uh-huh.

13         **PRESIDING COMMISSIONER DAVIS:**  What did you

14   learn?

15         **INMATE WHITE:**  I learned Windows 5.0, Excel,

16   Word (inaudible) DOS, Access.

17         **PRESIDING COMMISSIONER DAVIS:**  Did you have a

18   chance to do any upgrading on those at all?

19         **INMATE WHITE:**  A little bit when I was in the

20   drafting.

21         **PRESIDING COMMISSIONER DAVIS:**  Now, you're

22   drafting, is that -- do you also do this on computer

23   aided drafting?

24         **INMATE WHITE:**  Yes, I do.

25         **PRESIDING COMMISSIONER DAVIS:**  And when did you

26   complete drafting?

27         **INMATE WHITE:**  It was in 2003, I believe.

38

1  2003, I believe.

2          PRESIDING COMMISSIONER DAVIS:  Okay.  Have you

3  had a chance to put any of those to work inside the

4  institution?

5          INMATE WHITE:  No.

6          PRESIDING COMMISSIONER DAVIS:  And you're

7  participating in NA?

8          INMATE WHITE:  Yes.

9          PRESIDING COMMISSIONER DAVIS:  And what do you

10 plan to do -- or some of the most helpful steps for

11 you.

12         INMATE WHITE:  Four and ten.

13         PRESIDING COMMISSIONER DAVIS:  And why are they

14 helpful?

15         INMATE WHITE:  Four is, I believe, (inaudible)

16 and I think that helped me because it was just the

17 beginning of the process that (inaudible) life long.

18 And ten is (inaudible) you know (inaudible) something

19 wrong you got to stop and fix it.  You know (inaudible)

20 that's why I like them (inaudible) so it keeps you on

21 your toes.

22         PRESIDING COMMISSIONER DAVIS:  What about

23 number 8?

24         INMATE WHITE:  Yeah, it's making amends for all

25 you did harm (inaudible).

26         PRESIDING COMMISSIONER DAVIS:  Have you done

27 that?

39

1          **INMATE WHITE:**  I've tried.  I have tried.

2    (Inaudible) 22 years ago.

3          **PRESIDING COMMISSIONER DAVIS:**  When you say

4    you've tried, what did you do?

5          **INMATE WHITE:**  I tried writing a letter to his

6    sister.

7          **PRESIDING COMMISSIONER DAVIS:**  Oh.

8          **INMATE WHITE:**  I asked for her address

9    (inaudible).

10         **PRESIDING COMMISSIONER DAVIS:**  Well, a lot of

11   that -- part of that is for you to have a chance to

12   (inaudible) that letter.

13         **INMATE WHITE:**  True.

14         **DEPUTY COMMISSIONER SMITH:**  Now, whether or not

15   they accept it or --

16         **INMATE WHITE:**  Right.

17         **DEPUTY COMMISSIONER SMITH:**  The victims are not

18   always here to hear from you (inaudible) involved in

19   the crime.  But you did write the letter?

20         **INMATE WHITE:**  Yes, I did.

21         **PRESIDING COMMISSIONER DAVIS:**  And was that

22   helpful for you to do that?

23         **INMATE WHITE:**  It was helpful.  (Inaudible)

24   confidential file, even though (inaudible).  I wrote

25   that (inaudible) of '99, so I've been on both sides.  I

26   killed someone's life, but I also know what it's like

27   to lose a loved one too.

40

1              **PRESIDING COMMISSIONER DAVIS:**  How was your

2    brother killed?

3              **INMATE WHITE:**  He was killed by a blood.  He

4    was -- (inaudible).

5              **PRESIDING COMMISSIONER DAVIS:**  (Inaudible).

6              **INMATE WHITE:**  Been on both sides.

7              **PRESIDING COMMISSIONER DAVIS:**  The Commissioner

8    has been asking you a little bit about continuing NA on

9    the outside and you said you've written and they said,

10   well, you have to show up at the door.  Do you know

11   where they meet (inaudible) parole to?

12             **INMATE WHITE:**  Certainly that one on Crenshaw,

13   but I'm not sure of that address.  You know

14   (inaudible).

15             **PRESIDING COMMISSIONER DAVIS:**  That might be

16   something else to do so you can at least have an idea

17   of where they are.

18             **INMATE WHITE:**  Yes.

19             **PRESIDING COMMISSIONER DAVIS:**  That would be

20   helpful.  Do you have anymore questions?

21             **DEPUTY COMMISSIONER SMITH:**  Mr. White, I'm

22   going through your C-File, and I'm looking at the

23   section that contains the various certifications.

24             **INMATE WHITE:**  Uh-huh.

25             **DEPUTY COMMISSIONER SMITH:**  And you have a

26   number of certifications in computer programming.

27             **INMATE WHITE:**  Uh-huh.

41

1          **DEPUTY COMMISSIONER SMITH:**  Data process and

2    concepts, and Microsoft Word, and so on and so forth.

3    And they're also a number of certificates in vocational

4    drafting, architecture, again, a CAD program.

5          **INMATE WHITE:**  Yes.

6          **DEPUTY COMMISSIONER SMITH:**  So there are a

7    number of certificates in here in both of those

8    programs that reflect part of completion of parts of

9    the overall vocation.

10         **INMATE WHITE:**  And the (inaudible) but I was

11   transferred (inaudible).

12         **DEPUTY COMMISSIONER SMITH:**  Okay.

13         **INMATE WHITE:**  So we have a problem.

14         **DEPUTY COMMISSIONER SMITH:**  Yeah.  I can't find

15   it here.

16         **INMATE WHITE:**  I do have a copy in myself.

17         **DEPUTY COMMISSIONER SMITH:**  That's one of the

18   reasons, particularly if you're going to represent

19   yourself or even if your not, it's real critical that

20   you review your C-File so if I -- as we're having this

21   discussion, I'm not saying, you know, I've gone through

22   here and I don't find vocational certification

23   completions.

24         **INMATE WHITE:**  Right.

25         **DEPUTY COMMISSIONER SMITH:**  In either drafting

26   or computer programming.  You know, therefore, I'm

27   going to conclude that you haven't completed any

42

1   vocation.

2           INMATE WHITE:  Right.

3           DEPUTY COMMISSIONER SMITH:  You say, no,

4   Commissioner, you're wrong, if you look here, you'll

5   find it.  And I've gone through it, and they're not in

6   the Board packet.

7           INMATE WHITE:  We just talked about in the last

8   Board hearing, and the Commissioner confirmed that it's

9   in there.

10          DEPUTY COMMISSIONER SMITH:  Okay.  I'll locate

11  that transcript.

12          INMATE WHITE:  Okay.

13          PRESIDING COMMISSIONER DAVIS:  (Inaudible) such

14  as your (inaudible) like that just so you had that.

15  (Inaudible) okay.  Mr. Turley?

16          DEPUTY DISTRICT ATTORNEY TURLEY:  Just a few.

17  In the -- I understand and recognize the inmate's

18  expressed intention to not discuss the crime, but he

19  (inaudible) in the file he described himself at the

20  time as having been sprung, S-P-R-U-N-G.  And I'd like

21  for the Board to inquire as to what he meant by using

22  that term.

23          PRESIDING COMMISSIONER DAVIS:  Was that a

24  common term for you to use, sprung?

25          INMATE WHITE:  Yes.

26          PRESIDING COMMISSIONER DAVIS:  What's that

27  mean?

43

1       **INMATE WHITE:** Like fiends.

2       **PRESIDING COMMISSIONER DAVIS:** Like what?

3       **INMATE WHITE:** Fiends, you know like a

4    (inaudible).

5       **PRESIDING COMMISSIONER DAVIS:** Okay. Are we

6    talking about -- oh, are you talking about being

7    addicted then?

8       **INMATE WHITE:** Yes.

9       **PRESIDING COMMISSIONER DAVIS:** Okay. So you

10   were addicted to cocaine?

11      **INMATE WHITE:** Yes.

12      **PRESIDING COMMISSIONER DAVIS:** All right.

13      **DEPUTY DISTRICT ATTORNEY TURLEY:** And I'd like

14   for the Board to inquire if the inmate recalls meeting

15   with Dr. Portnoff on June 9 and the statements that he

16   made to Dr. Portnoff.

17      **PRESIDING COMMISSIONER DAVIS:** Do you

18   understand the question?

19      **INMATE WHITE:** Yes.

20      **PRESIDING COMMISSIONER DAVIS:** Do you recall

21   Dr. Portnoff?

22      **INMATE WHITE:** Yeah, I recall that.

23      **PRESIDING COMMISSIONER DAVIS:** (Inaudible).

24      **DEPUTY DISTRICT ATTORNEY TURLEY:** My last

25   question is similar to ones that have been asked by the

26   chair, but I'd like for -- to hear Mr. White explain

27   what he's done since his last hearing to prepare

44

1   himself if he's released to remain drug·free if he gets

2   into an unrestricted environment.

3       **INMATE WHITE:**  Well, seeing what I've did not

4   doing over the years, you know, just getting to NA and

5   (inaudible).

6       **PRESIDING COMMISSIONER DAVIS:**  And you've been

7   attending NA regularly?

8       **INMATE WHITE:**  Yes.

9       **PRESIDING COMMISSIONER DAVIS:**  And that's how

10  you plan to continue?

