|  |  |
|---|---|
| UNITED STATES DISTRICT COURT | |
| NORTHERN DISTRICT OF CALIFORNIA | |

| ROY HENRY WHITE, | No. C 08-3831 MHP (pr) |
|---|---|
| Petitioner, | **ORDER DENYING HABEAS PETITION** |
| v. | |
| BEN CURRY, warden, | |
| Respondent. | |

# INTRODUCTION

Roy Henry White, formerly an inmate at the Correctional Training Facility in Soledad, filed this pro se action seeking a writ of habeas corpus under 28 U.S.C. § 2254. The matter is now before the court for consideration of the merits of the pro se habeas petition. For the reasons discussed below, the petition will be denied.

# BACKGROUND

White was convicted in Los Angeles County Superior Court of second degree murder and was found to have used a deadly weapon in the commission of the offense. He was sentenced in 1986 to a term of 17 years to life in prison. His petition does not challenge his conviction but instead challenges a July 12, 2006 decision by the Board of Parole Hearings ("BPH") to find him not suitable for parole. The BPH identified the circumstances of the commitment offense, White's history of criminality, and deficiencies in his parole plans as the reasons for finding him unsuitable.

White sought relief in the California courts. The Los Angeles County Superior Court denied his petition for writ of habeas corpus in a reasoned decision. The California Court of Appeal and California Supreme Court summarily denied his petitions for writ of habeas corpus.

White then filed his federal petition for a writ of habeas corpus. The court found cognizable his claim that his right to due process was violated because the evidence was insufficient to support the BPH's decision that he was unsuitable for parole. Respondent filed an answer and White filed a traverse.

**JURISDICTION AND VENUE**

This court has subject matter jurisdiction over this habeas action for relief under 28 U.S.C. § 2254. 28 U.S.C. § 1331. This action is in the proper venue because the challenged action concerns the execution of the sentence of a prisoner then housed at a prison in Monterey County, within this judicial district. 28 U.S.C. §§ 84, 2241(d).

**EXHAUSTION**

Prisoners in state custody who wish to challenge collaterally in federal habeas proceedings either the fact or length of their confinement are required first to exhaust state judicial remedies, either on direct appeal or through collateral proceedings, by presenting the highest state court available with a fair opportunity to rule on the merits of each and every claim they seek to raise in federal court. See 28 U.S.C. § 2254(b), (c). The parties do not dispute that state court remedies were exhausted for the claim asserted in the petition.

**STANDARD OF REVIEW**

This court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that

was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); see Williams (Terry) v. Taylor, 529 U.S. 362, 409-13 (2000). Section 2254(d) applies to a habeas petition from a state prisoner challenging the denial of parole. See Hayward v. Marshall, 603 F.3d 546, 563 (9th Cir. 2010) (en banc); Sass v. California Board of Prison Terms, 461 F.3d 1123, 1126-27 (9th Cir. 2006).

## DISCUSSION

A.   State Law Standards For Parole For Murderers In California

California uses indeterminate sentences for most non-capital murderers, with the term being life imprisonment and parole eligibility after a certain minimum number of years. A first degree murder conviction yields a minimum term of 25 years to life and a second degree murder conviction yields a minimum term of 15 years to life imprisonment. See In re Dannenberg, 34 Cal. 4th 1061, 1078 (Cal. 2005); Cal. Penal Code § 190.

A BPH panel meets with an inmate one year before the prisoner's minimum eligible release date "and shall normally set a parole release date. . . . The release date shall be set in a manner that will provide uniform terms for offenses of similar gravity and magnitude in respect to their threat to the public, and that will comply with the sentencing rules that the Judicial Council may issue and any sentencing information relevant to the setting of parole release dates." Cal. Penal Code § 3041(a). Significantly, that statute also provides that the panel "shall set a release date unless it determines that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration for this individual, and that a parole date, therefore, cannot be fixed at this meeting." Cal. Penal Code § 3041(b).