11      **INMATE WHITE:**  Yes.

12      **DEPUTY DISTRICT ATTORNEY TURLEY:**  No more

13  questions.

14      **PRESIDING COMMISSIONER DAVIS:**  Mr. White, is

15  there anything that you want to talk about that you

16  feel hasn't been flushed out properly or sufficiently

17  that you'd like to clarify at this time?

18      **INMATE WHITE:**  Not (inaudible).

19      **PRESIDING COMMISSIONER DAVIS:**  This would be

20  the time when your attorney would ask you questions

21  about your programming or your depth of understanding

22  perhaps, of your AA program, anything that's given you

23  insight in dealing with problems, that sort of thing.

24      **INMATE WHITE:**  Yes.  (Inaudible)  I'm guilty

25  offense.  The day of that shooting will become

26  (inaudible) have long and his family and my family as

27  well.

45

1       **PRESIDING COMMISSIONER DAVIS:**  Do you

2   understand that providing appropriate proof of a

3   residence that is timely, that is refreshed every year

4   because things change, right?

5       **INMATE WHITE:**  Yes.

6       **PRESIDING COMMISSIONER DAVIS:**  Someone passes

7   away, that sort of thing.  Do you understand that

8   that's an important part of the presentation?

9       **INMATE WHITE:**  Yeah.  That's why I had my

10  mother send the letter too where I'd be paroling to

11  her.

12      **PRESIDING COMMISSIONER DAVIS:**  And the same

13  thing with job offers.  They should be by the person

14  who has the authority to give you a job.

15      **INMATE WHITE:**  Yeah.  And that letter I had up

16  here (inaudible) parole (inaudible) program

17  (inaudible)e job offers there.

18      **PRESIDING COMMISSIONER DAVIS:**  And in the work

19  that you've done with your computer programming and

20  your vocational drafting, have you looked into what the

21  market might be in the area that you want to parole to

22  for those skills.

23      **INMATE WHITE:**  No, not for computer -- not for

24  computer programming, but drafting is like a trade tech

25  (inaudible) engineer (inaudible) I can be a (inaudible)

26  as well.  Just, you know, (inaudible).

27      **PRESIDING COMMISSIONER DAVIS:**  And from what

46

1    you described to me that your classes you took were

2    more use of existing programs than actual programs; is

3    that accurate?

4            **INMATE WHITE:**  Yes.

5            **PRESIDING COMMISSIONER DAVIS:**  Okay.  So it's

6    really using an existing program?

7            **INMATE WHITE:**  Right.

8            **PRESIDING COMMISSIONER DAVIS:**  Okay.  Is there

9    anything you'd like to add?

10           **INMATE WHITE:**  No.

11           **PRESIDING COMMISSIONER DAVIS:**  All right.

12   We'll -- do you have any questions?

13           **DEPUTY COMMISSIONER SMITH:**  I've got a few

14   points here for clarification.  One letter that you

15   refer to from the parole division is in the Board

16   report.  I didn't address it because it's not part of a

17   parole plan.

18           **INMATE WHITE:**  Right.  Right.

19           **DEPUTY COMMISSIONER SMITH:**  You know, it's

20   simply the standard parole division letter.

21           **INMATE WHITE:**  Right.

22           **DEPUTY COMMISSIONER SMITH:**  Indicating --

23           **INMATE WHITE:**  What they have.

24           **DEPUTY COMMISSIONER SMITH:**  What they have, so

25   that's why I didn't address it.  I didn't want you to

26   think that I overlooked it or ignored it.

27           **INMATE WHITE:**  Oh, no.

47

1    **DEPUTY COMMISSIONER SMITH:** For any other
2    reason than it's applicability. Okay.
3    **INMATE WHITE:** Yeah.
4    **DEPUTY COMMISSIONER SMITH:** It's definitely,
5    you made a comment about the last Board report
6    regarding the vocations and on one-page they note that
7    you participated in vocational programming, you know,
8    and certainly I've confirmed that and discussed that.
9    And then in one of the other pages, it indicates that
10   you're to be commended for finishing the drafting
11   vocation. What I can't tell, of course, from that
12   transcript, whether or not that Panel at the time
13   actually had a certificate of completion (inaudible)
14   which I can't find.
15   **INMATE WHITE:** Right. I know.
16   **DEPUTY COMMISSIONER SMITH:** Or if, when I asked
17   you if you completed vocations and you indicated that
18   you had completed two, if they had simply gone on your
19   own testimony. And, again, I just want to note that
20   for the record it was, you know, a reference that you
21   had made, and I just wanted you to know that I looked.
22   **INMATE WHITE:** Okay. All right.
23   **PRESIDING COMMISSIONER DAVIS:** Mr. Turley,
24   closing?
25   **DEPUTY DISTRICT ATTORNEY TURLEY:** Thank you.
26   First of all, I recognize that the inmate is
27   challenging the validity of the 128 in his file. For

48

1    the purposes of this hearing, of course, we weren't --
2    he was bound to accept that, and just to point out in
3    the last hearing, January 3rd, '05, reading from the
4    Board report, (inaudible) recommends that you remain
5    disciplinary free.  And, in your case, not even 128's.
6    As a lifer, you know can't afford to get 128A's.  So,
7    at this time, we all have (inaudible) to your hearing
8    and the structure of the report.  In statements
9    (inaudible) with respect to his life style prior to
10   committing in offense, it's another good reminder of
11   the two headed scourge that has attacked our nation and
12   certainly Los Angeles County, drugs and gangs, often
13   inter-related, in his case focused on drug activity.  I
14   recall President George Bush, the elder saying that the
15   scourge will pass from our land and we all wish that,
16   indeed that had become true, but apparently drugs are
17   still available and certainly played a vital role
18   (inaudible).  The facts of this particular crime are
19   indeed compelling facts.  According to his statements
20   here today, the inmate virtually had no means of
21   financial support at the time that he committed this
22   crime.  At the same time, he indicates in the psych
23   report that on the day that he committed this offense,
24   he had spent about $200 in cocaine.  $200 is a lot of
25   money to spend in a day in 2006, and $200 was even a
26   lot more money to spend 20 years ago, 21 years ago.  A
27   substantial money raises alternative questions about

49

1   what his life style was like at that particular time.

2   After committing the offense, the inmate was questions

3   repeatedly by the police and denied any involvement.

4   Apparently as one would suspect with a drug dealer,

5   there's not a shortage of suspects when the man was

6   murdered.  To his credit, and I say this with

7   sincerity, to his credit, 11 months after this murder

8   occurred, the inmate went to the police station and

9   admitted, confessed to what he had done.  In terms of a

10  statement of remorse, I would say that that speaks much

11  stronger than most efforts to express regrets and on

12  the part of myself, I certainly commend him for that

13  act because he was certainly aware that there would be

14  severe consequences as a result of his confession.

15  However, it doesn't alter the fact that he had used a

16  substantial amount of cocaine on that day, by his own

17  statements, he ran out of money, ran out of cocaine in

18  the early morning hours, wanted more drugs, couldn't

19  get more drugs, armed himself with a sawed-off shotgun,

20  and went to the location where he knew the victim was,

21  and demanded and went there with some purpose, and he I

22  am imagined robbing him, not of money, but of the

23  cocaine.  And he confronted the victim, the victim

24  apparently refused, and he fired one shotgun blast into

25  the victim's back.  There is indication in the file, if

26  I'm not mistaken, that this was a single-shot shotgun.

27  I'm not sure that that's correct.  I might be confused,

50

1    but in the event, after having shot the victim at very

2    close range in the back with the sawed shotgun, he

3    fired another shot into the back of the head of the

4    victim.  On some occasions, he has indicated that the

5    reason that he fired was because the victim was going

6    for a gun, and the reason that he fired the second time

7    is because, again, he thought the victim was going for

8    a gun.  No indication as to where it was, where the gun

9    was that the victim was going to, but certainly shot

10   him in the back the first time, and then in his meeting

11   with the psychologist in June of this year, rather than

12   offering an explanation that the second shot was fired

13   because the victim was going for a gun, the inmate

14   indicates quote, I didn't want him to suffer.  I fail

15   to understand the logic of blasting someone with a

16   shotgun and then blowing the back of their head off

17   because you don't want them to suffer in the first

18   place.  Somehow, all that does is indicate a lack of

19   regret and a callousness toward the life of the victim.

20   Based upon the seriousness of this offense, the

21   victim's heavy participation in the drug community and

22   based upon, at this point, his failure to adhere to

23   previous admonitions of the court, I'm going to

24   recommend a denial.

25          **PRESIDING COMMISSIONER DAVIS:**  Thank you.

26   Thank you.  Mr. White, now is your opportunity for a

27   closing statement and to tell us why you believe that

51

1    you are suitable for parole.

2        **INMATE WHITE:**  Well, I believe, like I can't

3    change what happened, you know.  That's a fact.  You

4    know that.  And I (inaudible) and I can't (inaudible)

5    why do I (inaudible).  I'm not going to go out there

6    and hurt someone because I know I'm not, but you've to

7    believe that because you're the one making the

8    decision.  That's it.

9        **PRESIDING COMMISSIONER DAVIS:**  Thank you.  All

10   right.  Is there anything else?

11       **DEPUTY COMMISSIONER SMITH:**  No.