One of the implementing regulations, 15 Cal. Code Regs. § 2401, provides: "A parole date shall be denied if the prisoner is found unsuitable for parole under Section 2402(c). A parole date shall be set if the prisoner is found suitable for parole under Section 2402(d). A parole date set under this article shall be set in a manner that provides uniform terms for

1  offenses of similar gravity and magnitude with respect to the threat to the public."[1]  The
2  regulation also provides that "[t]he panel shall first determine whether the life prisoner is
3  suitable for release on parole.  Regardless of the length of time served, a life prisoner shall be
4  found unsuitable for and denied parole if in the judgment of the panel the prisoner will pose
5  an unreasonable risk of danger to society if released from prison." 15 Cal. Code Regs. §
6  2402(a).  The panel may consider all relevant and reliable information available to it.  15 Cal.
7  Code Regs. § 2402(b).

8       The regulations contain a matrix of suggested base terms for several categories of
9  crimes.  See 15 Cal. Code Regs. § 2403.  For example, for second degree murders, the matrix
10 of base terms ranges from the low of 15, 16, or 17 years to a high of 19, 20, or 21 years,
11 depending on some of the facts of the crime.  The statutory scheme places individual
12 suitability for parole above a prisoner's expectancy in early setting of a fixed date designed to
13 ensure term uniformity.  Dannenberg, 34 Cal. 4th at 1070-71.  Under state law, the matrix is
14 not reached unless and until the prisoner is found suitable for parole.  Id. at 1070-71; 15 Cal.
15 Code Regs. § 2403(a).

16      The "Penal Code and corresponding regulations establish that the fundamental
17 consideration in parole decisions is public safety . . . [T]he core determination of 'public
18 safety' under the statute and corresponding regulations involves an assessment of an inmate's
19 current dangerousness."  In re Lawrence, 44 Cal. 4th 1181, 1205 (Cal. 2008)(emphasis in
20 source).   Where "evidence of the inmate's rehabilitation and suitability for parole under the
21 governing statutes and regulations is overwhelming, the only evidence related to unsuitability
22 is the gravity of the commitment offense, and that offense is both temporally remote and
23 mitigated by circumstances indicating the conduct is unlikely to recur, the immutable
24 circumstance that the commitment offense involved aggravated conduct does not provide
25 'some evidence' inevitably supporting the ultimate decision that the inmate remains a threat to
26 public safety." Id. at 1191 (emphasis in source).

27
28

4

B.      Federal Habeas Relief On Parole Denial Claims

The U. S. Constitution's Due Process Clause does not itself provide state prisoners with a federal right to release on parole. Hayward v. Marshall, 603 F.3d 546, 562 (9th Cir. 2010) (en banc).  The substantive law of a state might create a right to release on parole, however.  See id. at 555, 559.  Although Hayward purported not to reach the question whether a California's substantive law created a federally protected liberty interest, see id. at 562, later cases from the Ninth Circuit have said or assumed it does.   See Pearson v. Muntz, 606 F.3d 606, 609 (9th Cir. 2010) ("state-created rights may give rise to liberty interests that may be enforced as a matter of federal law. . . .  By holding that a federal habeas court may review the reasonableness of the state court's application of the California 'some evidence' rule, Hayward necessarily held that compliance with the state requirement is mandated by federal law, specifically the Due Process Clause." ); Cooke v. Solis, 606 F.3d 1206, 1213 (9th Cir. 2010) ("In Hayward, we held that due process challenges to California courts' application of the 'some evidence' requirement are cognizable on federal habeas review under AEDPA"); id. ("we must examine the nature and scope of the federally enforceable liberty interest created by California's 'some evidence' requirement"); see also Pirtle v. California Board of Prison Terms, 611 F.3d 1015, 1020 (9th Cir. 2010) ("'California's parole scheme gives rise to a cognizable liberty interest in release on parole.' McQuillion v. Duncan, 306 F.3d 895, 902 (9th Cir 2002).  That liberty interest encompasses the state-created requirement that a parole decision must be supported by 'some evidence' of current dangerousness. Hayward [603 F.3d at 562-63.]")   Hayward's application and these later cases make it clear that in the Ninth Circuit there is federal habeas relief available under § 2254 for California prisoners denied parole without sufficient evidence, although it now appears that the emphasis has shifted from § 2254(d)(1) to § 2254(d)(2).