12       **PRESIDING COMMISSIONER DAVIS:**  All right.  Mr.

13   White, we are now going into our recess for our

14   deliberation.

15                    R E C E S S

16                    --oOo—

17

18

19

20

21

22

23

24

25

26

27

1    **CALIFORNIA BOARD OF PAROLE HEARINGS**

2          **D E C I S I O N**

3    **PRESIDING COMMISSIONER DAVIS:**  On the record.

4    Everyone previously identified is (inaudible).  This is

5    the matter of Roy White, CDC number D-27085.  The Panel

6    reviewed all the information received from the public

7    and relied on the following to determine that the

8    prisoner is not suitable for parole and would pose an

9    unreasonable risk or danger to society if released from

10   prison.  First and foremost, the offense was carried

11   out in an especially callous manner.  It was carried

12   out in a dispassionate manner and the motive for the

13   crime was inexplicable related to the offense.  The

14   commissioners (inaudible) sake of the facts (inaudible)

15   individual is engaged in a life consumed by cocaine.

16   He armed himself with a shotgun and went to the home of

17   his drug dealer with the intent to rob him in order to

18   get more cocaine to support his habit.  We find that

19   there is prior criminal conduct in the form of

20   possession of nun chucks and auto theft, and that you

21   have failed to proffer from society's prior attempt to

22   correct your criminality, such attempts including adult

23   probation and county jail.  (Inaudible) fail to provide

24   proof of marketable skill upon release, and we

25   understand that we have this issue now of the

26   certificates, so why don't you spend a little time and

27   **ROY WHITE    D-27085    DECISION PAGE 1    7/12/2006**

53

1   make sure that we get those certificates isolated.

2           **INMATE WHITE:**  I have them in my file.

3           **PRESIDING COMMISSIONER DAVIS:**  Okay.

4           **INMATE WHITE:**  You know, I won't be coming back

5   to the Board here because I just (inaudible).

6           **PRESIDING COMMISSIONER DAVIS:**  Absolutely.

7   Good.  That's what we want you to do.  And, also, why

8   not developing a little book for yourself where you can

9   keep all this in little plastic containers.  Those are

10  very important documents for you.  We do note that you

11  have 10, 128A counseling chronos, the last one

12  (inaudible) but we understand you'll be doing something

13  with that last one and that you have zero 115's.  And,

14  once again, that's a remarkable, excellent record and

15  one to you should be commended for and that's something

16  to be (inaudible).  The psychological report of June

17  2006 by Dr. Portnoff is supportive, showing a GAF score

18  of 85 with a violence potential in the general

19  community when compared to other inmates would be low.

20  We do note with regard to your parole plans that you

21  plan to live with your mother, currently.  However, any

22  letters of support or offers of jobs of employment need

23  to be updated, and they need to be specific as to type

24  of support and employment be offered, so your

25  employment offers need to be specific.  They need to

26  show us that the person is making the offer has the

27  **ROY WHITE   D-27085      DECISION PAGE 2    7/12/2006**

54

1    authority to do that.  They should be on letterhead,

2    and they should be very specific as to what you'll be

3    doing.  So you need to update those regularly.

4          **INMATE WHITE:**  Okay.

5          **PRESIDING COMMISSIONER DAVIS:**  With regard to

6    the 3042 notices, the District Attorney from Los

7    Angeles County is here in person and does oppose parole

8    as does the Los Angeles Police Department by letter.

9    Nevertheless, we do want to commend you for your five

10   laudatory chronos in NA, your work as a Z-wing porter

11   with good work records, and you, again continue to have

12   vocations here that you have been working on and you

13   have certificates of achievement for vocational

14   drafting and vocational computer programming.  Again,

15   we need those completion sets.

16         **INMATE WHITE:**  I have them.

17         **PRESIDING COMMISSIONER DAVIS:**  Okay.  All

18   right.  (Inaudible) in one thing and then (inaudible).

19   This is a one-year denial, and the Panel recommends

20   that you become disciplinary free, that as available

21   that you provide proof of your vocational certificates,

22   and that you continue to get self-help.  Commissioner,

23   is there any additional comments that you would like to

24   make?

25         **DEPUTY COMMISSIONER SMITH:**  No.  I think you've

26   covered it.  Thank you.

27   **ROY WHITE    D-27085    DECISION PAGE 3    7/12/2006**

55

1          **PRESIDING COMMISSIONER DAVIS:**  All right.   We

2    wish you the best of luck, and we are adjourned.

3                       **A D J O U R N M E N T**

4                            --oOo--

5

6

7

8

9

10

11

12                          .

13

14

15

16

17

18

19

20

21

22

23    **PAROLE DENIED ONE YEAR.**                    NOV  **9 2006**

24    **THIS DECISION WILL BE FINAL ON:**  _____

25    **YOU WILL BE PROMPLTY NOTIFIED, IF PRIOR TO THAT**

26    **DATE, THE DECISION IS MODIFIED.**

27    **ROY WHITE    D-27085      DECISION PAGE 4     7/12/2006**

28

56

1                CERTIFICATE AND

2            DECLARATION OF TRANSCRIBER

3

4        I, KERRY VIENS, a duly designated transcriber,

5   NORTHERN CALIFORNIA COURT REPORTERS, do hereby declare

6   and certify under penalty of perjury that I have

7   transcribed tape(s) which total one in number and cover

8   a total of pages numbered 1 - 55 and which recording

9   was duly recorded at CORRECTIONAL TRAINING FACILITY,

10  SOLEDAD, CALIFORNIA, in the matter of the subsequent

11  parole consideration hearing of ROY WHITE, CDC NO. D-

12  27085 on July 12, 2006, and that in the foregoing pages

13  constitute a true, complete, and accurate transcription

14  of the aforementioned tape to the best of my ability.

15        I hereby certify that I am a disinterested

16  party in the above mentioned matter and have no

17  interest in the outcome of the hearing.

18        Dated October 5, 2006, at Sacramento,

19  California.

*Kerry L. Viens*

20

21        _____

22        KERRY L. VIENS

23        TRANSCRIBER

24        **NORTHERN CALIFORNIA COURT REPORTERS**

25

EXHIBIT   "A"

CERT. #
12,736
J-27085



# Valley Adult School

awards a

## Certificate of Completion

IN

Vocational Drafting - Architecture

TO

White, Roy

Certificate Number  12,736

Instructor
Joseph E. Cain Jr.

Supervisor of Vocational Instruction
E. B. Parham

Supervisor of Education
Mrs. Gerald Pichley

| SKILLS ATTAINED | A | B | C | D |
|---|---|---|---|---|
| Mach. Drafting | X | | | |
| Basic Arch. Drafting | X | | | |
| Electronic/Elec. Draft. | X | | | |
| Mech. Drafting Comp. | X | | | |

JOURNEYMAN                    APPRENTICE
1 - 2 - 3 - 4 - 5 - 6 - 7 - 8   PHASE OF TRAINING

| ATTITUDES | A | B | C | D |
|---|---|---|---|---|
| (1) EFFORT | | X | | |
| (2) COOPERATION | | X | | |
| (3) INITIATIVE | | X | | |
| (4) ADAPTABILITY | | X | | |
| (5) RELIABILITY | | X | | |

RELATED TECHNICAL TRAINING
HOURS: 750     GRADE: A
ON THE JOB
TOTAL HOURS COMPLETED: 1500
COMPOSITE GRADE:
ATTENDANCE: Good

| SKILLS ATTAINED | A | B | C | D |
|---|---|---|---|---|
| Technical Sketching | X | | | |
| Pictorial Sketching | X | | | |
| Ortho. Projection | X | | | |
| Geo. Construction | X | | | |
| Dimensioning | X | | | |
| Sect. and Conventions | X | | | |
| Primary Aux. | X | | | |
| Numerics/Obliques | X | | | |
| Perspectives | X | | | |
| Threads | X | | | |
| Fasteners | X | | | |

JOURNEYMAN                    APPRENTICE
1 - 2 - 3 - 4 - 5 - 6 - 7 - 8   PHASE OF TRAINING

COMMENTS OR OBSERVATIONS: ___ who has completed the above competencies with precise precision, and ___ has earned a Completion in the Mechanical Drawing part of this Program.