A federal district court reviewing a California parole decision "must determine 'whether the California judicial decision approving the governor's [or the Board's] decision rejecting parole was an 'unreasonable application' of the California 'some evidence' requirement, or was 'based on an unreasonable determination of the facts in light of the

1  evidence.'" Hayward, 603 F.3d at 562-63 (quoting 28 U.S.C. § 2254(d)(1)-(2)).  That

2  requirement was summarized in Hayward as follows:

> As a matter of California law, "the paramount consideration for both the Board and the Governor under the governing statutes is whether the inmate currently poses a threat to public safety."  There must be "some evidence" of such a threat, and an aggravated offense "does not, in every case, provide evidence that the inmate is a current threat to public safety."  The prisoner's aggravated offense does not establish current dangerousness "unless the record also establishes that something in the prisoner's pre- or post- incarceration history, or his or her current demeanor and mental state" supports the inference of dangerousness. [¶]  Thus, in California, the offense of conviction may be considered, but the consideration must address the determining factor, "a current threat to public safety."

Hayward, 603 F.3d at 562 (footnotes omitted) (quoting Lawrence, 44 Cal. 4th. at 1210, 1213-14); see also Cooke, 606 F.3d at 1216 (describing California's "some evidence" requirement).

When a federal court considers a habeas case directed to a parole decision, the "necessary subsidiary findings" and the "ultimate 'some evidence' findings" by the state courts are factual findings – and thus are reviewed by the federal court under 28 U.S.C. § 2254(d)(2) for whether the decision was "based on an unreasonable determination of the facts in light of the evidence." Cooke, 606 F.3d at 1214 (citing Hayward, 603 F.3d at 563).

C.  White's Case

    1.  His Circumstances

Commitment Offense: The murder was described in the board report, which the BPH commissioner read into the record.

> [On] February 16th, 1985, Harold Crawford, a known drug dealer was shot to death. He had shotgun wounds to his back and to the back of his head.  During the initial investigation, detectives interviewed Roy White several times.  He denied any connection to the murder at the time.  However, on January 16th, 1986, he turned himself in to LA PD and admitted to Harold Crawford's murder. [During an] interview in custody, White stated that he had been free basing cocaine on the day of the murder.  He went to Crawford's house and bought some cocaine from him.  White described himself as being "sprung."  He decided to rob Crawford and went back to his house to get [his] shotgun.  Back at Crawford's house, White pointed the shotgun at Crawford.  Crawford tried to reach for his own weapon, so White shot him. White shot Crawford twice because, according to White, he tried to reach for his gun on both occasions.

Resp. Exh. 1, 7/12/06 BPH hearing reporter's transcript ("RT") 20.

Criminal History:  White had no juvenile record.  He did have an adult criminal

6

1 record, however.  White was arrested in 1979 for possession, manufacture and sale of a
2 dangerous weapon (namely, a set of nunchuks).  He pled guilty and was sentenced to a fine
3 or 4 days in jail.  RT 22.  He was arrested in 1980 for grand theft auto.  That led to a
4 conviction for tampering with a vehicle, and a 24-month probation term.  RT 23.

5      White said that he started doing drugs in about 1981.  RT 26.  On the day of the
6 murder, he bought $200 worth of cocaine from Crawford before deciding to rob him.  See
7 Resp. Exh. 5 at Exh. B (June 9, 2006 psychological evaluation) at 4.

8      <u>Post-Incarceration Behavior</u>: White had "generally a very positive disciplinary
9 history."  RT 29.  He had not received any CDC-115 disciplinary write-ups.  He had received
10 ten CDC-128 counselling memoranda for lesser transgressions of prison rules.  RT 29.

11      White had a limited record of programming in prison.  He had received his high
12 school diploma in prison in 1998 or 1999.  RT 26.  He had studied two vocations and
13 claimed to have completed them, but the certificate of completion for each was not in the
14 record before the BPH.  RT 31, 41.  The commissioner explained that, since the certificates
15 were not in the record, the BPH would not consider the vocations completed.

16      White was an active participant in Narcotics Anonymous.  RT 30.  He had received
17 five laudatory chronos about his participation since his last parole hearing.  He said he would
18 continue if released because it was a good program and was helpful to him.