_____ INSTRUCTOR
J. Cain Jr.

DATE

CER.\# 12,199
D-27085

# Valley Adult School

awards a

## Certificate of Completion

IN

### Vocational Drafting-CAD

TO

*Roye White*

Certificate Number 12,199

_____
Instructor
Joseph E. Cain Jr

_____
Supervisor of Vocational Instruction
Mr. E. R. Parham

_____
Supervisor of Education
Mr. Gerald Critchley

| SKILLS ATTAINED | A | B | C | D |
|---|---|---|---|---|
| Mach. Drafting | X | | | |
| Basic Arch. Drafting | X | | | |
| Electronic/Elec. Draft. | X | | | |
| Mech. Drafting Comp. | X | | | |

JOURNEYMAN                                    APPRENTICE
1 - 2 - 3 - 4 - 5 - 6 - 7 - 8   PHASE OF TRAINING

_J. Oxin Jr._
INSTRUCTOR

| ATTITUDES | A | B | C | D |
|---|---|---|---|---|
| (1) EFFORT | X | | | |
| (2) COOPERATION | X | | | |
| (3) INITIATIVE | X | | | |
| (4) ADAPTABILITY | X | | | |
| (5) RELIABILITY | X | | | |

RELATED TECHNICAL TRAINING:    GRADE: A
Required: 1750
On the Job:
TOTAL HOURS COMPLETED: 1500
COMPOSITE GRADE: A
ATTENDANCE: Good

| SKILLS ATTAINED | A | B | C | D |
|---|---|---|---|---|
| Technical Sketching | X | | | |
| Pictorial Sketching | X | | | |
| Ortho. Projection | X | | | |
| Geo. Construction | X | | | |
| Dimensioning | X | | | |
| Section/Conventions | X | | | |
| Primary Views | X | | | |
| Isometrical/Oblique | X | | | |
| Perspectives | X | | | |
| Threads | X | | | |
| Fasteners | X | | | |

JOURNEYMAN   1 - 2 - 3 - 4 - 5 - 6 - 7 - 8   PHASE OF TRAINING   APPRENTICE

COMMENTS or OBSERVATIONS: Mr. ___ while completed the above competencies with precise precision, and has earned at Completion in the Mechanical Drawing part of this Program.

DATE

CERT #
12,198
D-27085



# Malley Adult School

## Certificate Of Achievement

### Vocational Drafting—CAD

TO

*Roy White*

CERTIFICATE NUMBER 12,198

INSTRUCTOR: *Joseph E. Oden Jr.*

Supervisor of Education
*Mr. Gerald Oakley*

Supervisor of Academic Instruction
*Mr. E. R. Parham*

| SKILLS ATTAINED | A | B | C | D |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| JOURNEYMAN    APPRENTICE | | | | |
| 1 - 2 - 3 - 4 - 5 - 6 - 7 - 8    PHASE OF TRAINING | | | | |

| ATTITUDES | A | B | C | D | C |
|---|---|---|---|---|---|
| (1) EFFORT | X | | | | |
| (2) COOPERATION | X | | | | |
| (3) INITIATIVE | X | | | | |
| (4) ADAPTABILITY | X | | | | |
| (5) RELIABILITY | X | | | | |

| RELATED TECHNICAL TRAINING | |
|---|---|
| HOURS: 750    GRADE: A | |
| ON THE JOB: | |
| TOTAL HOURS COMPLETED: 1500 | |
| COMPOSITE GRADE: A | |
| ATTENDANCE: Good | |

| SKILLS ATTAINED | A | B | C | D |
|---|---|---|---|---|
| Completion in | | | | |
| Mechanical Drawing | X | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| JOURNEYMAN    APPRENTICE | | | | |
| 1 - 2 - 3 - 4 - 5 - 6 - 7 - 8    PHASE OF TRAINING | | | | |

COMMENTS OR OBSERVATIONS:  Mr. White completed the Mechanical Drawing part of this course with

precise precission.

_____
6/30/02
DATE

_____
J. Cain Jr.
INSTRUCTOR

CER #
12,734
J-27085



# Valley Adult School

awards a

## Certificate Of Achievement

IN

### Vocational Drafting—CAD

TO

*White, Roy*

CERTIFICATE NUMBER: 12,734

INSTRUCTOR: _Joseph C. Cain Jr._

Supervisor of Academic Instruction
E. R. Parham

Supervisor of Education
Gerald Bishop

| SKILLS ATTAINED | A | B | C | D |
|---|---|---|---|---|
| Plotter | X | | | |
| Space Tablet | X | | | |
| Architecture Completion | X | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

Journeyman                     Apprentice
1 - 2 - 3 - 4 - 5 - 6 - 7 - 8  Phase of Training

| ATTITUDES | A | B | C | D | C |
|---|---|---|---|---|---|
| (1) Effort | X | | | | |
| (2) Cooperation | X | | | | |
| (3) Initiative | X | | | | |
| (4) Adaptability | X | | | | |
| (5) Reliability | X | | | | |

Related Technical Training  Grade: A
Hours: 240  On the Job: _____

Total Hours Completed: 600
Composite Grade: A
Attendance: Good

| SKILLS ATTAINED | A | B | C | D |
|---|---|---|---|---|
| Site Preparation | X | | | |
| Foundations | X | | | |
| Framing | X | | | |
| Roof Construction | X | | | |
| Exterior Trim | X | | | |
| Interior Finishing | X | | | |
| Misc. Exterior Work | X | | | |
| Computers | X | | | |
| HIPAD Digitizer | X | | | |
| Printer | X | | | |

Journeyman                     Apprentice
1 - 2 - 3 - 4 - 5 - 6 - 7 - 8  Phase of Training

Comments or Observations:    Mr. White completed the above competencies and has

earned a completion in the Architecture part of this course.

9/30/02
Date

Instructor
J. Cain, Jr.

CER
11,951
D-27085

# Valley Adult School

confers a

## Certificate of Achievement

IN

### Vocational Drafting—CAD

TO

**White, Roy**

Certificate Number 11,951

*Joseph E. Cain Jr.*
Instructor

*E. O. Keeler*
Supervisor of Vocational Instruction
Mr. E. R. Parham

*D. G. Ashley*
Supervisor of Education
Mrs. Gerald Ashley

| SKILLS ATTAINED | A | B | C | D |
|---|---|---|---|---|
| Technical Lettering | X | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

JOURNEYMAN _____ APPRENTICE
1 - 2 - 3 - 4 - 5 - 6 - 7 - 8  PHASE OF TRAINING

| ATTITUDES | A | B | C | D |
|---|---|---|---|---|
| (1)  EFFORT | X | | | |
| (2)  COOPERATION | X | | | |
| (3)  INITIATIVE | | X | | |
| (4)  ADAPTABILITY | | X | | |
| (5)  RELIABILITY | | X | | |

RELATED TECHNICAL TRAINING
HOURS: 50    GRADE: A
ON THE JOB:
TOTAL HOURS COMPLETED: 350
COMPOSITE GRADE:
ATTENDANCE: Good

| SKILLS ATTAINED | A | B | C | D |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

JOURNEYMAN _____ APPRENTICE
1 - 2 - 3 - 4 - 5 - 6 - 7 - 8  PHASE OF TRAINING

COMMENTS OR OBSERVATIONS: Mr. White completed the above competencies with precise precision.

3/31/02
DATE

J. Cain Jr.
INSTRUCTOR



# COMMUNITY CENTERS, INC.
7522-26 S. Vermont Ave., Los Angeles, CA  90044 • (213) 752-2115 • Fax (213) 752-1799

June 7, 2004

Roy H. White
D-27085 Z-wing 308 Low
P.O. Box 689
Soledad, CA 93960-0689

To: Program Inquires

Thank you for thinking of Community Centers, Inc. part of the Workforce efforts of the City of Los Angeles for employment needs.  Community Build located at 8730 S. Vermont Ave. 90044 has received funding to target ex-felons and help them with their employment needs.

They would be able to help you more efficiently and effectively because they have tailored opportunities for you.  Contact them at (323) 789-9950 for further information.

Sincerely,

Patricia Rodriguez
Executive Director

# City of Los Angeles
### CALIFORNIA

**CLIFFORD W. GRAVES**
GENERAL MANAGER

COMMUNITY DEVELOPMENT
DEPARTMENT
215 W. 6TH STREET
LOS ANGELES, CA 90014



**JAMES K. HAHN**
MAYOR

June 7, 2004

Mr. Roy White
D-27085 Z-Wing  308-Low
State Prison Correctional Training Facility
PO Box 689
Soledad, CA 93960-0689

Dear Mr. White:

Our network of nearly 50 WorkSource career centers can help you search and locate the ideal position for your needs. We have contacts with hiring businesses of all types from throughout the Los Angeles region. Our trained WorkSource experts can put you in touch with these businesses and prepare you for the interview process. And each WorkSource center is in close contact with the entire network, to ensure that each candidate is visible throughout the region.

If you don't know what direction to take your job search, we can provide skills assessments, technology training, and detailed labor market information. And in many of our WorkSource centers, our personalized counseling and planning can be accessed in multiple languages.

We also provide expert guidance for economically disadvantaged workers, mid-career transitions, disabled workers, recent high school and college graduates, veterans and downsized workers.

In addition, there is the "Services to Ex-Offenders Capacity Building Program" also known as the "Second Chance Project" which is a newly funded technical assistance service for the special population of ex-offenders. The goal of the program is to improve employment development services for ex-offenders within the WorkSource California System and other workforce related programs funded through the City of Los Angeles.

The Community Development Department has entered into an agreement with Community Build to provide these capacity building services. For further information, please contact, Community Build at 8730 S. Vermont Avenue, Los Angeles, CA 90044 or call 323-789-9950 to speak to a coordinator.

So if you're looking for a job, let WorkSource California give your search a jump-start. Call your local WorkSource Center for more information from the enclosed brochure or call 1-888-226-6300 for WorkSource Center locations nearest you.

Sincerely,

Petty Santos
Sr. Management Analyst II
Workforce Development Division

MC:PS:jd

Attached

cc: Community Build

July 7, 2004

Torrance One Stop Center
1220 Engracia Avenue
Torrance, Ca 90501
(310) 782-2101
Pfrankel@edd.ca.gov

Dear Mr. White,
In response to your letter of June 1st, I am enclosing some basic information about services offered to the general public through our agency in the Los Angeles area. If you have access to the Internet there is a wealth of information available about jobs, training and supportive services, and I have included some web sites to check.