19      White had worked as a porter for several years and received favorable reports.  RT 31.
20      Other than working as a porter and attending Narcotics Anonymous, White had done
21 nothing new since the last hearing.  RT 32.

22      <u>Psychological Evaluations</u>: The April 9, 2006 psychological evaluation listed an Axis
23 I diagnosis of cocaine dependence, in remission in a controlled environment, and an Axis II
24 diagnosis of adolescent antisocial behavior, in remission.  RT 32; Resp. Exh. 5 at Exh. B
25 (June 9, 2006 psychological evaluation) at 2.  The psychologist opined that the inmate's
26 "violence potential has been nil" in a controlled setting.  Resp. Exh. 5 at Exh. B (June 9, 2006
27 psychological evaluation) at 4.  "If released to the community, his violence potential is
28 estimated to be low in comparison with the average inmate."  <u>Id.</u>

7

1        <u>Parole Plans</u>: It appears that White did not have current parole plans, although the
2   record is somewhat unclear on this point.  <u>See</u> RT 33-35.  At his last hearing, his plan was to
3   live with his wife, but they had since divorced so that was no longer his residence plan.  <u>See</u>
4   RT 25, 33.  He apparently had an offer from his mother to let him live in her home, although
5   the letter was not recent.  RT 35-36.  He also apparently had a letter indicating a job offer,
6   but that letter was from the last hearing more than a year ago.  The commissioner explained
7   that BPH needed updated and current letters for parole plans.  RT 35.  White had no other
8   information about his parole plans.  RT 36.

      2.    <u>BPH's Decision And State Court Review</u>

10       The BPH determined that White was "not suitable for parole and would pose an
11  unreasonable risk or danger to society if released from prison."  RT 52.  The BPH relied on
12  the commitment offense, which was "carried out in an especially callous manner," RT 52,
13  and for a motive that was inexplicable related to the offense.  RT 52.   The BPH also relied
14  on White's prior criminality.  RT 52.  The BPH also relied on his inadequate parole plans and
15  failure to provide proof of marketable skills in the alternative.  RT 52-53.
16       The Los Angeles County Superior Court independently reviewed the record, gave
17  deference to the BPH's "broad discretion" in parole matters, and concluded that "the record
18  contains 'some evidence' to support the determination that Petitioner presents an
19  unreasonable risk of danger to society and is, therefore, not suitable for release on parole."
20  Resp. Exh. 2 at 1.  As the last reasoned decision from a state court, that is the decision to
21  which § 2254(d) applies.  <u>See</u> <u>Ylst v. Nunnemaker</u>, 501 U.S. 797, 803-04 (1991); <u>Barker v.</u>
22  <u>Fleming</u>, 423 F.3d 1085, 1091-92 (9th Cir. 2005).  The court recounted the facts of the
23  murder that included White shooting the victim in the back and then again in the back of his
24  head, and noted that the BPH relied primarily on the commitment offense for its decision.
25  The court found some evidence to support the finding that the commitment offense was
26  carried out in a dispassionate and calculated manner, and that it was done for a trivial motive.
27  Resp. Exh. 2 at 1.  The court further explained that the BPH had "also considered Petitioner's
28  non-violent prior offenses and his incomplete file with regard to vocational program

1  certifications. While these factors may not justify a finding of unsuitability on their own, the
2  Board may properly consider them." Id. at 2.

3         3.       Analysis Of Habeas Claim

4         The murder committed by White fit two of the regulation's criteria for determining
5  that a murder was committed in an especially heinous, atrocious or cruel manner, as the state
6  court found. There was evidence that it was "carried out in a dispassionate and calculated
7  manner, such as an execution-style murder," 15 Cal. Code Regs. § 2402(c)(1)(B), in that
8  White shot the victim in the back and in the back of the head with a shotgun. There also was
9  evidence that this killing was for a "trivial" motive, 15 Cal. Code Regs. § 2402(c)(1)(E), in
10 that the killing occurred for the purpose of stealing drugs. White's contention that the victim
11 was reaching for his gun does not help him because, as the superior court explained, "[e]ven
12 if the victim was reaching for his gun when Petitioner shot him, he was only doing so
13 because Petitioner was already aiming a gun at him." Resp. Exh. 2 at 1. Although the
14 murder was the primary reason for the BPH's decision, it was not the exclusive reason: the
15 BPH also relied on White's prior criminality and the shortcomings in his parole plans. There
16 was some evidence to support the BPH's reasons and conclusion, and the state court did not
17 make an unreasonable decision in so concluding.