As you may be aware, with the current budget crisis that California is experiencing, funding for services that we provide to the public has been reduced. You are welcome to visit this office or any of the other One-Stop Centers in the area or anywhere in California when you are paroled. You can locate an office near you by dialing: 1-800-for-a-job (1-800-367-2562).

Please feel free to contact me if I can be of further assistance.

Respectfully,

Philip Frankel, Employment Representative

**Vvork◆Source**
CALIFORNIA
*Building Business and Careers*

June 10, 2004

Roy H. White # D-27085
Z-Wing 308 -Low
P.O. Box 689
Soledad, CA 93960-0689

Mr. White

We have received your letter; here at the Southeast L.A.-Crenshaw Work Source Center we assist people such as yourself obtain job placement assistance.

I have enclosed some flyers that explain our programs. We present Orientations about our services every Monday and Wednesday at 9:45 a.m. When you are ready, please call me at (213) 743-3950 to make an appointment for an Orientation Session.

The Worksource Center also provides referrals to community resources (such as housing) through our partner PATH (people assisting the homeless). Please contact a PATH representative here at the Worksource Center, for information and assistance. He/She can also be reached at (213) 743-9350.

Thank you for your request and good luck with your search.

Sincerely,

Maggie Ramos
Client Services Technician

# DARE U TO CARE ALCOHOL/DRUG REHALBILITATION
## TREATMENT PROGRAM
### 14325 S. FIGUEROA STREET
### GARDENA, CALIFORNIA 90248
### (310) 515-5039 *FAX (310) 515-6837

August 24, 2004

R. White
C. T. F.
P. O. Box 689
Soledad, California
         93960

Dear Mr. White,

Dare U To Care is a non-profit 6 to 12 month Residential Alcohol Treatment Program certified and licensed by the State of California is uniquely designed to sere chemically addicted adult men and women (with/without) children.

We offer groups such as Anger Management, Domestic Violence, 12 Steps & 12 Traditions, Crisis Intervention, HIV Education Prevention, and Relapse Prevention, One-on-One Counseling.

Upon your upcoming discharged date. We are happy to have you to come here to Dare U To Care. When that date comes, please notify us where arrangements can be made for you. Once again, welcome to Dare U To Care and we are happy to provide services for you.

If I can be of further assistance, please don't hesitate to contact us.

Ruth Hamilton
Executive Director



Beginning The New Life...

Dare U To Care

Dare U to Care is a non-profit 12 month Residential Alcohol & Drug Treatment Program certified and licensed by the State of California. DUTC serves chemically addicted sex-offenders, men, women/women with children, and dual diagnosed. For this Blended population, our program is a structured Therapeutic Community Social Setting in a home environment.

PHASE I

The
...Need...

• Orientation
• Case Management
• Group Counseling
• Relapse Prevention
AT PEACE WITH GOD

PHASE II

The
Way ...

• Family Group Therapy
• 12 Step Program
• Parenting
• Stress Management
PEACE WITH OURSELVES

PHASE III

The
... Results ...

• Educational Linkages
• Vocational Development
• Life Skills
PEACE WITH OTHERS

PHASE IV

The
Assurance...

• Job Placement
• Budget Management
• Outside Support Blending
• Re-Entry Training
• After Care
KEEPING THE PEACE

This program is partly fund[ed] y the County of Lo[s] Angeles with funds mad[e a]ble under Prop. 36, the Probation Dept., a[nd] State Parole Dept.

EXHIBIT   "B"

INMATE COPY

**PSYCHOLOGICAL EVALUATION FOR THE BOARD OF PAROLE HEARINGS**
**REVISED SEPTEMBER 1998**
**PAROLE CONSIDERATION HEARING**
**JULY 2006 LIFE-TERM INMATE CALENDAR**

**CORRECTIONAL TRAINING FACILITY, SOLEDAD**
**JUNE 9, 2006**

This is approximately the seventh psychological evaluation prepared for the Board of Parole Hearings on inmate Roy White, CDC number D-27085. Inmate White is a 46-year-old, married, Black male who is currently serving a 15 year to Life sentence for Second Degree Murder, which was committed on 02/16/85.

Prior offenses consist of a possession of a deadly weapon conviction in 1979, and grand theft auto in 1980. During his incarceration, he has not had any CDC-115s. He has had about nine CDC-128A's between 1986 and 2003, none of which were for any aggressive or drug-related infractions.

On 10/09/90, he was seen for evaluation by Charles P. Czarlinsky, M.D., to whom he related that at the age of 24, he got in with the wrong crowd and became addicted to cocaine, and freely admitted that his addiction led to the current offense. Diagnoses were Cocaine Dependence and Antisocial Personality Disorder. His violence potential if released to the community was estimated to be average or less than average, unless he returned to cocaine, in which case it would be greater than the average inmate.

On 07/26/95, he was seen by Bruce Bakeman, Ph.D., to whom he related that he was free-basing cocaine at the time of the offense, had a history of other crimes, and also expressed his regret, stating that he wished he had just kept working and spent more time with his family. He diagnosed Cocaine Dependence, in remission, and Antisocial Personality Disorder. He opined that his drug problems led inevitably to contact with drug dealers, which then led to the attempted robbery and murder, but did not directly determine his actions on that day. He opined that if paroled to the community, his level of dangerousness would be less than the average inmate.

On 12/08/97, he was seen again by Dr. Bakeman with the same diagnoses. He opined that his level of dangerousness was likely less than the average inmate.

On 07/10/98, he was seen by Steven Terrini, Ph.D., who diagnosed Cocaine Dependence, in institutional remission, and Antisocial Personality Disorder,

*WHITE, ROY*
*CDC NUMBER: D-27085*
*BPT PSYCHOLOGICAL EVALUATION*
*PAGE TWO*

improved. He told the doctor he was smoking crack regularly at the time of the offense, had run out of money, had gone to the home of his dealer because the dealer owed him money. He told Dr. Terrini that he learned that life is important and that a crime like this affects many other people. Dr. Terrini believed that the remorse expressed was genuine and appropriate. Dr. Terrini opined that if released to the community, his violence potential was average compared to the average citizen in the community.

On 03/08/00, he was seen by Joe Reed, Ph.D., who had a brief clinical interview, and opined that there were no significant changes since Dr. Terrini's report.

On 11/03/03, he was seen by R. Talbott, Ph.D., who diagnosed Cocaine Dependence, in remission in a controlled environment. No opinion about dangerousness if released to the community was offered.

## *CLINICAL ASSESSMENT*

### XII. *CURRENT MENTAL STATUS/TREATMENT NEEDS:*

Inmate White presents as an appropriately groomed, cooperative man who appears his stated age. There are no psychomotor abnormalities. No abnormal involuntary movements are discerned. Eye contact is good, and facial kinetics are expressive. His speech is prompt and spontaneous, of normal tone and tempo. Receptive language comprehension is grossly intact. The process of thought as reflected in speech is organized and coherent. His affect as expressed in speech and demeanor is appropriate to the situation.

### *CURRENT DIAGNOSTIC IMPRESSIONS (DSM-IV):*

| | |
|---|---|
| *AXIS I:* | Cocaine Dependence, in remission in a controlled environment. |
| *AXIS II:* | Adolescent Antisocial Behavior, in remission. |
| *AXIS III:* | Deferred. |
| *AXIS IV:* | Incarceration. |
| *AXIS V:* | GAF = 90. |

*WHITE, ROY*
*CDC NUMBER: D-27085*
*BPT PSYCHOLOGICAL EVALUATION*
*PAGE THREE*

There is insufficient evidence for a diagnosis of Antisocial Personality Disorder, since this requires a history of conduct problems prior to the age of 15. He engaged in antisocial behavior, such as the Grand Theft Auto and the commitment offense so that a diagnosis of Adolescent Antisocial Behavior is warranted. However, there is no evidence that he has habitually engaged in antisocial behaviors since the commitment offense. Therefore, this disorder can be said to be in remission.

It is clear that he did have a dependence upon cocaine at the time of the commitment offense, but this is currently in remission in a controlled environment. He has participated in Narcotics Anonymous over a lengthy time period and still continues his participation at the present time. When asked why he thought he became addicted to cocaine, he states that it was from being around the wrong people, doing things that they were doing. He is less able to articulate why he preferred cocaine over other substances, other than that it made him feel confident. When asked about the most important steps in the 12-step NA program, he refers to #4 and #10 about taking a personal inventory. When asked if he has any shortcomings that he has worked on, he states that he has tried to be more patient and understanding, to try to look at people's attitudes and points of view, trying not to be judgmental, and trying to stop negative thinking. He states that he has a commitment to continuing sobriety if paroled to the community.

Inmate White is currently programming within the General Population, and is taking substance abuse self-help groups.

## XIII.  REVIEW OF LIFE CRIME:

Inmate White's version of the commitment offense is consistent with his previous versions and basically with the Statement of Facts. He states that at that time he was 25 years old, had a regular job, making money from shampooing carpets and other kinds of work, and living with his girlfriend (now his wife), who appeared to be the major source of financial support for the household. He states that his wife was not a narcotics addict, and did not have an idea that he was an addict until he committed the offense. He states that from about six months prior to the offense, he was using cocaine regularly. He states that the victim, Mr. Crawford, was his regular dealer for a few months prior to the offense.