18        The record before the BPH was very sparse in certain areas due to several ill-informed
19 choices by White. See RT 4-10. He chose not to review his file before the hearing. As a
20 result, he was unaware of documentation problems until the day of the hearing. See RT 6.
21 For example, he was unaware that the certificates of completion of the vocations were not in
22 his file and that a CDC-128 for another inmate with his last name was in his file. (White's
23 attachment of the vocation certificates and a correction to the CDC-128 to his state and
24 federal habeas petitions does not help him because the courts are not conducting new parole
25 suitability hearings but are instead reviewing the BPH's decision as of the date it was made
26 and in light of the evidence before the BPH.) White also waived assistance of counsel for the
27 BPH hearing and did not bring his copy of the parole packet with him to the hearing. The
28 hearing record does not contain the usual closing statement from the prisoner's counsel that

9

emphasizes the evidence of rehabilitation and programming accomplishments. If there were such accomplishments, they are not in the record here: there's no evidence that suggests White had done any of the usual life skills improvement programming (such as anger management and life skills workshops) other than attend Narcotics Anonymous. White also had not updated the information about his parole plans, and the BPH was reluctant to consider offers that it considered stale. The prisoner's lack of preparation and presentation skills worked to his detriment at the hearing.

The information available to the BPH reasonably could be viewed to indicate "that the implications regarding the prisoner's dangerousness that derive from his . . . commission of the commitment offense remain probative to the statutory determination of a continuing threat to public safety." Lawrence, 44 Cal. 4th at 1214. White's lengthy incarceration – he was about 20 years into his 17 to life sentence – plus his clean disciplinary history, educational achievement, vocational training and participation in Narcotics Anonymous count in his favor. However, those circumstances do not provide so much evidence of rehabilitation as to compel a finding of suitability by the BPH and state court. The BPH hearing transcript and the record before this court have no evidence of any self-help or other programming other than his participation in Narcotics Anonymous. Although he certainly is not going backwards, White's forward progress toward rehabilitation is somewhat limited, and could be so viewed by the BPH. There was some evidence to support the BPH's findings on the commitment offense, prior criminality, and deficiencies in his parole plans. These circumstances also provided reliable, probative evidence of White's current dangerousness. The state court's rejection of White's petition was not an unreasonable application of California's "some evidence" requirement and was not based on an unreasonable determination of the facts in light of the evidence. White therefore is not entitled to federal habeas relief.

D.  Certificate Of Appealability

A certificate of appealability is GRANTED as to the due process claim. See 28 U.S.C. § 2253(c). Reasonable jurists could find the district court's assessment of the claim

debatable. See Slack v. McDaniel, 529 U.S. 473, 484 (2000). White is cautioned that the court's ruling on the certificate of appealability does not relieve him of the obligation to file a timely notice of appeal if he wishes to appeal.

## CONCLUSION

For the foregoing reasons, the petition is denied on the merits. The clerk shall close the file.

IT IS SO ORDERED.

DATED: October 28, 2010

Marilyn Hall Patel
United States District Judge

## **NOTES**

1.     The listed circumstances tending to show <u>unsuitability</u> for parole are the nature of the commitment offense, i.e., whether the prisoner committed the offense in "an especially heinous, atrocious or cruel manner;" the prisoner has a previous record of violence; the prisoner has an unstable social history, the prisoner previously engaged in a sadistic sexual offense, the prisoner has a lengthy history of severe mental problems related to the offense; and negative institutional behavior.  15 Cal. Code Regs. § 2402(c).  The listed circumstances tending to show <u>suitability</u> for parole are the absence of a juvenile record, stable social history, signs of remorse, a stressful motivation for the crime, whether the prisoner suffered from battered woman's syndrome, lack of criminal history, the present age reduces the probability of recidivism, the prisoner has made realistic plans for release or developed marketable skills, and positive institutional behavior.  15 Cal. Code Regs. § 2402(d).