*WHITE, ROY*
*CDC NUMBER: D-27085*
*BPT PSYCHOLOGICAL EVALUATION*
*PAGE FOUR*

On the day of the offense, he had been using cocaine, and had just spent around $200, and wanted more cocaine, but didn't have enough money. He states he then went to Mr. Crawford and asked for more, but he was refused. He states he then made up his mind to rob him. He came back with a shotgun. He states that he pointed the shotgun at Mr. Crawford and ordered him to give him cocaine and money. He states that Mr. Crawford turned around, but that Mr. Crawford started reaching for a weapon, and so he shot him in the back of the head.

When asked why he shot Mr. Crawford the second time, when he was on the ground, he states, "I didn't want him to suffer." However, he states that he was not sure that Mr. Crawford was still alive at that point. When asked why he admitted his guilt about a year later, he states that "it was getting to me, I knew what I did was wrong."

When asked why he thought he committed this crime, he states that at that time in his life, he "wasn't thinking but for the moment." He states that previous crimes had "escalated him" into this one. He states that he was also intoxicated from cocaine, and that his desire for more cocaine made him commit the robbery.

When asked what kind of person Mr. Crawford was, he states, "I didn't have no feeling about him. It was just a business relationship." Therefore, I am not sure if inmate White has much sense of Mr. Crawford as a fully rounded individual, but nonetheless has remorse for killing him.

## XIV.  *ASSESSMENT OF DANGEROUSNESS*:

A.  Within a controlled setting, this inmate's violence potential has been nil. Over the last 21 years, he has not demonstrated any aggressive behavior.

B.  If released to the community, his violence potential is estimated to be low in comparison with the average inmate. This is based upon the inmate's record preceding the offense, the circumstances of the offense, his post-conviction history, and the lack of a criminally-oriented personality style.

C.  The significant risk factors/precursors to violence that applied at the time of the crime included an addiction to cocaine, intoxication from cocaine on the date of the offense, affiliation with like-minded associates,

*WHITE, ROY*
*CDC NUMBER: D-27085*
*BPT PSYCHOLOGICAL EVALUATION*
*PAGE FIVE*

desensitization to the idea of robbery provided by prior criminal offenses, and failure to anticipate the consequences of attempting an armed robbery with a drug dealer who himself was likely to be armed. He himself states he was just thinking in the moment, and was not attempting to foresee what might happen. However, he has managed to simply stay clear of any drug problems while incarcerated, as reflected in his disciplinary record. He has also managed to stay clear of any altercations or problems with other inmates, and has not shown any propensity to affiliate with inmates involved in any kind of illegal activities. Therefore, all this suggests that the significant risk factors and precursors to violence that applied at the time of the controlling offense are no longer applicable some 21 years later.

XV.    **CLINICIAN OBSERVATIONS/COMMENTS/RECOMMENDATIONS:**

The inmate should continue his participation in Narcotics Anonymous.

*Lance A. Portnoff, Ph.D.*
*Staff Psychologist*
*Correctional Training Facility, Soledad*

*B. Zika, Ph.D.*
*Senior Supervising Psychologist*
*Correctional Training Facility, Soledad*

*LAP/gmj*

*D: 06/09/06*
*T: 06/14/06*

*C:\DocumenC:\Documents and Settings\gjorgensen\My Documents\00 - BPT REPORTS - 2006\WHITE, ROY   D-27085 06-06   PORTNOFF.doc.doc*

State of California                                                                        Board of Prison Terms

# Memorandum

Date    :    January 26, 2006

To      :    Commissioners
             Deputy Commissioners

Subject:    **Psychological Reports**

Psychological reports have traditionally been considered by hearing panels in evaluating suitability for parole during the lifer hearing process. The result of this is that these reports have been used for purposes for which they were not intended. This is especially true for those inmates who are not part of the Mental Health Services Delivery System (MHSDS). Effective immediately psychological reports, using a new format, will be provided during the lifer hearing process only for those inmates who are assigned to MHSDS. Inmates who are not a part of the MHSDS will have initial psychological reports generated upon entry into the Department of Corrections and Rehabilitation. Psychological Reports for subsequent lifer hearings for non-MHSDS inmates will not be generated thereafter. This policy is in effect notwithstanding Department of Corrections and Rehabilitation Department Operations Manual section 62090.13.

For inmates not assigned to the MHSDS, the following procedures are to be used:

- In cases where a psychological report has been ordered by a previous panel but not provided by the institution, the current panel shall not postpone a current hearing. The panel shall proceed with the hearing in the absence of the report.

- In cases where the latest psychological report contains a risk assessment, the hearing panel shall articulate to the inmate and his counsel that the panel has read and considered the section of the report regarding risk assessment, and is not assigning any weight to it in the panel's decision.

- As to aspects of the psychological report other than a risk assessment, in determining what weight to give to any opinion expressed by the clinician, you should consider the facts and materials upon which each opinion is based, and the reasons for the opinion. An opinion is only as good as the facts and reasons on which it is based. If you find that any fact has not been proved, or has been disproved, or is inconsistent with other information you have read and considered in preparation for or during the course of the parole suitability hearing, you must consider that in determining the value of the opinion. Likewise, you must consider the strengths and weaknesses of the reasons on which it is based.

MENTAL HEALTH EVALUATION FOR THE BOARD OF PRISON TERMS
(REVISED AUGUST 1998)
PAROLE CONSIDERATION HEARING
OCTOBER 2001 LIFER CALENDAR

CORRECTIONAL TRAINING FACILITY, SOLEDAD
JULY 24, 2001

Inmate Roy White, CDC# D-27085, was seen for a mental health
evaluation for the Board of Prison Terms by Steven J.
Terrini, Ph.D., Clinical Psychologist at CTF, on 11/06/98
for the February 1999 Lifer Calendar.

According to the agreement that CDC psychologists made with
the Board of Prison Terms, once a mental health evaluation
is completed in the new format, revised in August 1998, a
new evaluation is not necessary each time the inmate appears
before the Board of Prison Terms.

Therefore, a mental health evaluation was not conducted at
this time.


R. S. COATE, Psy.D.
Senior Supervising Clinical Psychologist
Correctional Training Facility, Soledad

RSC/gmj

D:  07/24/01
T:  07/24/01

WHITE    D-27085    CTF-CENTRAL    07/24/01    gmj

# PSYCHOLOGICAL EVALUATION FOR THE BOARD OF PRISON TERMS
## PAROLE CONSIDERATION HEARING
### FEBRUARY 2000 LIFER CALENDAR

## CORRECTIONAL TRAINING FACILITY, SOLEDAD
### MARCH 8, 2000

Inmate White, D-27085, was evaluated for a BPT psychological evaluation by Dr. Steven Terrini in 1998.

According to the agreement that psychologists and psychiatrists made with the Board of Prison Terms, once an evaluation is completed with the new format that was created in 1998, a psychological evaluation does not have to be done each time the inmate goes before the Board of Prison Terms.

After a brief clinical interview with this inmate, there does not appear to be any significant changes since Dr. Terrini's 1998 report.

Therefore, a psychological evaluation was not conducted at this time.

*Joe Reed*

JOE REED, Ph.D.
Staff Psychologist
Correctional Training Facility, Soledad

JR/gmj

d:  03/08/00
t:  03/08/00

WHITE        D-27085        CTF-CENTRAL        03/08/00        gmj

MEMORANDUM

Date:       August 13, 1999

To:         Commissioners
            Board of Prison Terms

From:       Steven J. Terrini, Ph.D.
            Senior Supervising Psychologist (A)
            CORRECTIONAL TRAINING FACILITY, SOLEDAD

Subject:    INDIVIDUAL PSYCHOTHERAPY FOR LIFER INMATES


In recent weeks, I have received many requests by
Lifer inmates for individual therapy, which was
allegedly requested by the Board of Prison Terms
commissioners. This memo was written to clarify
this situation.

I participated in a California Department of
Corrections "Mental Health Services Training" for
psychologists at California State Prison,
Corcoran, on 07/30/98. The presenters (senior
level staff from Sacramento) stated,
"Psychotherapy may be provided to Lifer inmates
when mental health professionals determine it is
needed." They explained that the mental health
staff (psychologists and psychiatrists) make the
recommendation, not the Board of Prison Terms
members. The presenters stated that this policy
came from negotiations between the Board of Prison
Terms and psychologists sometime in early 1998.

To my knowledge, psychotherapy is not provided
within CDC to Lifer inmates to deal with their
commitment offenses. Clearly, this psychotherapy
is not provided at CTF, as this task is not part
of our job description. Dr. Bruce Bakeman,
recently retired senior supervising psychologist,
did provide such treatment for Lifers in the past.
I too engaged in this psychotherapy some years
ago. However, due to the huge increase in the
mental health population at CTF, we both

August 13, 1999
RE: Individual Psychotherapy for Lifer Inmates
Page Two

terminated that program in 1998. There are no
plans to reactivate that program.

Steven J. Terrini, Ph.D.
Senior Supervising Psychologist
Correctional Training Facility, Soledad

SJT/gj

D: 08/13/99
T: 08/13/99

Mr. Roy W. White
#D-27085

BOARD OF PRISON TERMS                                                    STATE OF CALIFORNIA
LIFE PRISONER: POSTCONVIC    I PROGRESS REPORT

☐  DOCUMENTATION HEARING

☒  PAROLE CONSIDERATION HEARING

☐  PROGRESS HEARING

INSTRUCTIONS
    TO CDC STAFF:  DOCUMENT EACH 12-MONTH PERIOD FROM THE DATE THE LIFE TERM STARTS TO PRESENT
    TO BPT STAFF:  FOR EACH 12-MONTH INCREMENT APPLY THE GUIDELINES UNDER WHICH THE PAROLE DATE WAS ORIGINALLY
        ESTABLISHED, ie., 0-2 MONTHS FOR PBR AND 0-4 MONTHS FOR BPT. SEE BPT §§2290 - 2292, 2410 AND 2439.

| POSTCONVICTION CREDIT | | | REASONS |
|---|---|---|---|
| YEAR | BPT | PBR | |
| 9/01 to 9/02 | | | **PLACEMENT:**  Remains at CTF and housed with the general population. **CUSTODY:**  Remains at Medium A. **VOC. TRAINING:**  White received his Certificate of completion in Vocational Drafting on 9/30/02. **ACADEMICS:**  White attained his H.S. Diploma on 3/90. **WORK RECORD:**  None noted. **GROUP ACTIVITIES:**  A CDC 128B dated 10/3/02 reflects that White has been on Narcotics Anonymous' waiting list. **PSYCH. TREATMENT:**  None noted. **PRISON BEHAVIOR:**  White has not received a CDC 115 during his commitment with CDC. **OTHER:**  On 2/26/02, White appeared before BPT with the recommendation to deny parole for two years, complete a vocational program, and continue to participate in a self-help program. |

CORRECTIONAL COUNSELOR'S SIGNATURE                                DATE
                                                                  1-15-04

WHITE, ROY              D-27085              CTF-SOLEDAD              FEB/2004

BPT 1004 (REV 7/86)                          Page _1_

BOARD OF PRISON TERMS                                                                    STATE OF CALIFORNIA

CONTINUATION SHEET:  LIFE PRISONER : POSTCONVICTION PROGRESS REPORT

| POSTCONVICTION CREDIT | | | REASONS |
|---|---|---|---|
| YEAR | BPT | PBR | |
| 9/02 to 10/03 | | | **PLACEMENT**: Remains at CTF and housed with the general population. **CUSTODY**: Remains at Medium A. **VOC. TRAINING**: CDC 128E dated 3/3/103 reflects that White is assigned as a Teacher's Aide in the Vocational Drafting program, receiving satisfactory grades. **ACADEMICS**: White attaine his H.S. Diploma on 3/90. **WORK RECORD**: None noted. **GROUP ACTIVITIES**: A CDC 128B's dated 11/3/02, 1/3/03, 3/20/03, and 8/26/03 reflects that White is an active member of the Narcotics Anonymous program. **PSYCH. TREATMENT**: None noted. **PRISON BEHAVIOR**: White has not received a CDC 115 during his commitment with CDC. **OTHER**: None noted. |

ORDER:
- ☐ BPT date advanced by _____ months.
- ☐ PBR date advanced by _____ months.
- ☐ BPT date affirmed without change.
- ☐ / PBR date affirmed without change.

SPECIAL CONDITIONS OF PAROLE:
- ☐ Previously imposed  conditions affirmed.
- ☐ Add or modify

☐ Schedule for Progress Hearing on appropriate institutional calendar

WHITE, ROY                    D-27085                    CTF-SOLEDAD                    FEB/2004

BOARD OF PRISON TERMS                                                                    STATE OF CALIFORNIA

BPT 1004 (REV 7/86)                                    Page _2_

BOARD OF PRISON TERMS

STATE OF CALIFORNIA

CONTINUATION SHEET:  LIFE PRISONER : POSTCONVICTION PROGRESS REPORT

| POSTCONVICTION CREDIT | | | REASONS |
|---|---|---|---|
| YEAR | BPT | PBR | |
| 10/03 to Present (6/2/04) | | | **PLACEMENT:**  Remained at CTF Central and housed in the general population.<br>**CUSTODY:**  Medium A.<br>**VOCATION:**  Received a Vocational Drafting certificate on 9/30/02.<br>**ACADEMIC:**  None during this period.<br>**WORK:**  Assigned to the Culinary as a kitchen worker until 1/10/04.  Assigned as a Z Wing Porter from 1/10/04 through the remainder of the period.<br>**GROUP ACTIVITIES:**  None during this period.<br>**PSYCH TREATMENT:**  None during this period.<br>**PRISON BEHAVIOR:**  Remained disciplinary free during this period.<br>**OTHER:**  White has received support letters from the following friends and family:  wife Tanya White (11/12/03), friend Darrelyn E. Williams (12/2/03), mother Lucille Dawson (1/27/04), ex-wife Carla Kendrick (4/20/04), and son Roy L. White (4/29/04).  Received a 1/9/04 Laudatory Chrono from Correctional Officer J. Palmer for being respectful and for helping troubled inmates to program within the housing unit.  In an interview for this report, White stated that he has written to several employment agencies requesting employment consideration upon parole.  He stated that responses are forthcoming from the following organizations:  Community Center, Inc., Community Development, Work Source, Career Encores and Community Career Development, Inc.  These agencies are geared to helping ex-felons with employment when released.  In addition, White stated that the Board of Prison Terms requested a new psychiatric report; however, a psychiatric report, dated 11/3/03, was prepared for the Subsequent Parole Consideration Hearing #2. |

**ORDER:**

☐ BPT date advanced by _____ months.
☐ PBR date advanced by _____ months.

☐ BPT date affirmed without change.
☐ PBR date affirmed without change.

**SPECIAL CONDITIONS OF PAROLE:**

☐ Previously imposed  conditions affirmed.
☐ Add or modify

☐ Schedule for Progress Hearing on appropriate institutional calendar

| WHITE, ROY | D27085 | CTF-SOLEDAD | FEB/2004 |
|---|---|---|---|

BOARD OF PRISON TERMS

STATE OF CALIFORNIA

EXHIBIT  "C"

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
**DEPT 100**

| Date: 10/26/06 | | |
|---|---|---|
| Honorable:   STEVEN R. VAN SICKLEN | Judge  G.ARMENTA | Deputy Clerk |
| | Bailiff  NONE | Reporter |

(Parties and Counsel checked if present)

BH004146
In re,
ROY HENRY WHITE,                          Counsel for Petitioner:  (NO APPEARANCES)
                               Petitioner,
                                          Counsel for Respondent:
On Habeas Corpus

Nature of Proceeding ORDER RE WRIT OF HABEAS CORPUS

The Court acknowledges the receipt of the Writ of Habeas Corpus filed on August 1, 2006.

Due to the enormous number of Writ petitions now on file with this Court, the Court requires additional time to process each petition.  Accordingly, the Court, on its own motion, is extending time to rule on the Writ of Habeas Corpus pursuant to Cal. Rules of Court, rule 4.551(h).

The Court hereby orders the time for ruling on petitioner's Writ of Habeas Corpus extended to March 28, 2007.

A copy of this minute order is mailed via United States Mail addressed as follows:

Roy Henry White (D-27085)
P.O. Box 689
Z-Wing 308-L
Soledad, CA  93960-0689

THE DOCUMENT TO WHICH THIS CERTIFICATE IS
ATTACHED IS A FULL, TRUE, AND CORRECT COPY
OF THE ORIGINAL ON FILE AND OF RECORD IN
MY OFFICE

ATTEST _____ 11-7-06

JOHN A. CLARKE,
Clerk/Executive Officer of the Superior
Court of California, County of Los Angeles.

BY _____, DEPUTY

| Minutes Entered |
|---|
| 10/26/06 |
| County Clerk |

1

EXHIBIT    "D"

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS AND REHABILITATION
CDC-128-B (Rev.4/74)

**NAME and NUMBER**    **WHITE, R.**    **D27085**    **ZW-308L**

You attended meetings for the Wednesday NA Central B Group for the 3rd Quarter (Jul, Aug, Sep) 2005.
You have actively participated in this Group. You provide service and input to the Group with your attendance.
Through this program, you are shown what tools are available to you. By following 'The 12 Steps of Recovery' in your life, you show your willingness to improve yourself.

Elected Position: None

K.L. Villa
**Group Staff Sponsor**

Original : Central File
   cc: Staff Sponsor
     : Inmate

DATE:   1/12/06

**Wednesday NA Central B  -LAUDATORY CHRONO**

---

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS AND REHABILITATION
CDC-128-B (Rev.4/74)

**NAME and NUMBER**    **WHITE, R.**    **D27085**    **ZW-308L**

You attended meetings for the Wednesday NA Central A Group for the 3rd Quarter (Jul, Aug, Sep) 2006.
Mr. WHITE attends NA meetings with a positive and enthusiastic attitude at each meeting. As staff sponsor observing all members, it is noted that he has consistently shown respect toward his fellow inmates and staff sponsors while attending the NA meetings. Through this program, he is shown the tools available to him for recovery. By following 'The 12 Steps of Recovery' in his life, he can show his willingness to improve himself if applied. Mr.WHITE is to be commened for his role in the success of the group.

J. Kramer
**Group Staff Sponsor**

Original : Central File
   cc: Staff Sponsor
     : Inmate

DATE 10/10/2006

**Wednesday NA Central A  -LAUDATORY CHRONO**

---

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS AND REHABILITATION
CDC-128-B (Rev.4/74)

**NAME and NUMBER**    **WHITE, R.**    **D27085**    **ZW-308L**

You attended meetings for the Wednesday NA Central A Group for the 4th Quarter (Oct, Nov, Dec) 2006.
Mr. WHITE attends NA meetings with a positive and enthusiastic attitude. As staff sponsor observing all members, it is noted he has consistently shown respect toward his fellow inmates and staff sponsors while attending the NA meetings. Through this program, he is shown the tools available to him for recovery. By following 'The 12 Steps of Recovery' in his life, he can show his willingness to improve himself if applied. Mr. WHITE is to be commended for his role in the success of the group.

J. Kramer
**Group Staff Sponsor**

Original : Central File
   cc: Staff Sponsor
     : Inmate

DATE   1/9/2007

**Wednesday NA Central A  -LAUDATORY CHRONO**

STATE OF CALIFORNIA
CDC 101 (1/92) — Copy — **WORK SUPERVISOR'S REPORT** — ZW 308 — DEPARTMENT OF CO

| GRADES | GRADE | | GRADE |
|---|---|---|---|
| 1 = EXCEPTIONAL | ✓ | A. DEMONSTRATED SKILL AND KNOWLEDGE | ✓ F. TEAMWORK AND PARTIC |
| 2 = ABOVE AVERAGE | ✓ | B. ATTITUDE TOWARD FELLOW INMATES AND WORKERS | ✓ G. LEARNING ABILITY |
| 3 = SATISFACTORY | ✓ | C. ATTITUDE TOWARD SUPERVISORS AND STAFF | ✓ H. USE OF TOOLS AND EQU |
| BELOW AVERAGE | ✓ | D. INTEREST IN ASSIGNED WORK | ✓ I. QUALITY OF WORK |
| UNSATISFACTORY | ✓ | E. EFFORT DISPLAYED IN ASSIGNED WORK | ✓ J. QUANTITY OF WORK |

PAY STATUS: FROM: $ 20°° TO: $ 20°° — FROM: JOB NO. PTRCC .375 — TO: JOB NO. Same

TOTAL # Hours Assigned: 120/MONTH — TOTAL # Hours Worked: 120/MONTH

INMATE ASSIGNED TO: PTRCC .375 | DATE ASSIGNED: 1.10.04 | ACTUAL WORK CONSISTS OF: Keeping Showers Clean | PERIOD COVERED BY REPOR: 6/2005 - 12

RECOMMENDED FOR: ☐ REASSIGNMENT ☒ RETAIN ☐ PAY INCREASE ☐ PAY DECREASE — INMATE'S INITIALS: R 99.1

COMMENTS (IF MORE SPACE REQUIRED, USE REVERSE SIDE): Very Consistant with work quality. keep up good work. — CODE OF SAFE PRACTICES REVIEWED SUPV'S INITIALS: VH — INMATE'S INITIALS:

SUPERVISOR: C/O V. HERRERO | LENGTH OF SUPERVISION: 2 YRS | WORK DETAIL: 3/U PORTER | ETHNICITY: BLK

INMATE'S NAME: WHITE, R | CDC NUMBER: D-27085 | INSTITUTION: CTF-CENTRAL | DATE: 1-05-

---

STATE OF CALIFORNIA
CDC 101 (1/92) — **WORK SUPERVISOR'S REPORT** — DEPARTMENT OF CO

| GRADES | GRADE | | GRADE |
|---|---|---|---|
| 1 = EXCEPTIONAL | ✓ | A. DEMONSTRATED SKILL AND KNOWLEDGE | ✓ F. TEAMWORK AND PARTIC |
| 2 = ABOVE AVERAGE | ✓ | B. ATTITUDE TOWARD FELLOW INMATES AND WORKERS | ✓ G. LEARNING ABILITY |
| 3 = SATISFACTORY | ✓ | C. ATTITUDE TOWARD SUPERVISORS AND STAFF | ✓ H. USE OF TOOLS AND EQU |
| 4 = BELOW AVERAGE | ✓ | D. INTEREST IN ASSIGNED WORK | ✓ I. QUALITY OF WORK |
| 5 = UNSATISFACTORY | ✓ | E. EFFORT DISPLAYED IN ASSIGNED WORK | ✓ J. QUANTITY OF WORK |

PAY STATUS: FROM: $ 70°° TO: $ 70°° — FROM: JOB NO. PTRCC - .375 TO: JOB NO. PTRC -

TAL # Hours Assigned: — TOTAL # Hours Worked:

INMATE ASSIGNED TO: PTRCC .375 | DATE ASSIGNED: 1/10/04 | ACTUAL WORK CONSISTS OF: 3rd Tier Sweeping, Mopping | PERIOD COVERED BY REPOR: 7-2006 -

RECOMMENDED FOR: ☐ REASSIGNMENT ☒ RETAIN ☐ PAY INCREASE ☐ PAY DECREASE — INMATE'S INITIALS: R.H.W

COMMENTS (IF MORE SPACE REQUIRED, USE REVERSE SIDE): Keep up the good work — CODE OF SAFE PRACTICES REVIEWED SUPV'S INITIALS: — INMATE'S INITIALS:

SUPERVISOR: C/O A. Moncada | LENGTH OF SUPERVISION: 11 Months | WORK DETAIL: 3/W Porter | ETHNICITY: BLK

INMATE'S NAME: White, R | CDC NUMBER: D-27085 | INSTITUTION: CTF-Central | DATE: 6/5/

---

STATE OF CALIFORNIA — DEPARTMENT OF CORRECTIONS AND REHA
CDC-

**NAME and NUMBER:** **WHITE, R** — D27085 — **ZW-308L**

On 04/07/06 Inmate WHITE, R., D27085, ZW308L, received a Custodial Counseling (CDC-128A) in error. The officer wrote dow
wrong CDC number by mistake, resulting in the error. The Counseling chrono should have been issued to his cellmate, Joseph Whi
officer recognizes the error and will correct this inmate's records accordingly.

## PROOF OF SERVICE BY MAIL

### (C.C.P. §§1013A, 2015.5)

STATE OF CALIFORNIA )
                   ) SS.
COUNTY OF ~~MONTEREY~~ ) Los Angeles

I, __Roy henry White_____, am a resident of the State of California,

County of Monterey. I am over the age of 18 years and I   am/am not   a party to the within action.

My   business/residence   address is P.O. Box 689, Soledad, California, 93960-0689.

On __December 18,_____, 20 _06___, I served the foregoing:

__Petition for writ of Habeas Corpus._____

on the parties listed below by placing a true copy thereof enclosed in a sealed envelope with postage

fully prepaid in the United States mail at Soledad, California, addressed as follows:

OFFICE OF THE ATTORNEY GENERAL
300 South Spring Street
Los Angeles, CA 90013

There is regular delivery service by the U.S. Postal Service between the place of mailing

and the places so addressed.

I declare under the penalty of perjury under the laws of the State of California that the

foregoing is true and correct.

Executed this __December__ day of _____ 18,_____, 20 _06___, at

Soledad, California.

/S/ __Mr. Roy Henry White__



**SHERRI R. CARTER**
District Court Executive
and Clerk of Court

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION**
312 North Spring Street, Room G-8  Los
Angeles, CA  90012
Tel: (213) 894-7984

**SOUTHERN DIVISION**
411 West Fourth Street, Suite 1053
Santa Ana, CA 92701-4516
(714) 338-4570

**EASTERN DIVISION**
3470 Twelfth Street, Room 134
Riverside, CA 92501
(951) 328-4450

Tuesday, June 03, 2008

**ROY HENRY WHITE**
**D-27085**
**P.O. BOX 689**
**SOLEDAD, CA 93960-0689**

Dear Sir/Madam:

A [X] Petition for Writ of Habeas Corpus was filed today on your behalf and assigned civil case number
CV08- 3598 VBF (JC)

A [ ] Motion pursuant to Title 28, United States Code, Section 2255, was filed today in criminal case
number                   and also assigned the civil case number

Please refer to these case numbers in all future communications.

Please Address all correspondence to the attention of the Courtroom Deputy for:

[ ] District Court Judge _____

[X] Magistrate Judge _____**Jacqueline Chooljian**_____

at the following address:

[X] U.S. District Court        [ ] Ronald Reagan Federal       [ ] U.S. District Court
312 N. Spring Street              Building and U.S. Courthouse     3470 Twelfth Street
Civil Section, Room G-8           411 West Fourth St., Suite 1053  Room 134
Los Angeles, CA  90012            Santa Ana, CA  92701-4516        Riverside, CA 92501
                                  (714) 338-4750

The Court must be notified within fifteen (15) days of any address change.  If mail directed to your
address of record is returned undelivered by the Post Office, and if the Court and opposing counsel
are not notified in writing within fifteen (15) days thereafter of your current address, the Court may
dismiss the case with or without prejudice for want of prosecution.

Very truly yours,

Clerk, U.S. District Court

HRASHAD
By: _____

Deputy Clerk